# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| JILLIAN IZZIO and HEATHER ZOELLER, on behalf of themselves and all others similarly situated, | Case No.: 3:14-cv-03194-P |
| Plaintiffs, | |
| v. | |
| CENTURY GOLF PARTNERS MANAGEMENT, L.P., | |
| Defendant. | |
| KARA ASHBY, on behalf of herself and all others similarly situated, | Case No.: 3:15-CV-00861-P |
| Plaintiff, | |
| v. | |
| CENTURY GOLF PARTNERS MANAGEMENT, L.P. dba ARNOLD PALMER GOLF MANAGEMENT, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THE LITIGATION ............................................................................................. 2

III.    THE SETTLEMENT ........................................................................................... 7

IV.     ARGUMENT ...................................................................................................... 9

      A.      Settlement Approval Under Rule 23 and the FLSA ................................ 9

      B.      Preliminary Approval Should Be Granted and Notice Should Be Authorized ..... 10

            1.      The Settlement Agreement is the Product of Arms' Length, Adversarial Negotiations ........................................................... 10

            2.      The Proposed Settlement is Reasonable and Warrants Preliminary Approval ...................................................................... 11

                  a.      Plaintiffs Have Conducted Sufficient Discovery To Make An Informed Judgment About The Settlement .................................. 12

                  b.      The Risks and Uncertainties of Litigation .................................. 12

            3.      The Benefit of a Settlement At This Stage ................................. 15

            4.      The Named Plainstiffs' Service Awards are Reasonable. ......................... 16

            5.      The Requested Attorneys' Fees and Costs Are Reasonable. ..................... 16

      C.      The Proposed Notice Satisfies the Requirements of Due Process. ....................... 17

      D.      Provisionsal Certification of the Class is Appropriate for Settlement Purposes Under Rule 23 and the FLSA. ........................................................... 18

            1.      The Proposed Settlement Class is Succificently Numerous .................... 20

             2.      The Commonality Requirement is Met ............................................ 20

             3.      The Typicality Requirement is Met. ............................................... 22

             4.      The Adequacy Requirement is Met. ............................................... 23

             5.      Plaintiffs Satisfy Rule 23(b)(3)'s Requirements. .............................. 24

V.      CONCLUSION .................................................................................................. 25

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | i**

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................19, 23, 24, 25

*Berger v. Compaq Comp. Corp.*,
    257 F.3d 475 (5th Cir. 2001) ...................................................................................23

*Bryant v. United Furniture Indus., Inc.*,
    No. 1:13-CV-00246-SA-DAS,
    2015 U.S. Dist. LEXIS 40308 (N.D. Miss. Mar. 30, 2015).....................................19

*Burford v. Cargill, Inc.*,
    No. 05-0283, 2012 U.S. Dist. LEXIS 161292 (W.D. La. Nov. 8, 2012).................................23

*Camp v. Progressive Corp.*,
    No. 01-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004).................................10

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    MDL No. 2047 Section: L,
    2012 U.S. Dist. LEXIS 5223 (E.D. La. Jan. 10, 2012)...........................................9

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...............................................................................9, 12

*In re Deepwater Horizon – Appeals of the Econ. and Prop. Damage Class Action
    Settlement*,
    739 F.3d 790 (5th Cir. 2014) .....................................................................................9

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ...........................................................................14

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
    No. 6:03-MD-1512, 2005 U.S. Dist. LEXIS 17457 (E.D. Tex. June 30, 2005).................9, 10

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007)......................................................................22

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*,
    No. 11 Civ. 1510 (MAD) (ATB),
    2014 U.S. Dist. LEXIS 115710 (N.D.N.Y Aug. 20, 2014) ....................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................25

*Hens v. ClientLogic Operating Corp.*,
No. 05-CV-381S, 2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 19, 2010).......................16

*Jenkins v. Raymark Indus., Inc.*,
782 F.2d 468 (5th Cir. 1986) .................................................................................................22

*Johnson v. Brennan*,
No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .............15

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) .................................................................................................17

*Krebs v. Canyon Club, Inc.*,
880 N.Y.S.2d 873 (N.Y. Sup. Ct., Westchester Cnty. Jan. 2, 2009) .......................................14

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
No. 12-1453, 2013 U.S. App. LEXIS 4316 (2d Cir. Mar. 1, 2013) ........................................14

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .................................................................................................11

*Maldonado v. BTB Events & Celebrations, Inc.*,
990 F. Supp. 2d 382 (S.D.N.Y. 2013).....................................................................................13

*Mazur v. Olek Lejbzon & Co.*,
No. 05 Civ. 2194 (RMB) (DF),
2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 29, 2005).......................................................22

*McClain v. Lufkin Indus. Inc.*,
No. 9:97CV63, 2009 U.S. Dist. LEXIS 125630 (E.D. Tex. Dec. 22, 2009) ...........................16

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010)................20

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ..............21

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .................................................................................................20

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ...................................................................................................9

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009) ...............11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)........................................................................................17

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   MDL No. 2328 Section: R(2),
   2014 U.S. Dist. LEXIS 176399 (E.D. La. Dec. 22, 2014).....................................11

*Prasker v. Asia Five Eight LLC*,
   No. 08 Civ. 5811 (MGC),
   2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010) .................................20, 23, 25

*Quintanilla v. A & R Demolition, Inc.*,
   No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008)..............................10

*In re Reliant Energy ERISA Litig.*,
   No. H-02-2051, 2005 U.S. Dist. LEXIS 44423 (S.D. Tex. Aug. 18, 2005) ..........................23

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ..............20

*Samiento v. World Yacht Inc.*,
   10 N.Y.3d 70 (2008) ......................................................................................13

