# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| JILLIAN IZZIO and HEATHER ZOELLER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CENTURY GOLF PARTNERS MANAGEMENT, L.P., <br><br> Defendant. | Case No.: 3:14-cv-03194-P |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, APPROVAL OF THE ENHANCED SETTLEMENT, AND AWARD OF ATTORNEYS' FEES AND EXPENSES

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................. 1

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

        A.      The Four Cases Implicated By The Enhanced Settlement ................... 2

        B.      Investigation, Exchange Of Discovery And Litigation ....................... 4

        C.      Plaintiffs' Motion For Preliminary Approval .................................... 5

        D.      Order Granting Certification Of The Settlement Classes, Final Approval Of
                The Proposed Settlement, And Approval Of Service Awards, Attorneys' Fees
                And Expenses ................................................................................... 5

        E.      Appeal To United States Court Of Appeals For The Fifth Circuit ........ 6

        F.      Post-Appeal Mediation In Front Of Judge Kaplan ............................ 6

        G.      Summary Of The Enhanced Settlement ............................................ 7

                1.      The Settlement Fund ............................................................ 7

                2.      Settlement Classes .............................................................. 7

                3.      Releases ............................................................................. 8

                4.      Allocation Formula ............................................................. 8

                5.      Attorneys' Fees and Costs ................................................... 9

                6.      Cost of Administration ........................................................ 9

                7.      Service Awards .................................................................. 9

        H.      The Settlement Claims Administrator And Notice Program ............... 10

III.    THE SETTLEMENT CLASSES SHOULD BE CERTIFIED ....................... 11

        A.      The Settlement Classes Meet The Standard For Class Certification ..... 11

                1.      Numerosity ....................................................................... 12

                2.      Commonality ..................................................................... 12

                        i.      Legal Standards Governing Commonality ..................... 12

i

ii.    The Same Two Legal Standards Apply to All Settlement Class Members ............................................................. 13

iii.    The Contracts for the Four Golf Clubs are Virtually Identical ..... 15

iv.    Settlement Class Members Were Subject to the Same Compensation Policy .................................. 16

v.    Objectors' Argument on Commonality is Meritless ..................... 17

3.    Typicality ................................................................. 20

4.    Adequacy of the Plaintiffs and Their Counsel ......................................... 20

B.    Certification Is Proper Under Rule 23(b)(3) ........................................................ 23

1.    Common Questions Predominate ............................................................. 23

2.    A Class Action is a Superior Mechanism to Resolve This Dispute .......... 24

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS ........................................................... 25

A.    The Settlement Was the Product of Arms' Length Negotiations ......................... 26

1.    Submitting the Settlement Here is Not Evidence of Collusion ................ 27

2.    A Reversion to Defendant is Not an Obstacle to Approval ..................... 28

B.    The Complexity, Expense, And Likely Duration Of The Litigation Weigh In Favor Of Approval Of The Settlement ................................................. 28

C.    The Stage Of The Proceedings Weigh In Favor Of Settlement Approval ............ 29

D.    Difficulties In Prevailing On the Merits Weigh In Favor Of Approval Of The Settlement ....................................................... 30

E.    The Range of Recovery And Certainty Of Damages Favor Approval ................ 32

F.    The Reaction Of The Class Weighs In Favor Of Approval .................................. 35

V.    APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER FEDERAL LAW ........................................................... 36

VI.    ANY OBJECTION SHOULD BE OVERRULED AS THE ENHANCED SETTLEMENT AND THESE PAPERS ADDRESS ALL OF OBJECTORS' PRIOR OBJECTIONS ........................................................... 37

VII.    THE SERVICE AWARDS TO NAMED PLAINTIFFS ARE JUSTIFIABLE AND
        SHOULD BE APPROVED ........................................................................ 38

        A.    The Requested Service Payments Are Reasonable And Should Be Approved .... 38

        B.    The Actions Taken By Plaintiffs To Protect The Interests Of The Settlement
              Classes Support Approval Of The Service Awards ............................... 39

        C.    The Benefits Conferred On the Settlement Classes By The Settlement
              Agreement Supports Approval Of The Service Awards ..................... 39

        D.    The Time And Effort Expended By Plaintiffs Support Approval Of The
              Service Awards .................................................................................. 40

VIII.   THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD
        BE APPROVED ...................................................................................... 41

        A.    The Percentage Method for Awarding Attorneys' Fees in Common Fund Cases
              Is Endorsed by the Fifth Circuit ......................................................... 41

              1.    The Time and Labor Required ................................................. 42

              2.    The Novelty and Difficulty Of The Issues .............................. 42

              3.    The Skill Required to Perform the Legal Service Adequately ................ 43

              4.    The Preclusion of Other Employment ..................................... 44

              5.    The Customary Fee for Similar Work in the Community ..................... 44

              6.    Whether the Fee is Fixed or Contingent ................................. 44

              7.    Time Limitations Imposed by the Client or the Circumstances. ............. 45

              8.    The Amount Involved and the Results Obtained. ..................... 45

              9.    The Experience, Reputation, and Ability of the Attorneys ..................... 47

              10.   The Undesirability of the Case ............................................... 47

              11.   The Nature and Length of the Professional Relationship with the Client  48

              12.   Awards in Similar Cases ......................................................... 48

        B.    The Requested Fee Award Is Also Reasonable Under The Lodestar Method ..... 49

        C.    Costs Should Be Reimbursed ............................................................... 50

CONCLUSION ...................................................................................................... 50

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allen v. Entergy Operations Inc.*,
   No. 11-1571, 2016 U.S. Dist. LEXIS 18246 (E.D. La. Feb. 11, 2016) ................................... 37

*Alleyne v. Time Moving & Storage Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ....................................................................................... 28

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ................................... 11, 21, 23, 24

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) .......................................................................................... 21

*In re Baby Products Antitrust Litigation*,
   708 F.3d 163 (3d. Cir. 2013) .......................................................................................... 46

*In re Bayou Sorrel Class Action*,
   NO: 6:04CV1101, 2006 U.S. Dist. LEXIS 80924 (W.D. La. Oct. 31, 2006) ......................... 50

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................... 50

*Bell Atl. Corp. v. AT&T Corp.*,
   339 F.3d 294 (5th Cir. 2003) .......................................................................................... 19

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ...................................................................................... 20, 21

*Billitteri v. Sec. Am., Inc.*,
   2011 U.S. Dist. LEXIS 93907 (N.D. Tex. Aug. 4, 2011) ................................... 43, 44, 45, 47

*Boeing Co. v. VanGemert*,
   444 U.S. 472 (1980) ..................................................................................................... 45

*Burford v. Cargill, Inc.*,
   No. 05-0283, 2012 U.S. Dist. LEXIS 161292 (W.D. La. Nov. 8, 2012) ............................... 21

*Camp v. Progressive Corp.*,
   No. 01-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) ............................... 40

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996) ............................................................................... 40

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   Civ. Action No. 6:12-1609,
   2015 U.S. Dist. LEXIS 26053 (W.D. La. Feb. 11, 2015) .................................................. 42

*Collins v. Sanderson Farms, Inc.*,
   568 F. Supp. 2d 714 (E.D. La. 2008) ...................................................................48

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ...............................................................................30

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .............................................................................30

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ...........................................................17, 18, 19, 22

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) .........................................................................36

*Dyson v. Stuart Petroleum Testers, Inc.*,
   Case No. 1-15-CV-282 RP,
   2016 U.S. Dist. LEXIS 24190 (W.D. Tex. Feb. 29, 2016) ...................................41

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007) ..................................................................19

*Fernandez v. Legends Hospitality, LLC*,
   2015 N.Y. Misc. LEXIS 2193 (N.Y. Sup. Ct., N.Y. Cty. June 20, 2015) ..............34

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ....................................................................43, 44

*Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*,
   695 F.3d 330 (5th Cir. 2012) ...............................................................................23

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .............................................................................................12

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ...............................................................................23

*Hart v. RCI Hospitality Holdings*,
   No. 09 Civ 3043, 2015 U.S. Dist LEXIS 126934 (S.D.N.Y. Sept. 22, 2015) ........46

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...........................................................12, 38

*Ibe v. Jones*,
   836 F.3d 516 (5th Cir. 2016) ...............................................................................11

*Izzio v. Century Golf Partners Mgmt., L.P.*,
   670 Fed. App'x 348 (5th Cir. 2016) ..................................................................1, 17

v

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ...............................................................20

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) .........................................................40

*Johnson v. Brennan*,
   No. 10-4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .......................32, 42

*Johnson v. Cmty. Bank, N.A.*,
   C.A. No. 3:12-CV-01405,
   2013 U.S. Dist. LEXIS 167319 (M.D. Pa. Nov. 25, 2013) ...................................46

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..............................................41, 42, 45, 49

*Kemp v. Unum Life Ins. Co. of Am.*,
   No. 14-0944, 2015 U.S. Dist. LEXIS 166164 (E.D. La. Dec. 11, 2015)..........................28, 48

*King v. United SA Fed. Credit Union*,
   744 F. Supp. 2d 607 (W.D. Tex. 2010).....................................................45

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ..........................................35, 36, 41

*Lizondro-Garcia v. Kefi LLC*,
   No. 12-1906, 2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014)................................28

*Maldonado v. BTB Events & Celebrations, Inc.*,
   990 F. Supp. 2d 382 (S.D.N.Y.2013)..............................................15, 31, 32, 33

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d. Cir. 2007)............................................................46

*Mazur v. Olek Lejbzon & Co.*,
   No. 05 Civ. 2194 (RMB) (DF),
   2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 29, 2005).....................................19

*In re McKesson HBOC Inc. ERISA Litig.*,
   391 F. Supp. 2d 844 (N.D. Cal. 2005) .....................................................40

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010)..........................13

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...................................................36

vi

*Meyers v. Texas*,
   No. 00-430, 2010 U.S. Dist. LEXIS 47809 (W.D. Tex. Feb. 16, 2010)...........................35, 47

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270 (PAC),
   2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) .....................................................13

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999), .................................................................................12, 20, 23

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   910 F. Supp. 2d 891 (E.D. La. 2012) .............................................................................18, 35

*Olibas v. Native Oilfield Servs., LLC*,
   104 F. Supp. 3d 791 (N.D. Tex. 2015) ..................................................................................47

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ........................................................................................25, 26

*Prasker v. Asia Five Eight LLC*,
   No. 08 Civ. 5811 (MGC),
   2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010) ...............................................13, 20, 24

*Purdie v. Ace Cash Express, Inc.*,
   No. 3:01-CV-1754-L,
   2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) ....................................................40

*Quintanilla v. A&R Demolition, Inc.*,
   No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008).........................27, 35

*Ramirez v. Mansions Catering, Inc.*,
   74 A.D. 3d 490, 905 N.Y.S. 2d 148 (1st Dept. 2010).............................................................16

*Recinos-Recinos v. Express Forestry, Inc.*,
   233 F.R.D. 472 (E.D. La. 2006)............................................................................................25

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...........................................................................................2, 35

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009).........................13

*Rivas v. Beaucoup Crawfish of Eunice, Inc.*,
   No. 12-2610, 2014 U.S. Dist. LEXIS 153370 (W.D. La. Oct. 10, 2014)...............................30

*Rosario v. Valentine Ave. Disc. Store, Co.*,
   No. 10-5255, 2016 U.S. Dist. LEXIS 28266 (E.D.N.Y. Mar. 3, 2016)...................................28

*Roussell v. Brinker Int'l, Inc.*,
    441 F. App'x 222 (5th Cir. 2011) ......................................................11

*Ryan v. Volume Servs. Am., Inc.*,
    2013 N.Y. Misc. LEXIS 932 (N.Y. Sup. Ct., N.Y. Cty. March 7, 2013) ..............................34

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (N.Y. 2008) ..............................................13, 14, 15, 31

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K,
    2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ..................................26, 43

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ..............................................39, 48

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................46

*Slipchenko v. Brunel Energy, Inc.*,
    No. H-11-1465, 2015 U.S. Dist. LEXIS 8177 (S.D. Tex. Jan. 23, 2015)..............28, 32, 40, 41

*Smith v. Crystian*,
    91 F. App'x 952 (5th Cir. 2004) ......................................................26

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ......................................................40

*Steering Comm. v. Exxon Mobil Corp.*,
    461 F.3d 598 (5th Cir. 2006) ......................................................19

*Stoffels v. SBC Communs., Inc.*,
    No. SA-05-cv-0233-XR,
    2012 U.S. Dist. LEXIS 80431 (W.D. Tex. June 11, 2012) ......................................................39

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) ......................................................12

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    No. 12cv4216 (RLE),
    2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) ......................................................43

*In re The Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ......................................................36

*Thornton v. E. Tex. Motor Freight*,
    497 F.2d 416 (6th Cir. 1974) ......................................................39