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ........................................................................11

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ..................11

*In re Shell Oil Refinery,*
   155 F.R.D. 552 (E.D. La 1993)............................................................................10

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) .............................................................................22

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................12

*Swigart v. Fifth Third Bank*,
   No. 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014)....................12, 15

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ...................................................................10

*In re TWL Corp.*,
   712 F.3d 886 (5th Cir. 2013) .............................................................................24

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | iv**

*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) ...............................................................................................17

*In re Vioxx Prods. Liab. Litig.*,
   No. 11-1546, MDL No. 1657,
   2013 U.S. Dist. LEXIS 134362 (E.D. La. Aug. 27, 2013) ...............................................18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...........................................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................................17

*Williams v. Twenty Ones, Inc.*,
   No. 07 CV 3978 (LAP), 2008 U.S. Dist. LEXIS 117546 (S.D.N.Y. June 29, 2008)..............22

STATUTES

NYLL § 663(1) ......................................................................................................................16

29 U.S.C. § 216(b) ................................................................................................................16

OTHER AUTHORITIES

Fed. R. Civ. P. 23.................................................................................................17, 18, 20, 22

Fed. R. Civ. P. 23, Notes of Advisory Committee on 1966 amendments ....................................24

N.Y. Comp. Codes R. Regs. tit. 12, § 146-2.18(b) ........................................................................13

## I.      INTRODUCTION

Plaintiffs in three similar wage and hour class and collective actions have reached a settlement and are pleased to present it to the Court.  By this motion, the parties seek preliminary approval of the proposed settlement and permission to send notice of the settlement to the 513 members of the class.  The proposed notice will provide each potential class member with an individual estimate of his or her award should they join the settlement as well as their rights to object to or opt out of the settlement.

The defendant is Dallas-based CGPM/WMC Operating, LLC which operates four catering facilities in New York State.  The settlement for which preliminary approval for notice purposes is sought was reached only after the three class and collective actions were litigated, mediated and negotiated over the course of many months.  The settlement agreement itself, a 57-page document (Exhibit A to the accompanying Declaration of Adam Gonnelli in Support of Joint Motion for Preliminary Approval of Settlement ("Gonnelli Decl."), Settlement Agreement and Release ("Settlement Agreement")), was intensely negotiated by the two sides, and took several months of negotiations to conclude.

Under the comprehensive negotiated settlement, Plaintiffs in the cases and the members of the proposed Settlement Classes will release any and all claims asserted in the three litigations, as well as all claims arising out of the identical factual predicate of those claims.  In exchange for this release, and as set forth in further detail in the settlement, Defendant has agreed to pay a total settlement amount not to exceed $1.2 million.

The proposed settlement would resolve the claims in four overlapping class actions.  Two of the actions, *Izzio v. Century Golf Partners Management, L.P.*, No. 3:14-cv-03194-P and *Ashby v. Century Golf Partners Management, L.P., dba Arnold Palmer Golf Management,* No. 3:15-cv-

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION**

00861-P are now before this Court.  Two other cases, *Law v. CGPM/WMC Operating, LLC, dba Arnold Palmer Golf Management,* No. E150883/2013, pending in state court in New York, and *Metzger v. Century Golf Partners Management, LP d/b/a Arnold Palmer Golf Management, et al.*, No. 14-cv-3747-JMA-SIL, pending in the Eastern District of New York, have been stayed pending the motion to approve this settlement.  The plaintiff in the *Metzger* case (which, as will be demonstrated below, involves identical claims, but is limited to one facility), Anthony Metzger ("Metzger"), does not support this settlement.  The *Metzger* case was stayed by Judge Steven I. Locke in the Eastern District of New York over Metzger's objection.

The Plaintiffs in *Izzio*, *Ashby,* and *Law* seek to represent a class consisting of banquet service workers at four catering facilities run by defendant in New York: the Brierwood Country Club in Hamburg, New York ("Brierwood"); the Fox Valley Club in Lancaster, New York ("Fox Valley"); the Tan Tara Golf Club in North Tonawanda, New York ("Tan Tara"); and the Clubhouse at Harbor Links in Port Washington, New York ("Harbor Links").  Mr. Metzger seeks to represent a class of workers at one of the facilities (Harbor Links).  Metzger has moved to intervene in this action and dismiss or transfer the claims of Harbor Links employees from this action to the *Metzger* action.

Plaintiffs in *Izzio*, *Ashby* and *Law* now request permission to notify the proposed class members of the settlement including the amount each class member would receive if they joined the settlement.  For the reasons below, the workers in these cases should have the opportunity to decide for themselves whether to join the settlement, and the parties respectfully request that the Court grant preliminary approval of the proposed settlement.

## II.    THE LITIGATION

Diane Law ("Law") and Diane Gulla ("Gulla") filed a class action complaint in New

York Supreme Court, Niagara County, on August 20, 2013 against defendant Century Golf Partners Management L.P. ("CGPM" or "Defendant"). *Law v. CGPM/WMC Operating, LLC, dba Arnold Palmer Golf Mgmt.*, No. E150883/2013 (N.Y. Sup. Ct., Niagara Cnty.). On November 18, 2013, Law and Gulla served an amended complaint ("*Law* Am. Compl."), attached to the Gonnelli Decl. as Ex. B, adding four additional plaintiffs to the case ("*Law* Plaintiffs"). The *Law* Plaintiffs, like all members of the proposed Settlement Classes, are bartenders and servers who worked as banquet staff at four golf and catering facilities in New York owned and/or run by Defendant CGPM under the trade name Arnold Palmer Golf Management: Brierwood; Fox Valley; Tan Tara; and Harbor Links.