*Tiro v. Public House Invs., LLC*,
 No. 11 Civ. 7679, 2003 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ...........34, 43, 44

*Turner v. Murphy Oil USA, Inc.*,
 234 F.R.D. 597 (E.D. La. 2006) ........................................................................................24

*Turner v. Murphy Oil USA, Inc.*,
 472 F. Supp. 2d 830 (E.D. La. 2007) ...............................................................................45

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) ......................................................................................41, 49

*Vaughn v. Am. Honda Motor Co.*,
 627 F. Supp. 2d 738 (E.D. Tex. 2007) ..............................................................................23

*Verdin v. R&B Falcon Drilling USA, Inc.*,
 C.A. No. G-01-168, 2006 U.S. Dist. LEXIS 43273 (S.D. Tex. Apr. 24, 2006) ....................50

*Villalobos v. Vasquez-Campbell*,
 Civil Action No. EP-89-CA-27,
 1991 U.S. Dist. LEXIS 18841 (W.D. Tex. Nov. 15, 1991) ....................................................44

*Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ................................................................12, 13, 17, 18

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ..............................................................................................29

*Williams v. Twenty Ones, Inc.*,
 No. 07 CV 3978, 2008 U.S. Dist. LEXIS 117546 (S.D.N.Y. June 29, 2008) .......................19

**Statutes**

N.Y.L.L. § 196-d ...................................................................................................................13

**Other Authorities**

12 N.Y.C.R.R. § 146-2.18 .....................................................................................................14

12 N.Y.C.R.R. § 146-2.19 ...........................................................................................14, 15, 31

Fed. R. Civ. P. 23(a) .............................................................................................................11

Fed. R. Civ. P. 23(a)(1) .........................................................................................................12

Fed. R. Civ. P. 23(a)(2) .........................................................................................................13

Fed. R. Civ. P. 23(a)(4) .........................................................................................................20

Fed. R. Civ. P. 23(b) ........................................................................................................................11

Fed. R. Civ. P. Rule 23(b)(3) ....................................................................................................23, 25

Rule 23(e) ........................................................................................................................................25

## ARGUMENT

## I.    INTRODUCTION

Plaintiffs Jillian Izzio and Heather Zoeller ("*Izzio* Plaintiffs") and Kara Ashby ("Plaintiff Ashby"), joined by Diane Gulla, Daniel Howard, Derik Kane, Michael Overdorf, and Sara Owczarzak (the "*Law* Plaintiffs"), who are the parties in two similar wage-and-hour class actions against the same Dallas-based Defendant, submit this Memorandum of Law in support of their Motion for Certification of the Settlement Classes, Final Approval of the Enhanced Settlement, and Award of Attorneys' Fees and Expenses.

On October 20, 2015, this Court (Solis, J.) took the first step in the settlement approval process by preliminarily approving the Settlement Agreement,[1] provisionally certifying the Settlement Classes pursuant to Federal Rule of Civil Procedure 23, directing that notice be sent to the class, and setting a date for the final fairness hearing.  ECF No. 37.  In response, the Settlement Classes expressed overwhelming support for the Settlement.  Settlement Class members entitled to receive 83.3% of the Settlement Payments have opted in, while only one Settlement Class member has excluded herself, and just one objection was filed on behalf of two Settlement Class members, Anthony Metzger and Jillian Brana (together, the "Objectors").  On March 16, 2016, this Court entered a Final Order certifying the Settlement Classes and granting final approval of the Settlement Agreement.  ECF No. 47.

Objectors appealed, and the Fifth Circuit Court of Appeals remanded for "appropriate Rule 23 findings."  *Izzio v. Century Golf Partners Mgmt., L.P.,* 670 Fed. App'x 348, 350 (5th Cir. 2016). Thereafter, this Court ordered all parties, including Objectors, to participate in mediation with the

---

[1] Capitalized terms shall have the same definition as those used in the Settlement Agreement, attached as Exhibit A in the Appendix to Joint Motion for Preliminary Approval of Settlement of Collective and Class Action, unless otherwise specified herein.  ECF No. 34.

Honorable Jeff Kaplan (Ret.).  ECF No. 96.  With Judge Kaplan's assistance, the Plaintiffs in *Izzio*

and *Law*, on behalf of the Settlement Classes, and Defendant reached an enhanced $1.425 million

settlement (the "Enhanced Settlement").  Despite their full participation in mediation, Objectors

still oppose the Enhanced Settlement.  ECF No. 104.

In furtherance of the Fifth Circuit's directive, Plaintiffs hereby submit this brief in support

of final approval of the Enhanced Settlement, which provides a detailed and rigorous analysis of

the Federal Rule of Civil Procedure 23 factors.  Indeed, for the reasons below, the Court should

certify the Settlement Classes, grant final approval of the Enhanced Settlement, and award

attorneys' fees and expenses.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Four Cases Implicated By The Enhanced Settlement

On August 20, 2013, Diane Law[2] and Diane Gulla filed an action against Defendant in

New York Supreme Court.  *See Law et al. v. CGPM/WMC Operating, LLC d/b/a Arnold Palmer

Golf Management,* Index No. E150883/2013 ("*Law* Action").  On November 18, 2013, Law and

Gulla served an amended complaint, adding four additional plaintiffs.  The *Law* Plaintiffs, like all

members of the proposed Settlement Classes, are banquet service workers who worked as banquet

staff at four golf and catering facilities in New York owned and/or run by Defendant.  The four

facilities are: (1) Brierwood Country Club in Hamburg, New York ("Brierwood"); (2) Fox Valley

Club in Lancaster, New York ("Fox Valley"); (3) Tan Tara Golf Club in North Tonawanda, New

---

[2] Plaintiff Diane Law originally agreed to the Settlement Agreement but subsequently opted out.  Declaration of Adam Gonnelli in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Plaintiffs' Motion for Approval of Service Awards, Attorneys' Fees and Expenses (the "Gonnelli Decl.") found in the Compendium of Declarations and Statements in Support of Plaintiffs' Motion for Class Certification and Final Approval of the Settlement Agreement and Motion for Approval of Service Awards, Attorneys' Fees and Expenses (hereinafter as "Comp.") filed on March 10, 2016 (ECF No. 44) at 6-7 ¶ 33.  This fact is not an obstacle to settlement approval.  The Fifth Circuit has upheld approval of a class settlement where "twenty-three of the twenty-seven named plaintiffs had filed objections."  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 171 (5th Cir. 1983).

York ("Tan Tara"); and (4) Harbor Links Golf Club in Port Washington, New York ("Harbor Links") (collectively, the "Four Golf Clubs"). The *Law* Plaintiffs brought claims for unpaid service charges and failure to pay spread of hours.

On June 13, 2014, after the *Law* Action was pending for ten months and discovery and investigation were conducted, Anthony Metzger filed an action against Defendant in the Eastern District of New York. *See Metzger v. Century Golf Partners Management, LP d/b/a Arnold Palmer Golf Management, et al.,* No. 14-cv-3747 ("*Metzger* Action"). Metzger brought the same claims as those brought in the *Law* Action – i.e., claims for unpaid service charges and failure to pay spread of hours. Metzger also brought class/collective claims for failure to calculate overtime under the FLSA (which was derivative of his service charge claim), as well as claims for uniform requirement violations. Metzger purported to bring his claims only on behalf of the Harbor Links banquet service workers.

On September 5, 2014, the *Izzio* Plaintiffs filed their Complaint in this Court, in Dallas, Texas where Defendant's corporate headquarters is located, on behalf of themselves and all tipped employees at the Four Golf Clubs, asserting claims for withholding service charges, off the clock work without overtime compensation, failure to reimburse for uniforms, and failure to appropriately pay overtime.

On September 10, 2014, Kara Ashby filed a complaint against Defendant in the Western District of New York on behalf of herself and an undefined class of employees at the Four Golf Clubs, asserting identical claims as those asserted in *Izzio. See Ashby v. Century Golf Partners Management, L.P., d/b/a Arnold Palmer Golf Management,* No. 14-cv-759 ("*Ashby* Action"). On March 18, 2015, the *Ashby* Action was transferred to this Court and, by Order dated April 21, 2015, was consolidated with this action. ECF No. 33.

B.     **Investigation, Exchange Of Discovery And Litigation**

The *Law* Plaintiffs and their counsel conducted extensive discovery, both formal and informal, concerning all Four Golf Clubs, including Harbor Links.  The *Law* Plaintiffs submitted 32 written interrogatories and requested and received from Defendant voluminous records pertaining to Defendant's pay practices, service charges, and tipping policies.  Gonnelli Decl., Comp. at 4 ¶ 10.  Specifically, Defendant produced:

- Payroll and employment policies, including the Employee Handbook, that were uniformly used at all Four Golf Clubs, including Harbor Links;

- Sworn interrogatory responses regarding Defendant's policies and practices regarding the collection and retention of service charges at the Four Golf Clubs, including Harbor Links;

- Sample banquet contracts and other advertising, promotional and banquet materials presented by Century Golf to customers for each of the Four Golf Clubs, including Harbor Links, along with sworn interrogatory responses which described the time period when the service charge language in the sample contracts was used uniformly in all banquet event contracts at each of the Four Golf Clubs during the relevant time period;

- Personnel files for the named plaintiffs, including payroll records; and

- Profit and loss statements for the relevant time period, which reflected the service charges and tips collected, as well as information regarding how to calculate the service charges for each of the Four Golf Clubs, including Harbor Links.

Huot Decl. ¶¶ 2-3.[3]  In addition, the *Law* Plaintiffs produced over 150 pages of documents and interrogatory responses to Defendant.  *Id.* at ¶ 4 (describing same).

These documents allowed Plaintiffs to evaluate the strengths and weaknesses of their claims and Defendant's exposure.  *Id.* at ¶ 5.  Plaintiffs expended significant time and effort analyzing the data, including building sophisticated spreadsheets calculating the service charges

[3] Declaration of Innessa M. Huot, hereinafter called "Huot Decl.," is filed under Tab A of the Compendium of Declarations and Statements in Support of Plaintiffs' Motion for Certification of the Settlement Classes, Approval of the Enhanced Settlement, and Award of Attorneys' Fees and Expenses ("Comp. 2"), filed concurrently.

collected by Defendant, unpaid wages and tips for hundreds of employees over several years at each of the Four Golf Clubs, and engaged in back and forth discussions with Defendant and its counsel to better understand the data.  *Id.* at ¶ 6.  Plaintiffs' Counsel also interviewed over 40 restaurant employees, including employees at Harbor Links.  *Id*. at ¶ 7.  During the course of this discovery and investigation, Plaintiffs' Counsel determined that Defendant did not remit service charges to the banquet staff at three of the four New York facilities.  *Id*. at ¶¶ 8-9.  The fourth facility, Tan Tara, did not appear to have the same service charge issue.  *Id*. at ¶ 10.

After engaging in extensive paper discovery and informal investigation, on October 6, 2014, the parties to the *Law* Action participated in mediation before Ruth Raisfeld, Esq., an experienced and respected employment mediator, and reached the basic structure of a settlement agreement.  Gonnelli Decl., Comp. at 4 ¶ 11.  Thereafter, the *Law* Plaintiffs and Defendant engaged in extensive and successful settlement discussions with the *Izzio* and *Ashby* Plaintiffs, and the initial Settlement Agreement was reached.  *Id.* at ¶ 12.  The *Law* action was stayed on December 2, 2014, pending approval of the settlement.  *Id*. at ¶ 15.

C.      **Plaintiffs' Motion For Preliminary Approval**

On June 4, 2015, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Notice of Settlement ("Motion for Preliminary Approval"), which the Court granted on October 20, 2015.  ECF Nos. 32-34; 37.

D.      **Order Granting Certification Of The Settlement Classes, Final Approval Of The Proposed Settlement, And Approval Of Service Awards, Attorneys' Fees And Expenses**

On March 16, 2016, this Court (Solis, J.) certified the Settlement Classes, approved the settlement in all respects, and ordered the parties to implement the terms of the Settlement Agreement.  ECF No. 47.  The Court further ordered that it shall retain jurisdiction over the

execution of the Settlement Agreement, as well as the distribution of settlement funds.  ECF No. 47.  On the same day, the Court granted Plaintiffs' request for Service Awards, attorneys' fees, and reimbursement of expenses.  ECF No. 48.