The facilities offer catering and banquet services to members and to the public for weddings, graduations and other events. Each of the facilities collects a "service charge" for each of their banquet events, of approximately 20%, which is added to the customer's bill. At Fox Valley, Brierwood, and Harbor Links, the service charge is not remitted directly to service employees, but is used, according to Defendant, to offset event-associated labor costs. At Tan Tara, the service charge is remitted directly to the service employees who worked the event for which the service charge was collected.

The *Law* Plaintiffs brought their action on behalf of themselves and other individuals employed as servers, bartenders and any other customarily-tipped employees of Defendant CGPM who worked at banquet events at the four facilities. The *Law* Plaintiffs asserted three causes of action against Defendant CGPM: (1) unlawful withholding of gratuities pursuant to Article 6 § 196-d of the New York Labor Law ("NYLL"); (2) unjust enrichment; and (3) failure to pay spread of hours compensation in violation of New York Codes, Rules and Regulations

("NYCRR") and Article 19 §§ 650 *et seq.*  The *Law* Plaintiffs effected service, conducted written discovery and informal investigation, and, as detailed below, engaged in a mediation which led to the structure of the settlement.  *See* Gonnelli Decl. ¶ 8.

On June 13, 2014, ten months after the filing of the *Law* action, Metzger filed a complaint in the Eastern District of New York, styled *Metzger, et al. v. Century Golf Partners Management, LP, dba Arnold Palmer Golf Management*, *et al.,* No. 14-3747-JMA-SIL, against CGPM and three additional defendants ("*Metzger* Compl."), attached to the Gonnelli Decl. as Ex. C.  Metzger, on behalf of himself and other banquet service workers at one of the four facilities included in the *Law* action (Harbor Links in Port Washington, N.Y.), seeks unpaid overtime under the Fair Labor Standards Act ("FLSA") and NYLL as well as unpaid gratuities under NYLL § 196-d, and uniform pay and spread of hours pay violations under NYCRR § 146-1.6.  *See* Gonnelli Decl., Ex. C.

On September 5, 2014, Jillian Izzio and Heather Zoeller ("*Izzio* Plaintiffs"), filed a complaint against Defendant in this Court, styled *Izzio v. Century Golf Partners Management, L.P.*, No. 3:14-cv-03194-P, where CGPM's corporate headquarters are located, on behalf of themselves and all tipped employees at all four of the CGPM facilities, asserting the following claims on behalf of members of the putative class/collective: (1) failure to pay straight and overtime wages in violation of the FLSA and NYLL; (2) failure to properly calculate overtime in violation of the FLSA; (3) unlawful retention of gratuities in violation of NYLL § 196-d; and (4) failure to reimburse employees for the cost of uniforms pursuant to New York Hospitality Wage Order (12 NYCRR §§ 137; 146) ("*Izzio* Complaint").  *See* Gonnelli Decl., Ex. D, ECF No. 1.

On September 10, 2014, Kara Ashby ("Ashby") filed a complaint in the Western District

of New York against Defendant, styled *Ashby, et al. v. Century Golf Partners Management, L.P., dba Arnold Palmer Golf Management*, No. 1:14-cv-00759, on behalf of herself and an undefined class of employees at all four of CGPM's facilities, asserting the following claims on behalf of members of the putative class/collective: (1) failure to pay straight and overtime wages in violation of the FLSA and NYLL; (2) failure to properly calculate overtime in violation of the FLSA; (3) unlawful retention of gratuities in violation of NYLL §196-d; and (4) failure to reimburse employees for the cost of uniforms pursuant to New York Hospitality Wage Order (12 NYCRR § 137; 146) ("*Ashby* Compl."). *See* Gonnelli Decl., Ex. E.

After engaging in extensive paper discovery and informal investigation, on October 6, 2014, the parties to the *Law* action participated in mediation before Ruth Raisfeld, Esq., and reached the basic structure of a settlement agreement covering all four of the facilities, including Harbor Links. *See* Gonnelli Decl. ¶ 9. Thereafter, the *Law* Plaintiffs and Defendant engaged in extensive settlement discussions with the *Izzio* Plaintiffs and *Ashby* plaintiff, by and through their respective counsel. In a letter dated November 3, 2014, counsel for Defendant informed the New York Supreme Court that the parties to the *Law* action had reached a settlement agreement, but were in the process of finalizing all necessary settlement documentation. *Id.* at ¶ 10. On December 24, 2014, Metzger filed a motion to intervene in the *Law* action, which was fully briefed. *Id.* at ¶ 11. On February 25, 2015, the *Law* Plaintiffs requested that the *Law* action, including the pending intervention motion, be stayed while the parties attempted to finalize the settlement. *Id.* at ¶ 12. All proceedings in the *Law* action were stayed by the Court on March 2, 2015. *Id.* at ¶ 13.

The Settlement Agreement was finalized on March 5, 2015. *Id.* at Ex. A. Six days later,

on March 11, 2015, the Settlement Agreement was provided to counsel in the *Metzger* action. *Id.* at ¶ 14.

On March 16, 2015, parties for the *Ashby* action filed a proposed Stipulation and Order to Transfer Venue to the U.S. District Court for the Northern District of Texas, Dallas Division, with the U.S. District Court for the Western District of New York, which was granted by U.S. District Judge Richard J. Arcara on March 17, 2015.  (*See* Stip. and Order to Transfer Venue, ECF No. 15.)   On March 18, 2015, the *Ashby* action was electronically transferred to the Northern District of Texas, Dallas Division, and by Order dated April 21, 2015, the *Ashby* action was consolidated with the *Izzio* action.  (*See* Elec. Order of Consolidation, ECF No. 33.)