In approving the Settlement Agreement, the Court specifically overruled the Metzger objections: "I believe based upon what I have before me that they had sufficient information and that the Harbor Links – that's the crux of your objection is that this is unfair to the Harbor Links employees, and it doesn't appear to me to be unfair."  Huot Decl., Exhibit ("Ex.") 2 at 48:23 – 49:2.  Furthermore, ". . . they are receiving 43 percent of the settlement and it looks to me like maybe your argument . . . the settlement just should have been higher . . . that's always the case in these settlements."  *Id.* at 49.  But in the end, Judge Solis found that "the settlement is reasonable here."  *Id.*

### E.   Appeal To United States Court Of Appeals For The Fifth Circuit

On April 13, 2016, Objectors appealed the Court's final approval Order to the Fifth Circuit. ECF No. 49.  On December 7, 2016, the Fifth Circuit vacated and remanded the Court's Order (but did not reverse and render) so that the parties may present the Court with a more "rigorous" analysis of the Rule 23 factors.  *See* ECF Nos. 77-78.  The Fifth Circuit specified that "[p]ior to certifying a class, the district court must conduct its own rigorous analysis of the Rule 23(a) factors, especially when, as is true here, satisfaction of those factors is seriously contested."  ECF No. 77 at 4.  Importantly, the Fifth Circuit did not overturn Judge Solis' decision that the original Settlement Agreement was "fair, reasonable and adequate," a holding made after full briefing, a hearing with live testimony, and despite Objectors' protestations to the contrary.  Huot Decl., Ex. 2 at 47-49.

### F.   Post-Appeal Mediation In Front Of Judge Kaplan

On March 1, 2017, this Court ordered the parties to mediate, and appointed Hon. Jeff

Kaplan (Ret.) as Mediator.  ECF No. 96.  This Court directed all parties, including Objectors, to

participate in mediation.  *Id.*  On October 20, 2017, all parties, including Objectors, participated in

the court-ordered mediation and were unable to reach resolution.  ECF No. 102.  Thereafter, and

with the continued assistance of Judge Kaplan, the parties continued to work towards a settlement.

Plaintiffs and Defendant were able to reach the Enhanced Settlement with the assistance of Judge

Kaplan.  ECF. No. 103-104.  The parties, through Judge Kaplan, attempted to include Objectors

in the settlement discussions and the Enhanced Settlement, but Objectors nevertheless refused.

ECF No. 104; Huot Decl. ¶ 15..

       **G.**       <u>**Summary Of The Enhanced Settlement**</u>

       **1.**       **The Settlement Fund**

As a result of the mediation and subsequent negotiations, Defendant has agreed to pay an

additional $225,000 for a total Maximum Gross Settlement Amount of $1,425,000, inclusive of

payments to participating Settlement Class Members, Court-approved attorneys' fees, costs and

expenses, Service Awards, and the claims administrator's fees.  *See* Huot Decl., Enhanced

Settlement at Ex. 1.  This is a nearly 20% increase over the original settlement.  In addition, and

beyond the Maximum Gross Settlement Amount, Defendant has agreed to pay the employer-owed

payroll taxes.  *Id.*

       **2.**       **Settlement Classes**

The State Law Settlement Class consists of Plaintiffs and all individuals employed by

Defendant who worked as hourly banquet service staff at any event held at the Four Golf Clubs,

at some point during the period from August 20, 2007 through and including March 5, 2015, and

who have not excluded themselves from the Class.

The FLSA Settlement Class consists of Plaintiffs and all individuals employed by

Defendant who worked as hourly banquet service staff at any event held at the Four Golf Clubs,

at some point during the period from September 5, 2011 through and including March 5, 2015 and

who opted into the settlement pursuant to the FLSA, 28 U.S.C. § 216(b).[4]

### 3.    Releases

All Settlement Class members who did not excluded themselves will release all claims

brought in the *Law* Action, *Izzio* Action, and *Ashby* Action, or that could have been brought in

those Actions, whether or not they opted into the settlement, which was explained in the Notice.

### 4.    Allocation Formula

Under the allocation formula, ninety percent (90%) of the Revised Maximum Gross

Settlement Amount, (i.e., the $1.425 million after deductions for attorneys' fees, service awards,

expenses and costs of administration), will be divided by the number of hours worked by all

Settlement Class members who worked at Fox Valley, Brierwood, and Harbor Links from August

20, 2007, through and including March 5, 2015, to establish a "per hour" amount.  This number is

$3.81.  *See* Supplemental Declaration of Brain Devery Regarding Updated Calculations ("Devery

Supp. Decl.") at 129 ¶ 4.[5]  Each Settlement Class member is eligible to receive a settlement

payment in an amount equal to the "per hour" amount multiplied by the number of hours that

individual worked for Defendant as hourly banquet service staff at these three clubs during the

above-referenced time period.  To put this in perspective, the banquet servers at the Fox Valley,

Brierwood, and Harbor Links Clubs typically made between $8.00 and $15.00 per hour.  Thus, the

"per hour" amount they are receiving under the Enhanced Settlement equals approximately 25 -

47% of their hourly pay, depending upon the Settlement Class member's hourly rate.

The remaining 10% of the Revised Maximum Gross Settlement Amount was divided by

the gross number of hours worked by all Settlement Class members who worked at Tan Tara from

---

[4] The State Law Settlement Class and the FLSA Settlement Class are collectively referred to as the "Settlement Class."
[5] Devery Supp. Decl. is attached to Comp. 2 at Tab B.

August 20, 2007, through and including March 5, 2015, to establish a "per hour" amount. This number is $2.54. *Id*. at ¶ 4. Each Settlement Class member who worked at Tan Tara was eligible to receive a settlement payment in an amount equal to the "per hour" amount multiplied by the number of hours that individual worked for Defendant as hourly banquet service staff at Tan Tara during the above-referenced time period.

The 90-10 split was negotiated by the parties in recognition that there were no service charge claims at the Tan Tara facility, but there were still potential spread of hours, uniform, and off-the-clock claims for these Settlement Class members. Huot Decl. ¶¶ 10-11.

### 5.   Attorneys' Fees and Costs

Plaintiffs' request Court approval for twenty-five percent (25%) of the Maximum Gross Settlement Amount for their Attorneys' Fees amounting to $356,250, plus their litigation costs and expenses, which are $45,000.00. Huot Decl.¶ 25. In order to facilitate final settlement of this action, Plaintiffs' Counsel agreed to reduce their total fees, which were previously based on a 33 1/3% contingency (*see* ECF No. 41 at 6), by eight percent. Huot Decl. ¶ 17.

### 6.   Cost of Administration

In the initial Settlement Agreement, the costs of notice and claims administration, including issuing checks, were recorded at $38,844.56. Gonnelli Decl., Comp. at 8 ¶ 50. While this matter was under review, Angeion Group ("Angeion"), the Settlement Claims Administrator selected by Plaintiffs, has incurred additional fees and costs not originally contemplated in the initial invoice. Angeion has prepared a supplemental Estimate to Complete the administration and distribution in this matter, projecting additional expenses totaling $3,464.23, thereby making the total estimated cost to administer and distribute $42,308.79. *See* Devery Supp. Decl. ¶ 3. Huot Decl. ¶ 28.

### 7.   Service Awards

In addition to their payments under the allocation formula, Plaintiffs seek Service Awards

totaling $39,000.00 for the eight Named Plaintiffs in recognition of the services they rendered and the risks they incurred, including their travel and participation in the Court-ordered Mediation on October 20, 2017.  ECF No. 34, Ex. A; Huot Decl. ¶¶ 13-14.

> **H.     The Settlement Claims Administrator And Notice Program**

Angeion's fees and costs will be paid from the Maximum Gross Settlement Amount.  On December 4, 2015, Angeion mailed Court-approved Notices to 435 Class Members, using the names and addresses provided by Defendant.  *See* Comp. at 11, Declaration of Claims Administrator Brian S. Devery ("Devery Decl.") ¶ 5.  After the Notices were mailed, 45 Notices were returned as undeliverable.  *Id.* at 11-12 ¶ 7.  Angeion performed skip traces for these undeliverable Notices, and re-mailed 32 of them for whom new addresses were located.  *Id.* at 12 ¶ 8.  Six notices were returned as undeliverable a second time with no additional addresses available from a supplementary trace.  *Id.* at ¶¶ 8, 11.  Additionally, on January 6, 2016, Angeion sent reminder postcards to 319 Class Members who did not respond to the Notice.  *Id.* at ¶ 9.  There were a total of 20 Class Members for whom Notices were ultimately undeliverable.  *Id.* at ¶ 11.  Of the 435 Settlement Class members, 256 ultimately opted-in to the Settlement Agreement.  Devery Supp. Decl. ¶ 4.

The Notice advised Settlement Class members, among other things, that they could object to or exclude themselves from the settlement.  ECF No. 34, Ex. F.  Only one objection was filed by two Objectors, Metzger and Brana, and only one Settlement Class member excluded herself from the settlement, Diane Law.  *Metzger* Obj., ECF No. 38.  After Angeion issued Notice, Plaintiffs' Counsel received dozens of telephone calls and emails from the Settlement Classes with questions about the settlement and/or providing updated contact information.  Gonnelli Decl., Comp. at 6     ¶ 32.

10

III.    **THE SETTLEMENT CLASSES SHOULD BE CERTIFIED**

    A.    **The Settlement Classes Meet The Standard For Class Certification**

When considering a class action settlement, courts first examine whether the settlement class can be certified. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *see also Ibe v. Jones,* 836 F.3d 516, 528-29 (5th Cir. 2016) (discussing Fifth Circuit standards for class certification). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but the other requirements for certification must still be satisfied. *Amchem*, 521 U.S. at 620.

Under Rule 23, a class action may be maintained if all prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class' interests. Fed. R. Civ. P. 23(a); *see also Ibe,* 836 F.3d at 528-29. To satisfy Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," or "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

The proposed State Law Settlement Class meets all of the requirements of Rule 23, both (a) and (b), for certification. Moreover, by satisfying the requirements under Rule 23, Plaintiffs satisfy even the most stringent of the Fifth Circuit standards for certification of a FLSA collective action under 216(b). *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (denying decertification of FLSA collective action regarding tipping practices at restaurant). Since all of the Rule 23 certification requirements for settlement purposes are met, the certification requirements under the FLSA are also met.

11

### 1.   Numerosity

Numerosity is satisfied when the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the present case, notice was sent to 435 Settlement Class members, 256 of whom have opted in to the Settlement. Devery Decl., Comp. at 12 ¶ 4; 13 ¶ 12. The Fifth Circuit has held that classes with far fewer members satisfy Rule 23(a)(1)'s numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (upholding finding of numerosity where class consisted of between 100 and 150 members), *abrogated in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Objectors do not dispute that numerosity is satisfied here.

### 2.   Commonality

### i.   Legal Standards Governing Commonality

The Settlement Classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Commonality under Rule 23(a)(2) requires "that all of the class member's claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). Thus, class-wide proceedings must have the ability "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart,* 564 U.S. at 350. However, "even a single common question will do." *Id.* at 359 (internal quotation marks omitted). With regards to commonality, "[t]he focus in the settlement context should be on the conduct (or misconduct) of the defendant and the injury suffered as a consequence." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1053 (S.D. Tex. 2012) (citation and

quotations omitted).  In cases involving claims of failing to pay appropriate service charges or overtime to banquet workers, courts have recognized that commonality is satisfied where "[d]efendants failed to pay overtime pay; and (2) where [d]efendants misappropriated mandatory gratuities or 'service charges' that [d]efendants charged their event customers."  *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, at *5 (S.D.N.Y. Mar. 2, 2010).[6]

Here, there are plainly "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), because the Settlement Classes' claims all derive from the common contention that Defendant's compensation policies were unlawful, when the same statutes and regulations are applied to the compensation policies at all Four Golf Clubs.  The common answers to these common questions "will resolve an issue that is central to the validity" of each Settlement Class members' claims in "one stroke."  *Wal-Mart,* 564 U.S. at 350.

### ii.    The Same Two Legal Standards Apply to All Settlement Class Members

Here, all Settlement Class members from the Four Golf Clubs, including Harbor Links, were subject to the same legal standards.  NYLL § 196-d provides that no employer shall "retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  NYLL § 196-d.  There are two different standards that apply to determine whether a service charge is a gratuity under the NYLL during the class period: (1) the "*World Yacht*" standard for charges before January 1, 2011; and (2) the New York State Department of Labor ("NYSDOL") regulations for charges after January 1, 2011.

---

[6] *See also Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *4-5 (S.D.N.Y. Jan. 6, 2010) (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *6 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,  No. 06 Civ. 4270 (PAC) , 2009 U.S. Dist. LEXIS 27899, at *10-11 (S.D.N.Y. Mar. 31, 2009) (same).