In response to the settlement, on or around March 18, 2015, counsel in the *Metzger* action served deposition subpoenas on each of the nine named plaintiffs in the *Law*, *Ashby* and *Izzio* actions.  *Id.* at ¶ 15.  Since the depositions were noticed to occur in the Western District of New York, on March 31, 2015, the plaintiffs were forced to file a new action with a motion for a temporary restraining order and motion to quash the subpoenas in the Western District of New York, which they did on March 25, 2015.  *See id.* at ¶ 16.  The day after the filing of the motion, counsel for Metzger withdrew the subpoenas.  *Id.* at ¶ 17.

Also in response to the settlement, Plaintiff Metzger filed a Motion to Intervene and Dismiss or Transfer in *Izzio* on March 19, 2015.  (*See* Mot. to Intervene and Dismiss or Transfer, Mem. of Law in Supp, and App'x., ECF Nos. 9-11 ("Mot. to Intervene").)  This Motion has been fully briefed and is currently pending before this Court.  (*See* Mot. to Intervene, and Pls.' Mem. of Law in Opp'n to Mot. to Intervene, ECF No. 21, Reply Mem. of Law in Further Supp. of Mot. to Intervene, ECF No. 28).

On March 24, 2015, defendants in the *Metzger* action filed a Motion to Stay the *Metzger* action pending this Court's evaluation of the Settlement Agreement, which was opposed by Metzger.  Gonnelli Decl. at ¶ 18.  On March 30, 2015, Metzger filed to letter motion in the *Metzger* action to enjoin the *Izzio* and *Ashby* actions under the All Writs Act and "first filed rule."  *Id.* at ¶ 19.  Defendants filed an opposition to Metzger's letter motion on April 3, 2015. *Id.* at ¶ 20.  On April 16, 2015, the Court in the *Metzger* action granted defendants' request to stay the *Metzger* action pending this Court's evaluation of the Settlement Agreement.  *Id.* at ¶ 21.

## III.    THE SETTLEMENT

The settlement is a hybrid FLSA/state wage claim settlement.  Pursuant to the settlement, the parties agreed to request that the Court certify, for settlement purposes only, the following two Settlement Classes:

> The Putative State Law Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all individuals who worked in a Covered Position for Defendants at some point during the period from August 20, 2007 through and including the Effective Date of the Settlement Agreement; and

> The Putative FLSA Class pursuant to Section 216(b) of the FLSA, consisting of all individuals who worked in a Covered Position for Defendants at some point during the period from September 5, 2011 through and including the Effective Date of the Settlement Agreement.

Gonnelli Decl., Ex. A.  "Covered Position" is defined in the settlement to mean any position held by members of the Settlement Classes while employed with Defendants whereby they worked as hourly banquet service staff at any event held at the four New York golf club facilities at some point during the period from August 20, 2007 through and including the Effective Date of the Settlement Agreement.  *Id.*

Under the settlement, Plaintiffs in the cases and the members of the proposed Settlement Classes will release any and all claims asserted in the *Law, Izzio,* and *Ashby* litigations, as well as

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | 7**

all claims arising out of the identical factual predicate of those claims.  In exchange for this release, and as set forth in further detail in the settlement, Defendant has agreed to pay a maximum gross settlement amount of one million, two-hundred thousand dollars ($1,200,000.00).  This amount includes: (i) attorneys' fees (in an amount to be determined by the Court but not to exceed 33% of the maximum gross settlement amount), costs and expenses; (ii) service awards to representative plaintiffs (not to exceed a total of $50,000); and (iii) fees, costs and expenses incurred by a claims administrator in performing the administrative services authorized by the settlement.

Based on discovery and the experiences of the Plaintiffs, Plaintiffs believe that most of the value in these cases is contained in the service charge claims.  The law requiring the payment of service charges in New York State has evolved through the relevant time period at issue in this case and ultimate liability was very much contested in the case.  Plaintiffs learned that the Defendant collected approximately $3.8 million in disputed service charges during the *Law* class period, which runs from August 20, 2007 to March 5, 2015.  Gonnelli Decl. ¶ 22.  Accordingly, ninety percent (90%) of the settlement (less items (i) through (iii) above) is to be paid to the hourly banquet service staff of the Fox Valley, Brierwood, and Harbor Links facilities on a pro-rata basis according to the hours worked.  Since the hourly banquet service staff at Tan Tara do not have the same service charge claims as the workers at the three other facilities, they have been apportioned ten percent (10%) of the settlement (less items (i) through (iii) above) on a pro-rata basis according to the hours worked.  The Defendant will be responsible for paying all employer-owed payroll taxes including FUTA and the employer's share of FICA taxes, unemployment insurance and back-up withholding (if applicable), as required by law.

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | 8**

As provided in the agreement, by entering into the Settlement Agreement, Defendant does not admit, and expressly denies, any liability or wrongdoing, as Defendant has maintained that it has expressly complied with all applicable federal and state laws at all times.

## IV.   ARGUMENT

### A.   SETTLEMENT APPROVAL UNDER RULE 23 AND THE FLSA

Rule 23 requires Court approval of the settlement of any class action. "The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)). The Fifth Circuit recognizes – "[p]articularly in class action suits" – that there is an "overriding public interest in favor of settlement[.]" *In re Deepwater Horizon – Appeals of the Econ. and Prop. Damage Class Action Settlement*, 739 F.3d 790, 807 (5th Cir. 2014) (internal quotation marks omitted). Thus, "in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings." *Cotton*, 559 F.2d at 1330.