In *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (N.Y. 2008), the New York Court of Appeals held that a mandatory service charge may constitute a "charge purported to be a gratuity" within the meaning of § 196-d "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Id.* at 81. Whether "a mandatory charge or fee is purported to be a gratuity," the *World Yacht* court instructed, is to be "weighed against the expectation of the reasonable customer." *Id.* at 79. In reaching this conclusion, the Court cited a NYSDOL opinion letter, dated March 26, 1999:

> If the employer's agents lead the patron who purchases a banquet or other special function to believe that the contract price includes a fixed percentage as a gratuity, then that percentage of the contract price must be paid in its entirety to the waiters, busboys and 'similar employees' who work at that function, even if the contract makes no reference to such a gratuity.

*Id.* at 79-80. In other words, for claims accruing prior to January 1, 2011, it is Plaintiffs' burden to prove that Defendant affirmatively misled its customers to believe that a service charge was a gratuity.

The second framework governs the analysis after January 1, 2011. Effective January 1, 2011, the NYSDOL regulations created a "rebuttable presumption" that any charge made in addition to charges for food, beverage and specified other materials or services "is a charge purported to be a gratuity." 12 N.Y.C.R.R. § 146-2.18. Further, § 146-2.19 states that an administrative charge "shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip"; that "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity"; and that "[a]dequate notification shall include a statement in the contract or agreement with the customer, and on any menu or bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as

14

gratuities to the employees who provided service." *Id.* §§ 146-2.19(a)-(c) (emphasis added).  *See also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 390 (S.D.N.Y.2013). In addition to the specific requirements, the "reasonable customer" standard still applies.  *Id.*

### iii.    The Contracts for the Four Golf Clubs are Virtually Identical

In addition to being subject to the same legal standards, the at-issue contract language is uniform across the Four Golf Clubs.  Prior to January 1, 2011, the banquet contracts stated that a service charge and sales tax will be added to all food and beverage charges, in virtually identical language.  *See* Huot Decl., Exs. 3, 4, 5, and 6.  Thus, until January 1, 2011, each of these virtually identical contracts is analyzed under the *World Yacht* standard.

After the January 1, 2011 regulations were implemented, Fox Valley, Brierwood, and Harbor Links made substantially similar changes to their banquet contracts, albeit at different times.  Specifically, starting in October 2012, the Harbor Links contract was changed as follows:

> The Course charges a Service Charge of 20% of the total bill. This fee is paid directly to the course. We use the proceeds to pay competitive wages to our service staff as we believe this allows us to retain excellent staff members. However, the Service Charge is not paid directly to the particular server or servers who provided service to you for your meal, outing or event. If you wish to add a separate additional gratuity to your bill, you are welcome to do so.

Huot Decl., Ex. 9.  Thereafter, starting in October 2013, Brierwood and Fox Valley revised their contracts using the following identical language:

> A 20% taxable service charge and state sales tax will be added to all food and beverage charges. … Service Charge: The Club's standard Service Charge for this Event is the amount set forth above. The Service Charge is an amount which is paid directly to the Club. The Club uses the proceeds to pay competitive wages to our staff, as we believe this allows us to attract and retain excellent staff members. However, the Service Charge is not paid directly to any particular staff member or members who provide service to you at your Event.  If you wish to add a separate additional gratuity to your bill, you are welcome to do so.

Huot Decl., Exs. 7 & 8.

### iv.   Settlement Class Members Were Subject to the Same Compensation Policy

Finally, Plaintiffs contend that all Settlement Class members were subject to the same compensation policy: service charges were collected by the Four Golf Clubs and were not passed on to banquet service workers. *See* Complaint ¶¶ 29-34.  ECF No. 1.  Discovery and investigation confirmed that Plaintiffs' claims regarding the service charges applied to Brierwood, Fox Valley and Harbor Links.[7]  Huot Decl., Ex. 10. Objectors argue that the two different legal standards defeat commonality.  However, the change in New York law on service charges does not pose an obstacle to certification.  Indeed, Objectors' counsel apparently agrees.  Objectors' counsel recently argued, in a case pending in the Western District of New York captioned *Davis v. Riverfront on the Niagara, LLC,* No. 15-cv-429, with similar facts, that where an employer had a policy that impacted class members identically, that employees who worked at three different locations, both before and after the January 1, 2011 regulation change (*see supra*), should be certified as one class.  *See* ECF No. 94-1.  Objectors' counsel reasoned that the case should be certified because all class members were subject to the same compensation policy: mandatory charges added to customer bills were not passed on to class members.  *Id.*  Objectors' counsel cited a string of cases which certified classes in "similar cases alleging defendant failed to distribute to service workers a mandatory service charge that was purported to be a gratuity."  *Id.* at 7 (citing *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 337 (S.D.N.Y. 2010) ("Commonality is clearly satisfied . . . granting that there were slight variations in the way the service charge was presented to clients, the service charge was collected and distributed in an essentially uniform manner for each event, providing a common issue of fact"); *Ramirez v. Mansions Catering, Inc.,* 74 A.D. 3d 490, 905

---

[7] The claims of the Settlement Class members of Tan Tara are common to the claims of the Settlement Class members of the other three golf clubs with respect to uniform allowance and maintenance, overtime and spread of hours claims. Huot Decl. ¶ 1.

N.Y.S. 2d 148 (1st Dept. 2010) (upholding certification of catering wait staff employees who had not been paid mandatory service charges pursuant to NYLL § 196-d)).

The same facts are present here.  In sum, the at issue clubs used substantially similar contract language throughout the class period and were subject to the same legal standards. Consequently, a determination of whether the service charges were a gratuity under NYLL §196-d will answer a "common question" and determine liability for violation of the NYLL "in one stroke." *Wal-Mart,* 564 U.S. at 350.  Moreover, since the FLSA claims are based upon a failure to properly calculate overtime rates, this same determination will also determine liability for these claims as well.

### v.       Objectors' Argument on Commonality is Meritless

With respect to commonality, the Fifth Circuit noted that Objectors:

> Point to the settling parties' representation below that 'the [four] catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus and customer documents . . . [and] sorting out the legal implications of each language change might be challenging.'  They also highlight the settling parties' 'admi[ssion]' that 'an evaluation of the claims of the Settlement Class members would require an analysis of change in fact or law . . . giv[ing] rise to many different analyses which could prove difficult for a jury and might have implications for a contested class certification motion.

*Izzio*, 670 Fed. App'x at 350.

However, such differences do not defeat certification, especially for settlement purposes.[8] These changes in law and any minor variations in the contracts at worst only serve to complicate the damages analysis and should not be considered in the very different analysis of commonality for class certification.  *In re Deepwater Horizon*, 739 F.3d 790, 811-12 (5th Cir. 2014)

---

[8] Such arguments are usually addressed under predominance.  The complexity of litigation going forward, including the change in state law and the fact that one facility does not have a service charge claim is largely irrelevant in the settlement context.  *See infra* III(B).

("*Deepwater II*") (citing *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 569 U.S. 455, 465 (2013)).

This is best illustrated by *Deepwater II*.  The *Deepwater* litigation arose from a blowout, explosion, and fire aboard the Deepwater Horizon, a semi-submersible drilling rig off the coast of Louisiana.  The incident resulted in the filing of hundreds of cases with thousands of individual claimants which were consolidated.  *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 900 (E.D. La. 2012) ("*Deepwater I*").  A settlement was reached on behalf of a class of claimants from five different states asserting six different categories of damages.  *Id.* at 903.  Over 13,382 objections to the settlement were filed, of which the Court found 599 were valid.  *Id.* at 935-36.  The objectors, in that case, argued, among other things, that the settlement class failed to meet the commonality requirement because the class suffered such varied damages, and some purportedly no damages at all.  *Deepwater II*, 739 F.3d at 811-12.  On appeal, following the certification of the settlement class, the Fifth Circuit held that under *Wal-Mart* the commonality requirement of Rule 23 must be analyzed under "the legal requirement that class members have all 'suffered the same injury' [which] can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."  *Id.* at 810-11. Under such an analysis, commonality is satisfied even with just one common issue which will "generate common answers apt to drive the litigation."  *Id.* at 811 (quoting *Wal-Mart*, 564 U.S. at 390) (citing *Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) and *Stukenberg*, 675 F.3d at 840).

Thus, here, while the law on service charges and the contract language may have changed during the Class Period, the same issues confront the workers: were they entitled to the service charges and did they receive them?  Accordingly, they "suffered the same injury" and resolution of those issues will "generate common answers apt to drive the resolution of the litigation." *Wal-*

*Mart*, 564 U.S. at 350.  Any differences in damages between one facility and another based upon the timing of the changes in the contractual language, or indeed the absence of damages whatsoever, does not defeat commonality because this would amount to "a determination of the truth or falsity of the parties' contentions, rather than an evaluation of those contentions' commonality." *Deepwater II*, 739 F.3d at 811.  Moreover, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification," particularly where, as here, damages may "be determined by reference to a mathematical or formulaic calculation." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006); *accord Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306-07 (5th Cir. 2003).

In addition, contrary to the arguments set forth in the *Metzger* Objection (ECF No. 38), the mere fact that different Settlement Class members may have slightly different claims at different facilities does not defeat either commonality, typicality, or predominance under 23(b)(3).  With respect to Tan Tara, all the other claims are common: overtime, spread of hours, and uniforms and uniform maintenance allowance, but these differences do not preclude certification.  Huot Decl. ¶ 11; *see, e.g., Williams v. Twenty Ones, Inc.*, No. 07 CV 3978, 2008 U.S. Dist. LEXIS 117546, at *3-4 (S.D.N.Y. June 29, 2008) (certifying action of "office workers, waiters, bartenders, runners, and bussers" where no single violation affected every collective action class member but each member was affected by at least one alleged violation); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (of eight declarants, four allege that they were not fully compensated for overtime; five not paid for training; two forced to work off the clock); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321, at *13-22 (S.D.N.Y. Nov. 29, 2005) (certifying FLSA collective action and authorizing notice in case involving seven different job descriptions against four corporate entities in different locations).  Thus, for settlement purposes, the proposed Settlement Class members share sufficient

commonality to satisfy Rule 23(a)(2).

### 3.      Typicality

Rule 23 requires that the claims of the representative parties be typical of the claims of the

class.  The typicality requirement under Rule 23(a)(3) is not demanding; "[i]t focuses on the

similarity between the named plaintiffs' legal and remedial theories and the theories of those whom

they purport to represent."  *Mullen*, 186 F.3d at 625.  Like commonality, "[t]ypicality does not

require a complete identity of claims.  Rather, the critical inquiry is whether the class

representative's claims have the same essential characteristics of those of the putative class.  If the

claims arise from a similar course of conduct and share the same legal theory, factual differences

will not defeat typicality."  *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated*

*in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338.

Plaintiffs meet the typicality requirement here because their claims arise from the same

facts and circumstances.  Specifically, "[t]he named plaintiffs held the same positions and had the

same job duties as the class members.  They also suffered the same alleged injury as did the class

members – [d]efendants' failure to pay proper minimum wages and overtime, spread-of-hours pay,

[and] all of the tips that they earned[.]"  *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *5.  Thus,

Plaintiffs' legal claims here are typical of those of the class as a whole because they apply the same

legal theory to the same policies and practices.

### 4.      Adequacy of the Plaintiffs and Their Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

interests of the class."  Fed. R. Civ. P. 23(a)(4).  This adequacy requirement "encompasses class

representatives, their counsel, and the relationship between the two."  *Berger v. Compaq Computer*

*Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).  Thus, "the adequacy requirement mandates an inquiry

into [1] the zeal and competence of the representatives' counsel and . . . [2] the willingness and

ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees." *Id.* (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). To satisfy the adequacy requirement, Plaintiffs' Counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class." *Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161292, at *8 (W.D. La. Nov. 8, 2012).

Here, as set forth above, the class representatives "possess the same interest and suffer[ed] the same injury as the class members" they seek to represent. *Amchem*, 521 U.S. at 625–26 (internal quotation marks omitted). Most significantly, Plaintiffs have devoted time and effort in prosecuting the class claims, including active participation in discovery, attendance and live testimony at the final approval hearing in Dallas, and attendance at the Court-ordered mediation on October 20, 2017. *See, e.g.,* Huot Decl. ¶ 13; Gonnelli Decl., Comp. at 6 ¶¶ 5, 10; Declaration Of Diane Gulla In Support Of Approval Of Settlement of Collective and Class Action ("Gulla Decl."), Comp. at 18-20 ¶¶ 5-10, 14-15; Declaration of Daniel C. Howard in Support of Approval of Settlement of Collective and Class Action ("Howard Dec."), Comp. at 23-24 ¶¶ 5, 9-10.