The Fifth Circuit employs a two-step process for the approval of class settlements; a limited review for preliminary approval, followed by a more stringent review at a final fairness hearing after notice has been given to absent class members. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047 Section: L, 2012 U.S. Dist. LEXIS 5223, at *19-21 (E.D. La. Jan. 10, 2012) (citing Manual for Complex Litigation § 21.6 (4th ed. 2004) ("The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate courts.") (internal quotation marks omitted)); *see also In re Elec. Data Sys. Corp. "ERISA" Litig.*, No. 6:03-MD-1512, 2005 U.S. Dist. LEXIS 17457, at *16-17 (E.D. Tex. June 30, 2005). In approving FLSA settlements, courts consider factors similar to those employed in

the Rule 23 context, namely whether the settlement represents a fair and adequate resolution of the case. *See Camp v. Progressive Corp.,* No. 01-2680, 2004 U.S. Dist. LEXIS 19172, at *16 (E.D. La. Sept. 23, 2004) (finding that the Rule 23 "fair and reasonable" settlement standard is "analogous and applicable" to FLSA actions) (internal quotation marks omitted).

## B. PRELIMINARY APPROVAL SHOULD BE GRANTED AND NOTICE SHOULD BE AUTHORIZED.

At the preliminary approval stage, the Court undertakes only a "'cursory examination'" of the settlement, the purpose of which "is to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing . . . futile gestures.'" *Elec. Data Sys.*, 2005 U.S. Dist. LEXIS 17457, at *16-17 (quoting Newberg On Class Actions § 11:25 (4th ed. 2002)).

Not only would notice not be futile here, it is particularly valuable because each class member will receive an individualized estimate of his or her recovery if they elect to join the Settlement.[1]   Accordingly, the Settlement Class members will be well informed to make their decision.

## 1. THE SETTLEMENT AGREEMENT IS THE PRODUCT OF ARMS' LENGTH, ADVERSARIAL NEGOTIATIONS

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007); *see also Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *11 (S.D. Tex. May 7, 2008)); *In re Shell Oil Refinery,* 155 F.R.D. 552, 555

---

[1] The estimate assumes that attorneys' fees, expenses and service awards have been granted in full.  If they are not, the awards would be higher.

(E.D. La 1993).   Here, the parties engaged in arms' length negotiations during (and after) a mediation before Ruth Raisfeld, Esq., an experienced and respected mediator on October 6, 2014.   Mediation is an important indicia of an arms' length, procedurally-proper settlement.   *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328 Section: R(2), 2014 U.S. Dist. LEXIS 176399, at *32-33 (E.D. La. Dec. 22, 2014) (mediation is an important sign of a valid settlement process); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210, at *34 (E.D. La. Mar. 2, 2009) (same); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *69 (N.D. Tex. Nov. 8, 2005) (same).

While the mediation did not produce an immediate settlement, it was successful in reaching a structure which ultimately enabled the parties to reach settlement.   The negotiations to complete the Settlement Agreement took a few months because Plaintiffs demanded additional discovery concerning the payroll data to refine the distribution calculations. Only after this was received and evaluated, and several outstanding issues resolved, were the parties able to execute an agreement.

## 2.   THE PROPOSED SETTLEMENT IS REASONABLE AND WARRANTS PRELIMINARY APPROVAL

At this stage of the litigations, the question is not whether the Settlement Agreement should be approved, but whether it should be presented to the members of the class.

This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial."   *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999).   Rather, "[i]n assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and

ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011).

> **a.   PLAINTIFFS HAVE CONDUCTED SUFFICIENT DISCOVERY TO MAKE AN INFORMED JUDGMENT ABOUT THE SETTLEMENT**

The extent of discovery needed in order for the parties to have sufficient information to make an informed and reasoned evaluation of the settlement and for the Court to be able to determine the fairness and adequacy of the compromise is left to the discretion of the Court. *See Cotton*, 559 F.2d at 1332-33.

Plaintiffs reviewed catering contracts and menus, "outward facing" customer documents, payroll records of banquet service employees, and service charge revenue from different time periods at all four facilities. The parties also exchanged interrogatory responses. In addition, the three cases (*Law, Izzio,* and *Ashby*) collectively involve nine Plaintiffs, each of whom described their experiences and the procedures at Defendant's facilities. Accordingly, Plaintiffs had sufficient information to evaluate the settlement.

> **b.   THE RISKS AND UNCERTAINTIES OF LITIGATION**

While Plaintiffs firmly believe in the merits of their claims, Defendant vociferously denies any wrongdoing. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450, at *18 (S.D. Ohio July 11, 2014) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013)). A detailed analysis of claims and defenses is not warranted at the preliminary approval stage. However, a few factors should be noted.

Although Plaintiffs are confident in their ability to demonstrate that the service charges were actually gratuities, doing so is not guaranteed.  The claims of the Settlement Class would have to be evaluated under two different legal standards.  Prior to January 1, 2011, both the case law and the New York Department of Labor interpreted section 196-d to exclude mandatory service charges from the definition of gratuity, except in limited circumstances where an employer made an affirmative representation to the customer that the charge was, in fact, a gratuity for the wait staff.  *See, e.g., Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008); *Maldonado v. BTB Events & Celebrations, Inc.,* 990 F. Supp. 2d 382, 390-91 (S.D.N.Y. 2013) (dividing service charge analysis into periods before, and then after, January 1, 2011, and concluding that prior to January 1, 2011, 11% service charge would not be regarded by reasonable customer as a purported gratuity).  Then, effective January 1, 2011, the New York State Department of Labor issued new regulations which "create 'a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity.'"  *Maldonado*, 990 F. Supp. 2d at 390 (noting analysis differs for the period prior to January 1, 2011, and discussing new standards); N.Y. Comp. Codes R. Regs. tit. 12, § 146-2.18(b).  The new Regulations provide different "'illustrative' but non-exhaustive list of factors" to determine when a service charge is considered a gratuity.  *Maldonado*, 990 F. Supp. 2d at 390.