Further, Plaintiffs are represented by counsel with significant experience in handling large scale class and wage and hour litigation. *See* Huot Decl., Ex. 14 (Firm Resume); *see also* ECF No. 34 at 157-185. Plaintiffs' Counsel has diligently and zealously prosecuted this action to obtain a beneficial settlement for the Settlement Class (who stand to recover on average thousands of dollars each, *see infra* Section VII(C)) in the face of vigorous defense from respected defense counsel. *Ayers v. Thompson,* 358 F.3d 356, 374, 376 (5th Cir. 2004) ("the settlement itself provides insight into adequacy of representation," and finding where district court concluded that the settlement agreement was fair, reasonable and adequate, there was adequate representation).

Objectors challenged the adequacy of the named Plaintiffs to represent the class members

who worked at the Harbor Links facility, on the grounds that none of them worked at Harbor Links. ECF No. 38 at 10-12.  Objectors seem to claim that since Four Golf Clubs were involved, Harbor Links employees could only be adequately represented by establishing subclasses for each facility. In a similar manner, the objectors in *Deepwater II* claimed separate subclasses were required for each of the five states in which settlement class members resided.  739 F.3d at 814.  The Fifth Circuit, however, rejected the need for such subclasses explaining:

> [a]lthough the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a 'fundamental conflict,' there is no need to create subclasses to accommodate every instance of 'differently weighted interests.' In this case, because the class members' claims arise under federal law rather than state law, we are not persuaded that there is any fundamental conflict between the 'differently weighted interests' of class members from different geographical regions. Although geographical criteria were indeed incorporated into the Settlement Agreement, the reason for this is both obvious and acknowledged in the Cobb Objectors' brief.

*Id.* at 813-14.  Just as in *Deepwater II*, the claims of the Settlement Class members, whether they worked at Harbor Links or elsewhere, all arose under the same New York and federal laws, from virtually identical contract language, and from the same conduct by the same employer.  As set forth above, Plaintiffs' Counsel diligently investigated the claims at all Four Golf Clubs, including Harbor Links.  Huot Decl. ¶ 6.  Further, as acknowledged by Objectors [ECF No. 38 at 17-18], due to differences in proving the NYLL § 196-d violations at the Tan Tara facility,[9] the Settlement Agreement limited the recovery for Tan Tara employees to just 10% of the total recovery. Moreover, Settlement Class members who worked at Harbor Links received 43% of the recovery, 12% more than employees at any other facility.  Gonnelli Decl., Comp. at 9, ¶ 35; Devery Supp. Decl. ¶ 9.  Clearly, the Harbor Links employees were adequately represented.

---

[9] Any argument that class certification is improper, whether under the rubric of commonality, adequacy or predominance, since Tan Tara employees did not suffer damages for violation of NYLL 196-d, are improper challenges to class certification because this would amount "a determination of the truth or falsity of the parties' contentions, rather than an evaluation of those contentions' commonality."  *Deepwater II*, 739 F.3d at 811.

### B.       Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires a party seeking class certification to "demonstrate 'both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy.'"  *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 347-48 (5th Cir. 2012) (quoting *Steering Comm.*, 461 F.3d at 600); *see also* Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem,* 521 U.S. at 594.

### 1.       Common Questions Predominate

The Court's inquiry in determining predominance entails: (i) "identifying the substantive issues that will control" the case; (ii) "assessing which issues will predominate;" and (iii) "determining whether the issues are common to the class."  *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quotation marks omitted).  Put differently, "[p]redominance examines whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 745-46 (E.D. Tex. 2007) (quoting *Anchem*, 521 U.S. at 623).

Here, as detailed above, the focus is on the policies of the Defendant, not the experiences of individual workers.  The alleged companywide policies affect all of the Settlement Class members' claims, including the Harbor Links' banquet service workers.  In particular, Plaintiffs allege Defendant had a policy of not paying the "service charges" under the catering contracts to affected Settlement Class members as gratuities; had a policy of not properly calculating and paying overtime and had a policy of failing to pay spread of hours pay or uniform costs and cleaning pay across all Four Golf Clubs.  These common issues "are not only significant but also pivotal," and therefore predominate over individual issues.  *Mullen*, 186 F.3d at 626 (finding such

threshold issues to satisfy the predominance requirement).

Thus, this case satisfies the predominance requirement because "the same substantive law will apply to all Plaintiffs' claims in these cases: this is not a case in which the varying laws of different states create the need for state subclasses or individual trials." *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 606 (E.D. La. 2006).   In other cases, where Plaintiffs alleged that "[d]efendants failed to pay proper minimum wages, overtime, and spread-of-hours pay, misappropriated tips, and failed to pay for uniform-related expenses" and asserted a "common legal theory -- that [d]efendants' wage and hour policies violated the NYLL" the Court found predominance under Rule 23(b)(3).  *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *6.

With respect to manageability under Rule 23(b)(3)(D), whether the case would be manageable as a class action at trial is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial").   Accordingly, the issues of whether a trial would be especially complicated due to the change in New York law on service charges or the inclusion of all four facilities does not militate against approval of the settlement.   The Court should find the predominance requirements satisfied because the common issues of the Defendant's policies are suitable for class-wide adjudication by representation.

### 2.     A Class Action is a Superior Mechanism to Resolve This Dispute

The Court must also consider if a class action is superior to other methods of resolving the litigation. *Amchem*, 521 U.S. at 615.   In order to determine whether a class action is superior, "the Court examines: (a) the interest of the class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action." *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 482 (E.D. La. 2006) (citing *Castano v. American Tobacco*, 84 F.3d 734, 747-48 (5th Cir. 1996)).

Each of these factors demonstrates the superiority of maintaining this case as a class action. First, that 256 Settlement Class members who collectively worked 83.3% of the total hours at the Four Golf Clubs, have opted into the settlement demonstrates the class members do not have strong individual interests in controlling the prosecution of the claims asserted in this case. Objector Metzger and his counsel filed the action which has not joined the settlement, after the *Law* Action had been pending and diligently prosecuted for ten months. Like Plaintiffs, the *Metzger* Action is a putative class and collective action. Indeed, by the time the *Metzger* Action was filed, substantial discovery and investigation had been conducted and the *Law* Action was well postured for a mediation before an experienced and respected mediator. Gonnelli Decl., Comp. at 4-5 ¶¶ 10-12.

If not for the class device, it is unlikely that individual Settlement Class members would have their claims addressed. *See* Fed. R. Civ. P. 23(b)(3). In addition, employing the class device here will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). While approval of a class action settlement is within the discretion of the Court, it should be exercised in light of the "strong judicial policy favoring the resolution of disputes through settlement." *Parker*

*v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004).  In deciding whether a settlement is fair and reasonable, the court considers the following six factors:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker*, 667 F.2d at 1209.

This Court previously found that the Settlement Agreement, even before Defendant increased the settlement payment and Plaintiffs' counsel reduced their fees, was "fair, reasonable and adequate."  *See* Huot Decl., Ex. 2.  Although Objectors challenged this holding on appeal, the Fifth Circuit did not reverse.  For the same reasons Judge Solis found the Settlement Agreement to be "fair, reasonable and adequate," the Enhanced Settlement is also "fair, reasonable and adequate."  Indeed, each of these factors weighs heavily in support of final approval of the Enhanced Settlement that has the overwhelming support of the Settlement Class members, many from Harbor Links.

### A.     The Settlement Was the Product of Arms' Length Negotiations

Judge Solis previously found that the settlement was not a product of collusion, but rather the "product of arm's length negotiation," which started when "the parties appeared before an experienced and well respected mediator."  Huot Decl., Ex. 2 at 47:18 – 48:5.  Indeed, the Enhanced Settlement is the product of vigorous, arm's-length negotiations, after experienced counsel evaluated the merits of the claims and defenses and conducted two separate mediations with experienced and well regarded Mediators.  Gonnelli Decl., Comp. at 4 ¶ 11; Huot Decl. ¶ 13. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *69-70 (N.D.

Tex. Nov. 8, 2005) (settlement process involving mediation before highly regarded mediators was found to be fair, extensive and undertaken at arm's length and not the product of fraud, overreaching or collusion); *see also Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *11 (S.D. Tex. May 7, 2008) (same).

Following Metzger's objection and the Fifth Circuit's reversal and remand, the parties engaged in a second mediation before the Honorable Jeff Kaplan (Ret.), per the Court's March 1, 2017 Order. *See* ECF No. 96. While the parties were unable to obtain Objectors' consent to the settlement, the parties went to great lengths to satisfy the demands of the Objectors. Huot Decl. ¶¶ 15-17. Indeed, both Plaintiffs' counsel and Defendant took significant steps to increase the monetary settlement to be awarded to the Objectors and Harbor Links employees. *Id.* Plaintiffs' counsel, for their part, reduced their fee by eight percent, from 33 1/3% to 25% in order to increase the portion of the settlement distributed to the Settlement Classes, including the Objectors and Harbor Links workers. Huot Decl. ¶ 17. Defendant, for its part, increased its contribution to the Maximum Gross Settlement Amount by $225,000, an increase of nearly twenty percent. Huot Decl. ¶ 16. After two mediations, and such significant financial concessions by the other parties to facilitate final resolution, it is obvious that the settlement is the product of bona fide arms' length negotiations, which included extensive involvement by the Objectors and two respected mediators.

### 1.    Submitting the Settlement Here is Not Evidence of Collusion

Metzger claims that submission of the Settlement for approval in this Action is evidence of collusion. *See Metzger* Obj. at 15, ECF No. 38. However, submission of the settlement to this Court makes complete sense because Defendant's corporate headquarters are located in Dallas, Texas, and one of the three class actions pending against Defendant is venued in this Court. Moreover, as demonstrated by the procedural history in this case, clearly the venue of this action did not constitute an impediment to Settlement Class members' ability to submit objections. In

addition, 40 Settlement Class members, including 23 from Harbor Links, have submitted statements in support of the settlement. Comp. at 14-69; Comp. 2 at Tabs C-X. Moreover, Texas federal courts have a well-deserved reputation for the careful scrutiny of class settlements.[10]

### 2.   A Reversion to Defendant is Not an Obstacle to Approval

Metzger also argues that the reversion clause is a reason to reject the settlement. *Metzger Obj.* at 14, ECF No. 38. Under the terms of the settlement, there will be a reversion to Defendant of unclaimed awards. However, here, the reverter is insignificant given the extremely high participation rate and the incredible 83.3% payout provided for under the Enhanced Settlement. Devery Supp. Decl. ¶ 4. In any event, such reversions are not uncommon. Courts "have approved FLSA and NYLL settlements where funds revert to defendants." *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10-5255, 2016 U.S. Dist. LEXIS 28266, at *20 (E.D.N.Y. Mar. 3, 2016) (citing *Hart v. RCI Hospitality Holdings*, Inc., No. 09-3043, 2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015) (approving settlement with reverter provision); *Lizondro-Garcia v. Kefi LLC*, No. 12-1906, 2014 U.S. Dist. LEXIS 143165, at *1 (S.D.N.Y. Oct. 7, 2014) (same); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) (same)).

### B.   The Complexity, Expense, And Likely Duration Of The Litigation Weigh In Favor Of Approval Of The Settlement

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a recovery for the class. "Class action litigation is inherently complex, and complex litigation is inevitably costly in terms of both time and money." *Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 U.S. Dist. LEXIS 166164, at *14-15 (E.D. La. Dec. 11, 2015); *Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2015 U.S. Dist. LEXIS

---

[10] Metzger also claimed the benefits conferred on the Harbor Links employees and the status of the litigation constitutes evidence of collusion. *See Metzger* Obj. at 13-14, ECF No. 38. These arguments are dealt with in the context of the appropriate factors for approval in Sections IV.C and IV.E *infra*.

8177, at *21-23 (S.D. Tex. Jan. 23, 2015) (discussing inherent complexity and expense of employment class action).  This case is no exception.

Indeed, if this case does not settle, the parties have significant, costly and time-consuming motion practice ahead of them, and potentially a trial on the merits.  As a threshold matter, there are three class actions currently pending against Defendant brought on behalf of the same banquet service workers and arising out of the same exact claims.  Thus, the parties would be litigating on multiple fronts and/or engage in motion practice regarding consolidation.  Thereafter, additional and extensive third-party discovery would be required of Defendant's customers, and class certification motions would be filed.  The parties will also move for summary judgment.  If the Court determined that fact disputes precluded summary judgment, a fact-intensive trial would be necessary.  Any judgment would likely be appealed, further extending the litigation.   This settlement, on the other hand, provides significant relief to the Settlement Classes in a prompt and efficient manner.

### C.    The Stage Of The Proceedings Weigh In Favor Of Settlement Approval

The stage of the proceedings also weighs in favor of approval of the settlement because Plaintiffs have completed sufficient discovery to recommend settlement.  Indeed, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted).