In addition, the catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus

and customer documents.   Accordingly, sorting out the legal implications of each language change might be challenging.

Potentially, the Court might decide that an evaluation of the claims of the Settlement Class members would require an analysis of each change in fact or law.  This might give rise to many different analyses which could prove difficult for a jury and might have implications for a contested class certification motion. Such a class might have to be divided into six or more subclasses.  Indeed, at least one New York court has suggested that service charge cases might require an analysis of each *event*.  *See Krebs v. Canyon Club, Inc*., 880 N.Y.S.2d 873 (N.Y. Sup. Ct., Westchester Cnty. Jan. 2, 2009) (partially certifying class under New York State law and noting that service charge issues might have to be resolved on an event-by-event basis).  Thus, there is a risk that the different legal standards and language changes could undermine certification.  *Cf. DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007) (where there are differences between the state and federal laws "relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context.").  Also, the challenges of determining the existence or amount of straight time and overtime damages in an off-the-clock case, where, by definition, there are no records of the unpaid time, are readily apparent.

With respect to the workers' off-the-clock claims, the Second Circuit has interpreted the Fair Labor Standards Act in a manner that may pose problems for plaintiffs.  In *Lundy v. Catholic Health Sys. of Long Island Inc.*, No. 12-1453, 2013 U.S. App. LEXIS 4316 (2d Cir. Mar. 1, 2013), the Second Circuit held that unless the workers' averaged hourly wages fell below the statutory minimum, the FLSA did not provide a remedy for "gap-time" claims.  For example,

if a worker was only paid for 35 of the 40 hours he actually worked, he would not have a claim for the missing five hours unless his 40-hour average fell below the minimum wage.  This is often a concern for workers who are paid at or near the minimum wage, but the Settlement Class members who worked for Defendant generally had hourly wages of $9.00 to $13.00, well in excess of the minimum wage.  Accordingly, is it unlikely they would have significant "gap time" claims under federal law.

In sum, there are legal and procedural pitfalls that Plaintiffs would need to overcome.

### 3.      THE BENEFIT OF A SETTLEMENT AT THIS STAGE

In addition to the elimination of litigation risk, a significant benefit of the settlement is that the Settlement Class members will be paid relatively quickly rather than having to wait for years.  "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable…"  *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *34 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

Resolution of the issues in this case—the service charge, off the clock work, overtime, and uniform expense claims—would likely require additional document discovery, depositions, class certification and summary judgment briefing and decisions, a trial, and perhaps appeals, thereby delaying any potential payment (if any) for at least several years. "Rather than continue further down this path, the settlement confers a substantial and immediate benefit upon class members . . . ." *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *8.  That is exactly the case here.

### 4.   THE NAMED PLAINTFFS' SERVICE AWARDS ARE REASONABLE.

The proposed service awards to the named plaintiffs in the *Law*, *Izzio*, and *Ashby* actions are intended to recognize the representatives' initiative and efforts on behalf of the Settlement Classes.   The efforts and contributions of each of the representatives will be detailed in the declarations submitted in support of final approval of the Settlement Agreement.   The reasonable amount of the proposed payments, $50,000 in the aggregate, an average of just over $5,000 each,[2] militates in favor of preliminary approval.   Courts commonly approve similar incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation.   *See McClain v. Lufkin Indus. Inc.*, No. 9:97CV63, 2009 U.S. Dist. LEXIS 125630, at *12 (E.D. Tex. Dec. 22, 2009) (awarding $134,000 to 22 individuals, an average of over $6,000, in employment case and collecting cases), *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 Civ. 1510 (MAD) (ATB), 2014 U.S. Dist. LEXIS 115710, at *22 (N.D.N.Y Aug. 20, 2014) (awarding $10,000 to single plaintiff in wage and hour case); *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2010 U.S. Dist. LEXIS 139126, at *5-6 (W.D.N.Y. Dec. 19, 2010) (awarding $45,000 to six plaintiffs, an average of $7,500, in wage and hour case).

### 5.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Plaintiffs are entitled to recover their attorneys' fees and costs for their claims for overtime pay.   *See, e.g.*, 29 U.S.C. § 216(b); NYLL § 663(1).   Plaintiffs' counsel believe that the Settlement Agreement's provision concerning attorneys' fees are fair and reasonable, as they are

---

[2]  It is anticipated that if preliminary approval is granted, Plaintiffs will apply for different amounts depending on their contribution to the litigation.

seeking attorneys' fees of at most one-third of the maximum gross settlement amount and reimbursement for expenses/costs.  Defendant does not oppose these requests.  As both this Court and the Fifth Circuit have noted, the "'customary contingency'" for this type of litigation is "'35 to 40 percent.'"  *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).  Thus, Plaintiffs' counsel's request for a lower contingency fee is reasonable and warrants presentation of the settlement to the class members.

### C.  THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF DUE PROCESS.

To protect the rights of absent class members, the Court must provide the best notice practicable to class members of a potential class action settlement.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). "[A] settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (explaining that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (internal quotation marks omitted)).

Federal Rule of Civil Procedure 23(c)(2) governs the notice requirements for class certification.  Specifically, the notice must state:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2).