The parties' discovery here clearly meets this standard.  As Judge Solis correctly observed, the *Law* Action "had been pending for a little over a year before it went to mediation," "discovery was taken," and "the parties had sufficient information."  Huot Decl., Ex. 2 at 48:13-18.  As discussed *supra* at II(B), the parties engaged in both formal and informal discovery, including a comprehensive information exchange with respect to Defendant's pay and tip data and other

evidence relating to the merits issues with respect to all Four Golf Clubs. Gonnelli Decl., Comp. at 4 ¶ 9, Huot Decl. ¶¶ 2-6. This favors final approval. *See Rivas v. Beaucoup Crawfish of Eunice, Inc.*, No. 12-2610, 2014 U.S. Dist. LEXIS 153370, at *7-8 (W.D. La. Oct. 10, 2014) (action "ripe for settlement" where parties had conducted "both formal written discovery and informal discovery"). The Fifth Circuit has rejected Metzger's apparent argument that the parties must always undertake extensive "formal" discovery and build a voluminous record before a settlement will be approved. *See Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (rejecting objection based on lack of "formal" discovery); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (citing *Cotton* and rejecting the contention that a settlement process is inadequate unless informed by formal discovery). Rather, settlement proponents need only demonstrate they have taken sufficient affirmative steps to gather data on the claims at issue, and if the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement. *Id.*

### D. Difficulties In Prevailing On the Merits Weigh In Favor Of Approval Of The Settlement

If this case did not settle, Plaintiffs anticipated that Defendant would mount an aggressive defense, including seeking many depositions of Class Representatives, absent Class members, and third-parties (customers), challenges to class certification, motions for summary judgment, a trial, and if Plaintiffs were successful at trial, a prolonged appeal process.

Although Plaintiffs are confident in their ability to demonstrate that the service charges were actually gratuities, doing so is not guaranteed. The claims of the Settlement Class would have to be evaluated under two different legal standards. Prior to January 1, 2011, one NYDOL Inter-Office Memorandum, dated July 1, 1995 states: "Effective immediately, service charges will not be considered gratuities" and a "service charge is not required to be distributed to employees."

Further, the "gratuity" provisions of NYLL § 196-d were interpreted by the Courts to exclude mandatory service charges from the definition of gratuity, except in limited circumstances where an employer made an affirmative representation to the customer that the charge was, in fact, a gratuity for the wait staff. *See, e.g., World Yacht,* 10 N.Y.3d at 81; *Maldonado,* 990 F. Supp. 2d at 390. In addition, prior to January 1, 2011, it is Plaintiffs' burden to prove that a reasonable patron would have thought the service charges were charges purporting to be gratuities. *World Yacht,* 10 N.Y.3d at 79-81. Thus, Plaintiffs face challenges meeting their fact-intensive burden under the pre-January 2011 standards, including garnering evidence to show that Defendant made affirmative representations that the service charge was a gratuity for the banquet service staff.

Effective January 1, 2011, the NYDOL issued new regulations which "create 'a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity.'" *Maldonado*, 990 F. Supp. 2d at 390 (discussing new standards). The new regulations provide "'illustrative' but non-exhaustive list of factors" to determine when a service charge is considered a gratuity. *Id.* Plaintiffs' claims are still, however, evaluated regarding whether a "reasonable customer" would understand the service charges were gratuities. *See* 12 N.Y.C.R.R. § 146-2.19. Thus, although Plaintiffs are confident in their claims between January 1, 2011 and the time when Defendant changed its contract language, it is still a fact-based inquiry based on whether a "reasonable customer" would have believed the service charge to be a gratuity.

In addition, after the Defendant changed its banquet contracts to include a disclaimer that the service charge was "paid directly to the Course" and "is not paid directly to the particular server or servers who provided service to you for your meal, outing or event," there is a significant risk that a Court might find that the service charge is not a gratuity due and owing to the Settlement

31

Class.  *See* Huot Decl., Ex. 13, *Ahmed v. Morgan's Hotel Group Management, LLC, et. al.,* Index. No. 153841/2015 (N.Y. App. Div., 1st Dept. April 19, 2018) (banquet contract that notified customers that the administrative charge was not a gratuity but was the property of the hotel met the requirements of the post-January 1, 2011 regulations).  The difficulties in establishing such claims for service charges is best demonstrated by *Maldonado*, where the Court held the service charges were not a gratuity under the meaning of the FLSA, 990 F. Supp. 2d at 389, were not a gratuity under the NYLL (*Id.* at 393) prior to January 1, 2011 but did constitute a gratuity after January 1, 2011.  *Id* at 394-95.  In so doing, the *Maldonado* Court eliminated service charge claims for approximately 75% of the class.

In sum, continued litigation of Plaintiffs' service charge claims poses difficulties and risks for ultimately establishing liability (1) during the pre-January 2011 time period, (2) the time period between January 1, 2011 and when Defendant changed its banquet contract language, and (3) the period after Defendant changed its banquet contract language.  Although Plaintiffs remain confident in their ability to prevail on these issues, success is not certain.

**E.    The Range of Recovery And Certainty Of Damages Favor Approval**

The district court's evaluation of the range of recovery should also "take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount."  *Slipchenko*, 2015 U.S. Dist. LEXIS 8177, at *27-28.  In addition to the elimination of litigation risk, a significant benefit of the Enhanced Settlement is that the Settlement Classes will be paid relatively quickly rather than having to wait for years.  "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . ."  *Johnson v. Brennan*, No. 10-4712, 2011 U.S. Dist. LEXIS 105775, at *34 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

32

All parties, even Objectors, agree that "[t]he main claim in both [this case and Metzger] is a claim for unpaid gratuities owed to hourly banquet service workers." ECF No. 38 at 9. Based upon Plaintiffs' detailed analysis of Defendant's records, Plaintiffs determined that at the Four Golf Clubs, Defendant collected a total of $1,759,696.37 in service charges prior to January 1, 2011. After the January 1, 2011 adoption of the new laws and regulations, Defendant collected $1,380,766.80 in service charges at three of the facilities, for a total of $3,191,093.23. Huot Decl. ¶ 8. A detailed chart of Plaintiffs' calculations is set forth below:

| | Service Charges Collected August 20, 2007 – January 1, 2011 [When it was Plaintiffs' burden to prove Defendant affirmatively lead customers to believe a service charge was a gratuity] | Service Charges Collected January 1, 2011 until Contract Language Changed at Each Club [When rebuttable presumption applied that service charge was gratuity, and before Defendant's banquet contracts included a disclaimer that the service charge was not a gratuity] | Total |
|---|---|---|---|
| Harbor Links | $642,851.40 | $468,117.20 | $1,110,968.60 |
| Brierwood | $591,726.66 | $519,401.80 | $1,111,128.46 |
| Fox Valley | $525,118.31 | $393,247.80 | $918,366.11 |
| Tan Tara | N/A | N/A | $N/A[11] |
| Total | $1,759,696.37 | $1,380,766.80 | $3,140,463.17 |

Huot Decl. ¶ 9.

Thus, the Gross Maximum Settlement Amount represents over 100% recovery for the Settlement Class during the time period when there was a rebuttable presumption that a service charge was a gratuity and before the clubs changed the banquet service contracts and constitutes 45.38% of the *total damages* for Plaintiffs' service charge claims. As demonstrated in *Maldonado*, however, these damages are far from certain. Thus, the settlement provides a substantial and

---

[11] Discovery revealed that Tan Tara remitted service charges its banquet staff members. Huot Decl. ¶ 10.

immediate benefit.

Objectors manipulate the Settlement Payments to argue the settlement is unfair to Settlement Class members who worked at Harbor Links. Specifically, they argue that $200,000 is allocated equally "per facility" to Harbor Links, Fox Valley and Brierwood. *Metzger* Obj. at 14, ECF No. 38. This is not the case. The Enhanced Settlement allocates the payments based upon the total number of hours worked. Indeed, the workers at Harbor Links who opted into the settlement will receive the largest share of the fund because they worked 41% of total hours during the relevant time period, despite the fact that, of the total amount of service charges collected, 35.38%, were collected at the Harbor Links facility. Devery Supp. Decl ¶ 4; Huot Decl. ¶ 12. And, based upon the number of opt-ins, Harbor Links employees will receive 43% of the total Settlement Payments. Devery Supp. Decl. ¶ 9. Under any analysis this represents a substantial, immediate, and fairly-allocated benefit to the Harbor Links workers and all of the Settlement Class in the face of risks of a delayed, smaller, or no recovery whatsoever.

In addition, contrary to Objectors' protestations, Courts have approved settlements of service charge claims for comparable amounts, and less. *See Fernandez v. Legends Hospitality, LLC,* 2015 N.Y. Misc. LEXIS 2193 (N.Y. Sup. Ct., N.Y. Cty. June 20, 2015) (granting final approval of $275,000 class action settlement, where class of banquet service workers asserted that defendant unlawfully retained mandatory service charges); *Ryan v. Volume Servs. Am., Inc.,* 2013 N.Y. Misc. LEXIS 932 (N.Y. Sup. Ct., N.Y. Cty. March 7, 2013) (granting final approval of $750,000 class action settlement, where class of servers asserted that defendant violated NYLL § 196-d); *see also Tiro v. Public House Invs., LLC,* No. 11 Civ. 7679, 2003 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) (approving $1.3 million settlement in service charge case (among other claims), with class of over 700 individuals); *Owens v. FreshDirect LLC,* United States District Court, Southern District of New York, Case No. 14-cv-1909, Huot Decl., Ex. 11 (granting final

approval of $1.235 million settlement in case where class of approximately 3,200 individuals alleged unlawful retention of fixed delivery fee) (unpublished).

### F.     The Reaction Of The Class Weighs In Favor Of Approval

It is well established that "[t]he reaction of the class is an important factor in gauging whether a settlement is fair, reasonable and adequate." *Meyers v. Texas*, No. 00-430, 2010 U.S. Dist. LEXIS 47809, at *28 (W.D. Tex. Feb. 16, 2010). Here, the response of the Settlement Class to the initial settlement was overwhelmingly positive. A total of 256 opt-ins (out of 435 potential Settlement Class members) have claimed 83.3% of the available awards. Devery Supp. Decl. ¶ 4. That is an unusually high number for an opt-in class, which indicates the satisfaction of the workers with the settlement. In addition, 20 opt-in Settlement Class members submitted declarations in support of the settlement. *See* Gonnelli Decl., Comp. at 6 ¶ 32; Comp. at 14-69. In support of the Enhanced Settlement, an additional 20 Settlement Class members (22 total), all from Harbor Links, have submitted declarations in support of the settlement. Comp 2 at Tabs C-X.

By contrast, only two workers have objected and one has opted out. "'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Quintanilla*, 2008 U.S. Dist. LEXIS 37449, at *15 (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (holding that lack of substantial objection indicated that class appeared to be overwhelmingly in favor of settlement)). *See also Reed.*, 703 F.2d at 174 (settlement upheld over objections by nearly 40% of class); *Deepwater I*, 910 F. Supp. 2d at 938 ("The low objections and opt-out rates are evidence of the Settlement's fairness."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 661 (N.D. Tex. 2010) (settlement approved over objections by a "significant portion of the class"). Accordingly, the overwhelmingly positive reaction of the Settlement Classes favors approval of the settlement.

Lastly, Plaintiffs respectfully submit that the Court need not Order that a revised notice of

the settlement be disseminated to class members.  As mentioned above, the total settlement fund has grown to $1,425,000.00, and Plaintiffs have reduced their request for attorneys' fees from 33% to 25% since notice of the initial settlement was given.  Huot Decl. ¶¶ 15-16.  Courts have held that a second opportunity for class members to opt out is unnecessary under Rule 23 where a settlement has improved since the first notice.  *See Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 345 (S.D.N.Y. 2005) (holding that a second opportunity for class members to opt out was unnecessary under Rule 23 where the settlement had improved since the first notice).  Here, each authorized claimant will receive a greater share of the total settlement amount than they expected when the Settlement Class overwhelmingly approved the initial settlement.  If the Court nevertheless determines that supplemental notice is required, supplemental notice should be limited to those class members who opted out of the initial settlement.  *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1009 (N.D. Ill. 2000) (finding notice "complete and adequate" where original notice to all class members satisfied Fed. R. Civ. P. 23(c)(2) and supplemental notice of enhanced settlement terms was limited to those class members who originally opted out); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 473 n.10 (D.N.J. 1997) (noting that where class members have received adequate notice, these class members need not be informed of the final enhancements to the settlement because the proposed settlement is more valuable with certain amendments, and requiring special notice only to opt-outs to permit them to reevaluate their choices); *see also Klein,* 705 F. Supp. 2d at 663-64 (declining to give class members a second opportunity to opt out when they already had constructive notice of the material terms of the settlement).