In the present case, the proposed notice far exceeds the requirements of due process.  *See* Gonnelli Decl., Ex. F.  All of the items required by Rule 23 are present.  In addition, an individualized notice, which will be sent by a qualified claims administrator via first class mail, which method is set forth in great detail in the Settlement Agreement, will be sent to each Settlement Class member providing the number of hours they worked during the class period and an individualized calculation of the amount that he or she will receive from the settlement.  This calculation will be conservatively computed as if the maximum amount of attorneys' fee and service awards are granted by the Court.  Therefore, Settlement Class members may receive a greater amount than what is set forth in the notice.

Moreover, the Claim and Consent to Join Form is a simple form that permits Settlement Class members to claim their money quickly and easily.  *See* Gonnelli Decl., Ex. G. Accordingly, the Court should authorize notice to the class, pursuant to the attached Claim and Consent Form, and via the method proposed in the Settlement Agreement.

### D.     PROVISIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE FOR SETTLEMENT PURPOSES UNDER RULE 23 AND THE FLSA.

In addition to conducting a preliminary review of the merits of the proposed settlements, courts also "'should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).'"  *In re Vioxx*

*Prods. Liab. Litig.*, No. 11-1546, MDL No. 1657 Section L, 2013 U.S. Dist. LEXIS 134362, at *9 (E.D. La. Aug. 27, 2013).  A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but the other requirements for certification must still be satisfied.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  It is well recognized that the requirements for conditional certification of a collective action under Section 16(b) of the FLSA (29 U.S.C. § 216(b)) are more lenient than those under Rule 23.  *Bryant v. United Furniture Indus., Inc.*, No. 1:13-CV-00246-SA-DAS, 2015 U.S. Dist. LEXIS 40308, at *12-13 (N.D. Miss. Mar. 30, 2015).  Accordingly, if all of the Rule 23 certification requirements for settlement purposes are met then, consequently, the conditional certification requirements under the FLSA are also met.

There are two proposed Settlement Classes here:

The Putative State Law Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all individuals who worked in a Covered Position for Defendants at some point during the period from August 20, 2007 through and including the Effective Date of the Settlement Agreement; and

The Putative FLSA Class pursuant to Section 216(b) of the FLSA, consisting of all individuals who worked in a Covered Position for Defendants at some point during the period from September 5, 2011 through and including the Effective Date of the Settlement Agreement.

As set forth below, Plaintiffs submit that the proposed classes satisfy each of the prerequisites for class treatment under Rule 23 and the FLSA.[3]

---

[3]  Defendant has not conceded that settlement is appropriate outside the settlement context and reserves all rights to contest certification should the settlement not be approved.

## 1.     THE PROPOSED SETTLEMENT CLASS IS SUFFICIENTLY NUMEROUS

The numerosity requirement is met if the class is so large that joinder of all members would be impractical.  Fed. R. Civ. P. 23(a)(1). In determining whether a plaintiff has satisfied the numerosity requirement, a court may consider factors including the size of the class, geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (upholding finding of numerosity where class consisted of between 100 and 150 members).

In this case, the personnel and payroll information exchanged in this case confirms that there are 513 members of the Settlement Classes.  Gonnelli Decl. ¶ 23.  Given these facts, the numerosity requirement is met, as joinder of all of these workers as parties would be impracticable.  *Mullen*, 186 F.3d at 624-25.

## 2.     THE COMMONALITY REQUIREMENT IS MET

Rule 23(a)(2) requires questions of law and fact to be common to the class.  "[F]or purposes of Rule 23(a)(2) even a single [common] question will do."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (alteration in original) (internal quotation marks omitted). Common questions exist where "[d]efendants failed to pay overtime pay; and [ ] whether [d]efendants misappropriated mandatory gratuities or 'service charges' that [d]efendants charged their event customers."  *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *5 (S.D.N.Y. Mar. 2, 2010); *see also Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *4-5 (S.D.N.Y. Jan. 6, 2010) (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS

45277, at *6 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,  No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at *10-11 (S.D.N.Y. Mar. 31, 2009) (same).

 Here, there is an additional layer of complexity because there are four overlapping cases[4] with plaintiffs who assert slightly different claims:

In *Law*, the six plaintiffs assert unlawful withholding of gratuities, unjust enrichment, and failure to pay "spread of hours" pay with respect to all four facilities;

In *Metzger*, the plaintiff asserts service charge and spread of hours claims, but adds uniform reimbursement claims and failure to pay proper overtime;

In *Izzio*, the two plaintiffs assert the service charge claim, the overtime claim and the uniform reimbursement claim and add a claim for failure to pay appropriate straight time;

In *Ashby*, the plaintiff asserts service charge claims, unpaid overtime claims, off the clock claims and uniform reimbursement claims.

In summary, all four cases allege the central and most valuable claim concerning the service charges.  All nine of the plaintiffs supporting the settlement have that claim in common with the absent class members at Brierwood, Harbor Links, and Fox Valley facilities.  The three *Izzio* and *Ashby* Plaintiffs, in addition, have off-the-clock, failure to properly calculate overtime, spread of hours pay, and uniform reimbursement claims in common with workers at all four facilities.  Thus, the nine plaintiffs, among them, have alleged claims common to the workers at all four facilities.

---

[4]  If the cases do not settle and were Mr. Metzger agreeable, Plaintiffs would no doubt seek leave to file a consolidated amended complaint to clarify the issues in the case.