## V.     APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER FEDERAL LAW

Plaintiffs also request that the Court approve the settlement of the FLSA claims. Although

there are marked differences between a collective action under the FLSA and a Rule 23 class action, courts have held that the same six factors should be used in determining the fairness of a FLSA collective action.  *Allen v. Entergy Operations Inc.*, No. 11-1571, 2016 U.S. Dist. LEXIS 18246, at *4-5 (E.D. La. Feb. 11, 2016).  Therefore, each of the factors set forth above also weigh in favor of approving the FLSA Settlement.

## VI.   ANY OBJECTION SHOULD BE OVERRULED AS THE ENHANCED SETTLEMENT AND THESE PAPERS ADDRESS ALL OF OBJECTORS' PRIOR OBJECTIONS

Many of Objectors' objections have been addressed in the context of specific arguments above.  However, a few points are noteworthy.

Notice was sent to 165 Harbor Links workers.  86 of them, or 52%, opted into the class. Devery Supp. Decl, ¶ 7.  In addition, Harbor Links' service charges make up 35.38% of the total disputed service charges yet Harbor Links opt ins are receiving 43% of the awards.  Huot Decl. ¶ 12; Devery Supp. Decl. ¶ 9.  In addition, 22 Harbor Links workers submitted declarations in support of the Enhanced Settlement.  *See* Comp. 2 at Tabs C-X.

Objectors claim that the settlement should be distributed according to the service charges collected by each facility rather than the number of hours worked.  *Metzger* Obj. at 4, ECF No. 38. As set forth above, *supra* at IV(E), the amount of service charges collected at Harbor Links, Brierwood, and Fox Valley are roughly the same.  Huot Decl. ¶ 9.  In addition, if the settlement monies were apportioned in that manner rather than by hours worked, Harbor Links employees would actually receive less because their per-hour multiplier would be slightly lower.  *Id.*  In sum, the Enhanced Settlement treats the Harbor Links workers no differently than those at the other two clubs with service charge allegations, and due to the popularity of the settlement among the Harbor Links workers, they are receiving, as a group, a greater amount of the possible awards.

In addition, Objectors' primary challenge to the Settlement Agreement was that it was the

product of collusion because Objectors were excluded from settlement negotiations.  This is not the case.  Defendant and Plaintiffs shared all of the same documents and information with Objectors that were considered at the first mediation.  These documents show that Plaintiffs' Counsel investigated the Harbor Links' claims, obtained documents relating to the Harbor Links' claims, and that the claims of the Harbor Links' banquet service workers are common and typical of those at the other three clubs.  Huot Decl. ¶¶ 3, 5-6, 11-12.  Defendant and Plaintiffs, in good faith, participated in a second Court-ordered mediation with Objectors, and with the assistance of Judge Kaplan, tried to include Objectors in the Enhanced Settlement.  *Id.* at ¶¶ 13-14.  Objectors cannot possibly object to the Enhanced Settlement on the grounds that they were excluded from the bargaining table.

## VII.   THE SERVICE AWARDS TO NAMED PLAINTIFFS ARE JUSTIFIABLE AND SHOULD BE APPROVED

### A.   The Requested Service Payments Are Reasonable And Should Be Approved

The settlement includes a $39,000 total Service Award to the eight Named Plaintiffs, to be distributed as follows: Diane Gulla, who filed the first case in New York State court in 2013 and has been active in every step in the litigation, is proposed to receive $10,000; the four plaintiffs who joined Ms. Gulla when she filed her amended complaint and participated in the litigation including discovery are proposed to receive $5,000 each; and the three plaintiffs in the *Izzio* and *Ashby* Actions, who filed later, are proposed to receive $3,000 each.  Huot Decl. ¶ 14.

These service payments are reasonable given the contributions that Plaintiffs made to the prosecution and resolution of this litigation.  *Id.* at ¶¶ 13-14.  "In deciding whether an incentive award is warranted, courts look to: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation."  *In re Heartland*, 851 F. Supp.

2d at 1089 (quotations omitted).  Each of these factors support approving Plaintiffs' requested service awards as fair and reasonable.

### B.    The Actions Taken By Plaintiffs To Protect The Interests Of The Settlement Classes Support Approval Of The Service Awards

The actions Plaintiffs took to protect the interest of the Settlement Class were substantial and produced a significant benefit.  *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protest and help to bring rights to a group of employees who have been the victims of [employer wrongdoing]").  In addition to the notoriety of serving as the public face of the litigation, the class representatives risked paying litigation and other costs if their claims failed.  *See, e.g., Stoffels v. SBC Communs., Inc.*, No. SA-05-cv-0233-XR, 2012 U.S. Dist. LEXIS 80431, at *3-4 (W.D. Tex. June 11, 2012) (imposing costs against plaintiffs in an ERISA class action even though they were initially successful at a liability trial).  Despite these substantial risks, Plaintiffs successfully prosecuted the *Izzio* and *Law* Actions on behalf of the Settlement Class.

### C.    The Benefits Conferred On the Settlement Classes By The Settlement Agreement Supports Approval Of The Service Awards

As discussed in detail, *supra*, Plaintiffs have conferred a very real and substantial benefit on the Settlement Class.  Plaintiffs' efforts contributed to the $1,425,000 Maximum Gross Settlement Fund which resulted in an estimated average award of over $3,067 among workers who opted in to the Settlement, with many Settlement Class members receiving more than $5,000.  Devery Supp. Decl. ¶¶ 5-6.  This amounted to 83.3% percent of the Maximum Gross Settlement Fund.  *Id.* at ¶ 4.

Thus, the size of the service awards sought in relation to the Enhanced Settlement are supported by the evidence and well within the range courts have approved in similar cases.  *See, e.g., Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving

$25,000 incentive awards to both named plaintiffs); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving $10,000 incentive awards to each of the four named plaintiffs); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) ($5,000 incentive award to named plaintiffs); *In re McKesson HBOC Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) ($5,000 incentive award to named plaintiffs).[12]

Additionally, "Courts recognize that '[a] differentiation among class representatives based upon the role that each played may be proper in given circumstances.'" *Slipchenko*, 2015 U.S. Dist. LEXIS 8177, at *37-38 (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990)). The requested service awards in this action directly correlate to the role, effort and time expended by each of the Plaintiffs in obtaining a materially beneficial result for the Class. Therefore, the requested service awards should be approved.

### D.   The Time And Effort Expended By Plaintiffs Support Approval Of The Service Awards

Plaintiffs expended significant time and effort in pursuing the claims. *See generally* Declarations of Named Plaintiffs, Comp. at 14-44. Plaintiffs—especially those in the first-filed *Law* Action—assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their duties and responsibilities, the hours that they worked, and the duties and hours of other Class Members. Gonnelli Decl., Comp. at 4 ¶¶ 9-10. Plaintiffs also provided pay and other records related to their employment with Defendant. *Id.* Plaintiffs regularly communicated with Plaintiffs' Counsel to assist with their investigation of the facts, and reviewed and commented on Defendant's document productions. *Id.* Plaintiffs also

---

[12] *See also Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *25 (N.D. Tex. Dec. 11, 2003) (service award of $16,655 for three named plaintiffs); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) ($5,000 each to seven named plaintiffs from a total settlement fund of $4,000,000); *Camp v. Progressive Corp.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172, at *21-22 (E.D. La. Sept. 23, 2004) (awarding a total of $102,000 in service awards from a total settlement fund of $5,400,000).

helped Plaintiffs' Counsel prepare for the parties' mediations and reviewed and provided feedback

on the proposed settlement.  Gonnelli Decl., Comp at 3 ¶ 5; Huot Decl. ¶ 13.  Plaintiffs attended

and testified at the approval hearing in Dallas.  *Id.*  Plaintiffs attended the mediation session before

Honorable Jeff Kaplan (Ret.) and expended considerable time and resources in the prosecution

and settlement of this action.  *Id.*  Thus, "[t]he named plaintiffs played a significant and active role

throughout the litigation, and there is evidence of the time and expense they incurred." *Slipchenko*,

2015 U.S. Dist. LEXIS 8177, at *35-36.

## VIII.   THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

### A.   The Percentage Method for Awarding Attorneys' Fees in Common Fund Cases Is Endorsed by the Fifth Circuit

The Fifth Circuit has endorsed the use of the percentage method in calculating attorneys'

fees in common fund cases.  *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644

(5th Cir. 2012); *see also Dyson v. Stuart Petroleum Testers, Inc.*, Case No. 1-15-CV-282 RP, 2016

U.S. Dist. LEXIS 24190, at *13 (W.D. Tex. Feb. 29, 2016) (applying percentage method in wage

and hour action).  Courts within this District have recognized that "fee requests that fall between

26.8% and 36% percent should be considered potentially reasonable, provided there is some

affirmative justification for the figure." *Klein*, 705 F. Supp. 2d at 675.  Additionally, Objectors

have recognized that "the typical benchmark is 25%" in this Circuit.  *See Metzger* Obj. at 24, ECF

No. 38.  Thus, the 25% fee requested by Plaintiffs' Counsel is eminently reasonable under

applicable case law, even by Objectors' standards.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the Fifth

Circuit articulated twelve factors to be considered to ensure that a reasonable fee is awarded: (1)

the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to

perform the legal service adequately; (4) the preclusion of other employment by the attorney

because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson* 488 F.2d at 717-19.  Not every *Johnson* factor applies or necessarily needs to be considered.  Here, each of the *Johnson* factors either supports the fee award requested or is neutral.

### 1.    The Time and Labor Required

Given the length and complexity of the proceedings, Plaintiffs' Counsel has made significant efforts to achieve the $1,425,000 settlement.  To date, they have expended over 1600 hours of attorney time.   Huot Decl. ¶ 18; *see also supra* at II(B-F) (detailing discovery, investigation, witness interviews, data analysis, and multiple mediations pursued by Plaintiffs' Counsel).  In addition, as is common in wage and hour class actions, Plaintiffs' Counsel expect to respond to more Settlement Class members' inquiries after final approval, especially after checks are issued to Settlement Class members.  Gonnelli Decl., Comp. at 8 ¶ 46.  Given this effort, this criterion is easily established.

### 2.    The Novelty and Difficulty Of The Issues

This case involved more than 400 class members employed at 4 different facilities.  *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.,* Civ. Action No. 6:12-1609, 2015 U.S. Dist. LEXIS 26053, at *12-13 (W.D. La. Feb. 11, 2015) (assessing the magnitude and complexity of the litigation as one of the criteria for determining a reasonable fee award).

Courts have recognized that actions such as this, which include FLSA collective claims and class claims under NYLL present novel and complex issues. "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought

as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12cv4216 (RLE), 2014 U.S. Dist. LEXIS 105596, at *31 (S.D.N.Y. July 31, 2014) (asserting both FLSA and NYLL claims).

Moreover, Plaintiffs' claims in this case were more complicated because they involved changes in the law and the at-issue contract language. In addition, the later actions brought claims for off-the-clock work, unpaid overtime, uniform compensation, and New York's "spread of hours" pay. Thus, Plaintiffs' claims hinged on complex factual and legal issues under the FLSA and NYLL. Courts have found that such complex issues justify an award of 33% or more in attorneys' fees; therefore, an award of merely 25% is obviously appropriate. *See Tiro*, 2013 U.S. Dist. LEXIS 129258, at *36, 40 (awarding fees equal to 33% of the settlement fund where "[t]he numerous and complex issues involved in this [wage and hour] action support approval of Class Counsel's attorneys' fee request") (citation omitted); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund).

### 3.    The Skill Required to Perform the Legal Service Adequately

Plainitffs' Counsel are experienced, diligent, and reputable. Huot Decl., Ex. 14; ECF No. 34, Ex. H. Just as importantly, Defendant is represented by a leading national employment defense law firm. Nevertheless, Plaintiffs' Counsel was able to obtain a substantial recovery for the Settlement Class. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *100. *See also Billitteri v. Sec. Am., Inc.*, 2011 U.S. Dist. LEXIS 93907, at *36-37 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel . . . The skill required here . . . certainly justifies the

contemplated award").   Accordingly,   the   success   obtained   in   the   face   of   such   opposition demonstrates the skill employed by Plaintiffs' Counsel in this Action and supports the award of attorneys' fees requested.

### 4.    The Preclusion of Other Employment

By taking on this case, Plaintiffs' Counsel has been precluded from devoting time to other cases.  However, that is true of all cases.  It cannot be said that by taking on this case Plaintiffs' Counsel  was  precluded  from  taking  on  hourly  work.    Gonnelli  Decl.,  Comp.  at  8  ¶  47. Accordingly, this factor is probably neutral.  *But see Billitteri*, 2011 U.S. Dist. LEXIS 93907, at *37 (this factor supports award of attorneys' fees where the "litigation precluded [plaintiffs' counsel] from immediately attending to or taking on other cases.").