In any case, the fact that different plaintiffs may have different claims at different facilities does not defeat commonality. *See, e.g., Williams v. Twenty Ones, Inc.*, No. 07 CV 3978 (LAP), 2008 U.S. Dist. LEXIS 117546, at *3-4 (S.D.N.Y. June 29, 2008) (certifying FLSA collective action of "office workers, waiters, bartenders, runners, and bussers" where no single FLSA violation affected every collective action class member but each member was affected by at least one alleged violation) (footnote omitted); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (of eight declarants, four allege that they were not fully compensated for overtime; five not paid for training; two forced to work off the clock); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321, at *13-22 (S.D.N.Y. Nov. 29, 2005) (certifying FLSA collective action and authorizing notice in case involving seven different job descriptions against four corporate entities in different locations).

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Rule 23(a)(2).

### 3.    THE TYPICALITY REQUIREMENT IS MET.

To satisfy the typicality requirement of Rule 23(a)(3), the proposed class representatives must show their claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The analysis is "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

Plaintiffs meet the typicality requirement here because their claims arise from the same facts and circumstances. Specifically, "[t]he named plaintiffs held the same positions and had

the same job duties as the class members. They also suffered the same alleged injury as did the class members – [d]efendants' failure to pay proper minimum wages and overtime, spread-of-hours pay, [and] all of the tips that they earned[.]" *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *5. Thus, Plaintiffs' legal claims here are typical of those of the class as a whole because they apply the same legal theory to the same policies and practices.

### 4.    THE ADEQUACY REQUIREMENT IS MET.

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Comp. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).   With respect to the class representatives, courts consider "'[1] the zeal and competence of the representatives' counsel and ... [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees.'"  *Id.* (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).   "'Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests.'"  *In re Reliant Energy ERISA Litig.*, No. H-02-2051, 2005 U.S. Dist. LEXIS 44423, at *8 (S.D. Tex. Aug. 18, 2005).   Class counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class."  *Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *8 (W.D. La. Nov. 8, 2012).

Here, the class representatives "possess the same interest and suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (internal quotation marks omitted).  Thus, the class representatives had the same interests, and asserted the same type of injury, as the members they seek to represent.  *Id.*  The representatives further showed themselves to be

adequate representatives of the class and have devoted time and effort in prosecuting the class claims.  Further, Plaintiffs are represented by counsel with significant experience in handling large scale class and wage and hour litigation.  Plaintiffs' counsel has diligently and zealously prosecuted this action to obtain a beneficial settlement for the Settlement Class members in the face of vigorous defense from respected defense counsel.  Faruqi & Faruqi, which has led the litigation, has successfully prosecuted wage and hour cases all over the country and litigated them at every level, including the U.S. Supreme Court.  The firm has a long track record of success in employment and class action litigation.  The lead lawyer in this case, Mr. Gonnelli, has chaired Faruqi's Wage Theft Group since 2012.  *See* Faruqi Firm Resume, attached as Exhibit H to the Gonnelli Decl.

### 5.    PLAINTIFFS SATISFY RULE 23(b)(3)'S REQUIREMENTS.

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23, Notes of Advisory Committee on 1966 amendments.  Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy.  The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication.  *Amchem*, 521 U.S. at 623. The Court must rest its examination on the legal or factual questions of the individual class members.  *In re TWL Corp.*, 712 F.3d 886, 893-94 (5th Cir. 2013).

Here, the alleged companywide policies affected all claims of Defendant's employees.  In particular, Plaintiffs allege Defendant uniformly failed to pay any of the "service charges" under

the catering contracts to Settlement Class Members as gratuities and allegedly uniformly failed to properly calculate and pay overtime. Thus, while there may be some variation between individual class member's claims, *i.e.*, such as the actual amount of damages, common questions of law and fact predominate. Similar allegations that "[d]efendants failed to pay proper minimum wages, overtime, and spread-of-hours pay, misappropriated tips, and failed to pay for uniform-related expenses -- and a common legal theory -- that [d]efendants' wage and hour policies violated the NYLL -- predominate over any factual or legal variations among [c]lass [m]embers" to satisfy the requirements of Rule 23(b)(3). *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *6.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Here, as in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* Moreover, "[e]mploying the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims." *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *7-8.

Accordingly, provisional class certification should be granted.

## V.   CONCLUSION

For these reasons, preliminary approval should be granted, and notice to the class should be authorized.

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | 25**

Dated:   June 4, 2015

Respectfully submitted,

**LAW OFFICES OF KENNETH M. STILLMAN**

By: */s/ Kenneth M. Stillman*
    KENNETH M. STILLMAN
    12700 Park Central Drive Suite 1900
    Dallas, Texas 75251
    Telephone:    (214) 522-0633
    Telecopier:    (214) 526-0849
    Email:    kstill53@gmail.com
    Texas Bar No.:    19240500

**FARUQI & FARUQI, LLP**

By: */s/ Adam Gonnelli*
    Adam Gonnelli (admitted *pro hac vice*)
    369 Lexington Avenue, 10th Floor
    New York, NY 10017
    Telephone: (212) 983-9330
    Facsimile:  (212) 983-9331
    Email: agonnelli@faruqilaw.com

**MUSCATO, DiMILLO & VONA, LLP**

By: */s/ P. Andrew Vona*
    P. Andrew Vona
    Brian J. Hutchison
    107 East Avenue
    Lockport, NY 14094
    Telephone: (716) 434-9177
    Facsimile: (716) 434-9196
    Email: pavesq@aol.com
    Email: bjhesq@gmail.com

*Attorneys for Plaintiffs*

**LITTLER MENDELSON, P.C.**
By: */s/ Craig R. Benson*
    Craig R. Benson (admitted *pro hac vice*)
    900 Third Avenue
    New York, NY  10022
    (212) 583-9600

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION - Page | 26**

cbenson@littler.com

*Attorneys for Defendant*