### 5.    The Customary Fee for Similar Work in the Community

In  evaluating  this  factor,  Courts  examine  the  "customary  fee  for  similar  work  in  the community."  *Villalobos v. Vasquez-Campbell*, Civil Action No. EP-89-CA-27, 1991 U.S. Dist. LEXIS 18841, at *21-22 (W.D. Tex. Nov. 15, 1991).  This case arose under the NYLL and litigated by New York counsel.  Therefore, the requested fee should be considered in light of the fees for similar work by experienced New York counsel.  The requested percentage is far less than the typical 33% awards ordered in other hybrid FLSA and NYLL actions.  *See Tiro*, 2013 U.S. Dist. LEXIS 129258, at *36, 40 (awarding fees equal to 33% of the settlement fund in FLSA and NYLL action); *Frank*, 228 F.R.D. at 189 (awarding approximately 40% of the common fund in combined FLSA and NYLL action).

### 6.    Whether the Fee is Fixed or Contingent

This case was entirely contingent.  Class and collective wage and hour cases of this type are,  by  their  very  nature,  complicated  and  time-consuming.    Any  lawyer  undertaking representation  of  large  numbers  of  employees  in  such  actions  must  be  prepared  to  make  a

tremendous investment of time, energy, and resources.   Due to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.   Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.   This assumption of risk supports the requested fee award.   "Recognizing the 'contingent risk of nonpayment' in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment assumed by carrying through with the case."   *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-60 (E.D. La. 2007) (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D. La. 1997)); *see also Billitteri*, 2011 U.S. Dist. LEXIS 93907, at *38-39 (finding the contingency fee arrangement of a class action "particularly relevant" to the *Johnson* analysis "considering the difficulty presented by the facts and legal questions in [such] case[s] and the very real risk of obtaining no recovery at all"); *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 618 (W.D. Tex. 2010) (finding the fact that "[c]lass counsel undertook [the] case on a contingency fee basis" relevant to the *Johnson* analysis).

### 7.       Time Limitations Imposed by the Client or the Circumstances.

This action did not impose unique time limitations or constraints on Plaintiffs' Counsel beyond those attendant to any litigation.   Therefore, this factor is neutral with respect to the requested fee award.

### 8.       The Amount Involved and the Results Obtained.

As detailed above, the Enhanced Settlement represents an extremely favorable result for the Settlement Class.   The Settlement Agreement results in an average award of $3,067 per Settlement Class member opting in to the settlement.   Devery Supp. Decl. ¶ 5.   Plaintiffs' Counsel's fee award should be based on the full $1.425 million.   The United States Supreme Court has authorized this approach.   *Boeing Co. v. VanGemert*, 444 U.S. 472, 480-81 (1980) (holding

that it is appropriate to base fees on entire fund, even if reverter exists).

Although the Fifth Circuit has not spoken on this exact issue, the Second Circuit has held that when using the percentage method, the proper number against which to calculate a fee award is the "total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir. 2007). The Ninth Circuit has taken a similar approach in the cy pres context. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). The Third Circuit reached a similar conclusion in *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 178 (3d. Cir. 2013) (courts may calculate fees based on gross settlement amount regardless of reverter).

Recently, in the face of a 40% non-participation rate and a reverter to the defendants, the court in *Hart v. RCI Hospitality Holdings*, No. 09 Civ 3043, 2015 U.S. Dist LEXIS 126934 (S.D.N.Y. Sept. 22, 2015) a wage and hour case, not only approved the settlement, which had a maximum value of $15 million, but explicitly based the percentage award of attorneys' fees on the full $15 million regardless of a large reversion to defendants. The court reasoned that, like here, the reverter was an integrated negotiated part of the settlement, and that there was no guarantee that a settlement could have been reached without a reverter, nor might it have been as favorable. *Id.* at 46-47.

The Settlement Class has overwhelmingly expressed a preference to accept a guaranteed payment now rather than a possibly larger payment at some point in the future. *See* Comp. at 14-69; Comp. 2 at Tabs C-X. In evaluating the value of a settlement, a Court must take into account "the natural economic preference for certain and immediate recovery over payments that are speculative and delayed." *Johnson v. Cmty. Bank, N.A.*, C.A. No. 3:12-CV-01405, 2013 U.S. Dist. LEXIS 167319, at *17-18 (M.D. Pa. Nov. 25, 2013). The settlement has been very popular among the workers and enjoys great support. Devery Supp. Decl. ¶ 4. Settlement Class members entitled

46

to 83.3% of the damages have opted into the settlement, while only two members have lodged a single objection and only one has opted out.  Gonnelli Decl., Comp. at 7 ¶ 33; *Meyers v. Texas*, Case No. A-00-CA-430-SS, 2010 U.S. Dist. LEXIS 47809, at \*28 (W.D. Tex. Feb. 16, 2010) ("[t]he reaction of the class is an important factor in gauging whether a settlement is fair, reasonable and adequate.").  Moreover, 40 Settlement Class members have submitted declarations supporting the settlement, including 23 from Harbor Links, and the requested fee award.  Comp. at 14-69; Comp. 2 at Tabs C-X.  Accordingly, the result obtained, and the overwhelming support of the Settlement Class members supports the requested fee award.

### 9.      The Experience, Reputation, and Ability of the Attorneys.

Each firm involved in this case is experienced, diligent, and reputable.  The skill and ability of Plaintiffs' Counsel is demonstrated by their ability to obtain such an excellent result in the face of vigorous opposition from highly qualified defense counsel.  *Billitteri*, 2011 U.S. Dist. LEXIS 93907 at \*36.  Plaintiffs' Counsel's experience, reputation, and ability support the requested fee award.

### 10.      The Undesirability of the Case

As explained by Judge Boyle, a wage and hour case should be considered undesirable where:

> [C]ounsel agreed to litigate Plaintiffs' claims in spite of the risks of little to no compensation for their services. These risks included: filing suit on behalf of just a few employees, with relatively small unpaid wages claims, and no guarantee more employees would opt in; the threat that Defendants would prevail on their FLSA exemption and non-compensable "wait time" defenses, in which case Plaintiffs could not recover attorneys' fees and costs; and the risk of non-payment from a group of underpaid employees in the event Plaintiffs' claims were unsuccessful.

*Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 812 (N.D. Tex. 2015).

In addition, the desirability of representing this Settlement Class of over 400 banquet servers and bartenders must be evaluated at the time Plaintiffs' Counsel first investigated

Settlement Class members' claims. Objectors' counsel had the luxury of sitting in the sidelines for over ten months before filing the *Metzger* Complaint, while Plaintiffs' Counsel diligently investigated and prosecuted Settlement Class members' claims on a wholly contingent basis. It is at this point, not ten months later when Plaintiffs' Counsel had the *Law* Action poised for mediation, that the Court must evaluate the risks and desirability Plaintiffs' Counsel faced when stepping up to the plate to represent Settlement Class with no assurance of compensation for their efforts. Under such an analysis, the undesirability and risks faced by Plaintiffs' Counsel from the outset of this Action supports the requested fee award.

### 11.   The Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel does not have a long-term relationship with the clients. Therefore, this factor is neutral with respect to the reasonableness of the fee award and does not warrant an increase or reduction of the attorneys' fees.

### 12.   Awards in Similar Cases

Courts within the Fifth Circuit have routinely awarded attorneys' fees amounting to one-third of a common fund, making Plaintiffs' Counsel's request for merely 25% of the common fund reasonable and fair. As stated by one Court considering the fee to be awarded in an employment class action, "1/3 of the total settlement fund falls within the range of awards granted by courts within the Fifth Circuit and is a reasonable benchmark." *Kemp*, 2015 U.S. Dist. LEXIS 166164, at *25 (one-third awarded in employment class action). Thus, "it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 729 (E.D. La. 2008); *Shaw*, 91 F. Supp. 2d at 972 ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery"). Given overwhelming case law permitting an award of 1/3 of the common fund, it can hardly be argued

that Plaintiffs' Counsel should not be awarded 1/4 of the common fund.

In sum, each *Johnson* factor supports the requested fee of 25% of the common fund.

### B.    The Requested Fee Award Is Also Reasonable Under The Lodestar Method

If attorneys' fees are not calculated by the percentage method in a common fund case, courts use "the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset*, 669 F.3d at 642-43.

Given the length and complexity of the proceedings, Plaintiffs' Counsel has made significant efforts to achieve the $1,425,000 settlement. To date, they have expended over 1,600 hours of attorney time, of which 574.60 hours have been since the appeal process began after the March 16, 2016 Order Granting Final Approval (ECF Nos. 47-48). Huot Decl. ¶ 18; *see also supra* at Section II(B-F) (detailing discovery, investigation, witness interviews, data analysis, and multiple mediations pursued by Plaintiffs' Counsel). In addition, as is common in wage and hour class actions, Plaintiffs' Counsel expect to respond to more Settlement Class member inquiries after final approval, especially after checks are issued to Settlement Class members. Gonnelli Decl., Comp. at 8 ¶ 46. Given this effort, this criterion is easily established.

These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Huot Decl. ¶ 20. When multiplied by the ordinary hourly rate of each professional this results in a lodestar of $831,695. *Id.* at ¶ 23. Thus, Plaintiffs' Counsel's request for $356,250 in attorneys' fees in fees and expenses is approximately 0.43 times the "lodestar," which is well within the range of multipliers that courts have allowed. *Id.* at ¶ 24. Moreover, the requested negative multiplier of 0.43 is supported by each of the *Johnson* factors as discussed above. In light of the fact that Plaintiffs' Counsel will likely perform substantial work after the

49

final approval hearing, which will further reduce the lodestar multiplier, Plaintiffs' Counsel's request is "even more reasonable than it appears at first glance." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013).

### C.    Costs Should Be Reimbursed

Plaintiffs' Counsel requests reimbursement of $45,000 in out-of-pocket litigation expenses.  Huot Decl. ¶ 25.  Courts within the Fifth Circuit recognize that Plaintiffs' Counsel should be reimbursed for reasonable out-of-pocket expenses incurred and customarily charged to their clients which were incidental and necessary to the representation of the class." *See, e.g.*, *Verdin v. R&B Falcon Drilling USA, Inc.*, C.A. No. G-01-168, 2006 U.S. Dist. LEXIS 43273, at *25 (S.D. Tex. Apr. 24, 2006) (awarding $284,181 in expenses); *In re Bayou Sorrel Class Action*, NO: 6:04CV1101, 2006 U.S. Dist. LEXIS 80924, at *23 (W.D. La. Oct. 31, 2006) (reimbursing costs amounting to 7% of the common fund).  Here, Plaintiffs' Counsel's expenses were incidental and necessary to the representation of the Class.  Huot Decl. ¶ 26.  These expenses include the filing fee, postage, travel, working meals, printing, plaintiffs' share of the mediator's fee, and electronic research.  *Id.* at ¶ 27; Ex. 13

In addition, the costs of notice and claims administration, including issuing checks, will be $42,308.79.  Huot Decl. ¶ 28; Devery Supp. Decl. ¶ 3.  Plaintiffs ask the Court to approve this expense as well.

### <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the Settlement Classes; (2) grant final approval of the Enhanced Settlement; and (3) approve the proposed service awards, attorneys' fees and costs.

Dated:  May 1, 2018                                      Respectfully submitted,

                                                         **LAW OFFICES OF KENNETH M. STILLMAN**

By:  */s/ Kenneth M. Stillman*
    KENNETH M. STILLMAN
    12700 Park Central Drive Suite 1900
    Dallas, Texas 75251
    Telephone: (214) 522-0633
    Telecopier: (214) 526-0849
    Email: kstill53@gmail.com
    Texas Bar No.:    19240500

**FARUQI & FARUQI, LLP**

By:  */s/ Innessa M. Huot*
    Innessa Melamed Huot (admitted *pro hac vice*)
    685 Third Avenue, 26th Floor
    New York, NY 10017
    Telephone: (212) 983-9330
    Facsimile: (212) 983-9331
    Email: ihuot@faruqilaw.com

**THE SULTZER LAW GROUP PC**

By:  */s/ Adam R. Gonnelli*
    Adam R. Gonnelli (admitted *pro hac vice*)
    280 Highway 35, Suite 304
    Red Bank, NJ 07701
    Telephone: (732) 741-4290
    Facsimile: (888) 479-7747
    Email:  gonnellia@thesultzerlawgroup.com

**MUSCATO, DiMILLO & VONA, LLP**

By:  */s/ P. Andrew Vona*
    P. Andrew Vona
    Brian J. Hutchison
    107 East Avenue
    Lockport, NY 14094
    Telephone: (716) 434-9177
    Facsimile: (716) 434-9196
    Email: pavesq@aol.com
    Email: bjhesq@gmail.com

*Attorneys for Plaintiffs*