## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **JILLIAN IZZIO and HEATHER ZOELLER**, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> **CENTURY PARTNERS GOLF MANAGEMENT, L.P.,** <br><br> *Defendant.* | **Case No. 14-cv-03194-M** <br><br><br> **Consolidated with** <br> **No. 3:15-CV-0861-M** |

### OBJECTORS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, APPROVAL OF THE ENHANCED SETTLEMENT, AND AWARD OF ATTORNEYS' FEES AND EXPENSES

FILED BY:

**J. NELSON THOMAS, ESQ.**, *Admitted Pro Hac Vice*
New York State Bar No. 2579159
**SARAH E. CRESSMAN, ESQ.**, *Admitted Pro Hac Vice*
New York State Bar No. 4014379
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Tel:  (585) 272-0540
Fax:  (585) 272-0574
nthomas@theemploymentattorneys.com
scressman@theemploymentattorneys.com

**J. DEREK BRAZIEL, ESQ.**
State Bar No. 00793380
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas  75202
Tel:  (214) 749-1400
Fax:  (214) 749-1010
www.overtimelawyer.com

Attorneys for Objectors Metzger and Brana

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTENT OF OBJECTORS.............................................................................................1

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

    *Overview of the Settlement*.............................................................................................2

    *Non-Harbor Links Plaintiffs' Admissions Concerning Material Differences at the*
    *Locations Continues to Doom Certification* .......................................................................4

ARGUMENT ..................................................................................................................6

I.       The Non-Harbor Links Plaintiffs in this Duplicative Action Once Again Seek to
           Settle the Harbor Links Claims in a Settlement Negotiated Without Objectors'
           Input or Approval .......................................................................................................6

II.     The Requirements of Rule 23 Continue Not to be Met ..........................................8

        A.     The Problems with Commonality and Typicality Noted by the Fifth
              Circuit and Admitted by the Non-Harbor Links Plaintiffs Continue to be
              True and Prohibit Certification ................................................................. 8

        B.     The Non-Harbor Links Plaintiffs and Their Counsel Are Inadequate Class
              Representatives for Harbor Links Employees ........................................... 9

        C.     Predominance and Superiority Under Rule 23(b)(3) Cannot Be Established
              for a Class That Includes Harbor Links Employees ................................ 11

III.    The Settlement Is Not Fair, Reasonable And Adequate and Should Not be
           Approved....................................................................................................................13

        A.     The Amended Settlement was not Negotiated with Objectors and is
              Therefore Collusive ................................................................................. 14

        B.     The Complexity, Expense and Likely Duration of the Litigation Do Not
              Justify This Heavily Discounted Settlement for Harbor Links Class
              Members .................................................................................................. 16

C.  The Non-Harbor Links Plaintiffs Have Not Shown That the Amended Settlement is Reasonable for Habor Links Employees in Light of the Range of Possible Recovery ................................................................... 18

D.  The Opinions of the Class Counsel, Class Representatives, and Absent Class Members Weigh in Favor of Rejecting the Proposed Settlement ....22

E.  Class Counsel's Fees and Costs Should Not be Approved ...................... 23

IV.  In the Alternative, if the Court grants approval, Thomas & Solomon is Entitled to an Award of Fees and Costs ................................................................................. 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 13

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ................................................................................. 16

*Berger v. Compaq Corp.*,
    257 F.3d 475 (5th Cir. 2001) ................................................................................. 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................. 14

*Chinese-Manufactured Drywall Products Liab. Litig.*, No. 09-08030,
    2013 WL 499474 (E.D. La. Feb. 7, 2013) ............................................................ 14

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .................................................................... 17, 19, 23

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ............................................................................... 13

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ............................................................................. 9, 11

*Dudum v. Carter's Retail, Inc.*,
    No. 14-CV-00988-HSG, 2015 WL 5185933 (N.D. Cal. Sept. 4, 2015) ................ 16

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
    447 F. Supp. 2d 612 (E.D. La. 2006) .................................................................... 22

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ................................................................................. 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................................... 13

*Gonzales v. Cassidy*,
    474 F.2d 67 (5th Cir. 1973) ................................................................................... 10

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987) .................................................................................... 13

*Hart v. RCI Hosp. Holdings, Inc.*,
    No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ................ 21

*Krebs v. Canyon Club, Inc.*,
    No. 10431/08, 2009 WL 440903 (N.Y. Sup. Ct. Westchester Cnty. Jan. 2, 2009) ................ 17

*Law et al. v. CGPM/WMC Operating, LLC d/b/a Arnold Palmer Golf Management*,
    Index No. E150883/2013 ................................................................................*Passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)..................................................................................... 13

*Metzger v. Century Golf Partners Mgmt., LP,*
   No. 14-cv-3747 (E.D.N.Y.)...............................................................................*Passim*

*Millan v. Cascade Water Servs., Inc.*,
   310 F.R.D. 593 (E.D. Cal. 2015)............................................................................ 15

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983).................................................................................. 13

*Tiro v. Pub. House Invs, LLC,*
   No. 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013).................................. 21

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)..................................................................................... 14

<u>Regulations</u>

12 NYCRR § 146-2.19 ............................................................................................... 5

## INTENT OF OBJECTORS

As set forth more fully below, Anthony Metzger and Jillian Brana ("Objectors") object to the approval of the proposed settlement; urge the settlement be rejected; and seek to have their case be returned to the Eastern District of New York, where the case is venued so that the matter can be litigated. If there is a Court hearing on approval, Objectors intend to appear at the hearing through counsel and present arguments in support of their objections to this settlement and in opposition to the motion for class certification and approval of the settlement.[1] In event that the settlement is approved, Objectors' counsel seeks the right to petition the Court for fees pursuant to the fee-shifting provision contained in the New York Labor Law and/or Fair Labor Standards Act.

## PRELIMINARY STATEMENT

After the Fifth Circuit Court of Appeals vacated the prior order certifying a class for settlement purposes that included Harbor Links employees, this Court indicated it "is disinclined to certify any class that includes banquet service employees who worked at the Harbor Links Golf Club, or to approve any settlement that includes Harbor Links employees but as to which Anthony Metzger and Jillian Brana ("Objectors") object." *See* February 1, 2017 Order, ECF No. 90.

Despite the Court's clear directive, the Non-Harbor Links Plaintiffs[2] seek exactly that, certification and approval of a class action settlement that includes Harbor Links employees but to

---

[1]     The Court recently requested that the parties submit a proposed notice concerning the settlement. *See* ECF No. 113. Given the problems identified below, Objectors respectfully suggest that the Court should deny approval outright, thus obviating the need for any notice.

[2]     The Non-Harbor Links Plaintiffs are the named plaintiffs who worked at two country clubs in Western New York, Brierwood Country Club and Fox Valley Club, and are represented by Faruqi & Faruqi, LLP. Jillian Izzio, Heather Zoeller and Kara Ashby are the named plaintiffs in this action and the action transferred from the U.S. District Court for the Western District of New York and consolidated with this action. *See* ECF Nos. 20, 26, 27. Diane Gulla, Daniel Howard, Derik Kane, Michael Overdorf and Sara Owczarzak are named plaintiffs in the action *Law et al. v. CGPM/WMC*

which Metzger and Brana object. Nothing has changed this time around except that defendants have offered some more money. In fact, the problems the Fifth Circuit noted regarding commonality remain, thereby precluding certification of a class that includes Harbor Links employees.  Further, as before, Rule 23's typicality, adequacy, predominance and superiority requirements have not been met.

Moreover, the parties once again colluded to negotiate a settlement without the Harbor Links Objectors and the parties have not met their burden of proving that the settlement is fair, reasonable and adequate to the entire class, and, in particular, to the Harbor Links class members under the heightened scrutiny standard this Court must apply to precertification settlements. Ultimately, there is no reason for the Court to set aside its original conclusion and the settlement should not be approved.

## FACTUAL BACKGROUND

The parties and Objectors participated in a Court-ordered mediation on October 20, 2017 but no settlement was reached.  Thereafter, the parties, without Objectors, continued settlement discussions and negotiated a revised settlement without Objectors' participation or approval. The parties present their amended settlement once again negotiated without Objectors for the Court's approval. The same issues that made approval of a class action settlement, including Harbor Links employees, problematic before remain with this amended settlement. Therefore, the Court should not approve the amended class action settlement including Harbor Links employees.

### *Overview of the Settlement*

The terms of the amended settlement remain the same except for slight changes in the amounts available for distribution. The amended settlement is still a claims-made settlement under

---

*Operating, LLC d/b/a Arnold Palmer Golf Management*, Index No. E150883/2013 ("Law Action") which remains pending in New York State Supreme Court in Niagara County.

which defendants will pay a maximum amount of $1.425 million. *See* Addendum to Settlement Agreement and Release ("Addendum") at 2, ECF No. 111, Page ID 1216. Out of this $1.425 million settlement fund, 25%, or $356,250 will be paid to Non-Harbor Links Plaintiffs' Counsel as attorneys' fees. *Id.*; Huot Decl., ¶ 17, ECF No. 111, Page ID 1210. Non-Harbor Links Plaintiffs' Counsel is also seeking $45,000 in litigation costs and expenses and $42,308.79 in settlement administrator costs. Huot Decl., ¶¶ 25, 28, ECF No. 111, Page ID 1211. The eight non-Harbor Links named plaintiffs are seeking $39,000 in service payments. Huot Decl., ¶ 14, ECF No. 111, Page ID 1210.

The Settlement Agreement seeks certification of a State Law Class and FLSA Class, and any class members who do not opt-out are deemed to have released their NYLL claims for unpaid gratuities, spread of hours pay and uniform pay and their FLSA claims for unpaid overtime. The amount of the settlement fund remaining after deductions for attorneys' fees and costs, service payments and administration costs—$942,441.21—will be distributed among the settlement class members as follows: 90% of the remaining settlement fund will be allocated to class members who worked at Fox Valley, Brierwood and Harbor Links, allocated on a pro rata basis based on hours worked, while 10% of the remaining settlement fund will be allocated to class members who worked at Tan Tara, allocated on a pro rata basis based on hours worked.  Settlement Agreement at 24-25, ECF No. 34, Page ID 278-79.  Hence, Harbor Links class members, including the Objectors, must share in a pool of approximately $848,197 with Fox Valley and Brierwood's class members, constituting a mere 22% of the disputed service charges collected during the class period, according to the parties' representations.[3] This is an increase of merely 4% from the amount available for distribution to employees at these three locations under the prior settlement.

---

[3]        *See* Gonnelli Aff., ¶ 22, ECF  No. 34, Page ID 252 ("Plaintiffs learned that the Defendant collected approximately $3.8 million in disputed service charges during the *Law* class period."). Without

***Non-Harbor Links Plaintiffs' Admissions Concerning Material Differences at the Locations Continues to Doom Certification***

In their original briefing, the Non-Harbor Links Plaintiffs admitted "the [four] catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus and customer documents." *See* ECF No. 77, Page ID 1012.  The Non-Harbor Links Plaintiffs most recent submissions only further confirm these representations to this Court, making even clearer the proposed settlement violates the Fifth Circuit's Order.

Although the Non-Harbor Links Plaintiffs claim now (in contradiction to their prior representations) that the contracts are "virtually identical," the evidence they attach does not support that claim and in fact demonstrates that their earlier representation to this Court that "the [four] catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus and customer documents" is accurate. Indeed, the Non-Harbor Links Plaintiffs confirm that the four separate clubs made changes to their contract language "at different times." *See* Pls.' Mot. for Certification of the Settlement Classes, Approval of the Enhanced Settlement and Award of Attorneys' Fees and Expenses ("Pls.' Motion") at 15, ECF No., Page ID 1165.

Moreover, the mere two "sample" contracts provided for each location not only look completely different from one another, but also, specifically comparing the Harbor Links documents to the other locations, they contain different representations regarding the service charge. *See* Huot Decl., Exs. 3-9, ECF No. 111, Page ID 1239-71. Significantly, the first Harbor Links document expressly refers to a 20% "Grat Rate" and represents a "Total Grat" amount on

---

explanation, despite previously representing that the service charge amount in dispute was $3.8 million, Non-Harbor Links Plaintiffs' Counsel now represents that amount is approximately $3.1 million. *See* Huot Decl., ¶ 8, ECF No. 111, Page ID 1208-09.

the first page. Huot Decl., Ex. 5, ECF No. 111, Page ID 1252). None of the documents for the other locations represent that the customer is being charged a 20% gratuity like the first Harbor Links document. In addition, the revised language the Non-Harbor Links Plaintiffs represent was implemented at Harbor Links beginning in October 2012 is different from the revised language implemented at Brierwood and Fox Valley beginning in October 2013. *Compare* Huot Decl., Ex. 9 (Harbor Links contract-"Taxes and Service Charges" language at Page ID 1270) with Huot Decl., Exs. 7, 8 (Brierwood [Page ID 1261] and Fox Valley [Page ID 1265] contracts).

Not only are these two "sample" contracts not the same, they represent just two out of hundreds of contracts that were issued over a number of years. If these two contracts cherry-picked by the Non-Harbor Links Plaintiffs are not the same, then there can be little doubt that that the other undisclosed contracts would further undermine certification.

Moreover, no information about menus or other customer documents or how those documents changed at the different locations has been provided at all. These other documents are significant to an analysis of commonality and typicality because the relevant New York State Department of Labor Regulations state liability is contingent on an analysis of the language on **all** of the documents provided to customers, not just contracts. The regulations state adequate notification to customers that a service charge is not a gratuity "shall include a statement in the contract or agreement with the customer, **and** on any menu and bill listing prices, that the…charge…is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests." 12 NYCRR § 146-2.19.

And there is good reason to doubt the representations contained in the Non-Harbor Links Plaintiffs' papers. Among the 30,000 pages of discovery Objectors obtained in the Metzger Action are an invoice, lunch menu and event details sheet from 2014, all without any statement informing

the customer that the service charge is not a gratuity and is not being distributed to employees who provided service to the guests, as the regulations require. *See* Affirmation of Sarah E. Cressman executed on May 22, 2018 ("Cressman Aff.") ¶ 6, Appx. 4. These documents are all from the time period after 2012 when the Non-Harbor Links Plaintiffs assert revised language with a sufficient customer notification was implemented at Harbor Links.

To make matters worse, as before, the Non-Harbor Links Plaintiffs admit that that the Tan Tara class members had no service charge violations at all. (Huot Decl., ¶ 10, ECF No. 111, Page ID 1209) ["Discovery revealed that Tan Tara remitted service charges [to] its banquet staff members"]).  Although the Non-Harbor Links Plaintiffs argue payment to the Tan Tara plaintiffs is appropriate because of a uniform cleaning charge, they have not shown there is a single uniform service charge policy that applies to all of the class members, as they represented to this Court that the facilities changed their practices at different times in different ways at different facilities. Their self-serving attempt to now gloss over and disavow these prior representations is unavailing and troubling.

Therefore, as before and recognized by the Fifth Circuit and this Court, certification cannot be granted because the submissions confirm that "the [four] catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus and customer documents."  *See e.g.,* ECF No. 77, Page ID 1012.

## ARGUMENT

## I.    The Non-Harbor Links Plaintiffs in this Duplicative Action Once Again Seek to Settle the Harbor Links Claims in a Settlement Negotiated Without Objectors' Input or Approval.

The Non-Harbor Links Plaintiffs again seek approval of a class settlement that would cover and dispose of claims in not only this action but also the class claims of Harbor Links employees asserted in the Objectors' first-filed federal action in the Eastern District of New York, *Metzger v.*

- 6 -

*Century Golf Partners Mgmt., LP*, No. 14-cv-3747 (E.D.N.Y.) ("Metzger Action"). However, for the second time, the Non-Harbor Links Plaintiffs, who admitted to having no knowledge of the relevant policies and practices at Harbor Links, including in open court, *see, e.g.,* Transcript of the Mar. 16, 2016 Proceedings at 23-26, ECF No. 54, Page ID 812-15, negotiated a class settlement purporting to include Objectors without their input or approval.  Approval should not be granted given the Fifth Circuit's and this Court's prior orders.

After Judge Solis granted final approval of the class action settlement including Harbor Links employees, Objectors appealed that decision to the Fifth Circuit. Judge Solis's class certification and final approval order was vacated and remanded. Specifically, the Fifth Circuit vacated the class certification order and remanded "for an appropriate analysis of the Rule 23(a) factors." The Fifth Circuit held that "the district court did not conduct the proper class-certification analysis." The Fifth Circuit further stated that the district court must conduct its own thorough Rule 23(a) inquiry despite both sides stipulating to certification. The Fifth Circuit also noted Objectors' assertion that commonality is not satisfied due to the settling parties' own admissions regarding the lack of commonality, including:

- the admission that "the [four] catering facilities changed their practices at different times in different ways at different facilities during the class period by making changes to their contracts, menus and customer documents . . . [and] sorting out the legal implications of each language change might be challenging[;]"  and

- "an evaluation of the claims of the Settlement Class members would require an analysis of change in fact or law….giv[ing] rise to many different analyses which could prove difficult for a jury and might have implications for a contested class certification motion."

*See* ECF No. 77.[4]

---

[4]     Contrary to the Non-Harbor Links Plaintiffs' suggestion that the Fifth Circuit somehow approved of Judge Solis' finding that the settlement was fair, reasonable and adequate, in fact, the Fifth

After the Fifth Circuit vacated the class certification and final approval order, this Court issued an Order stating:

> the Court is disinclined to certify any class that includes banquet service employees who worked at the Harbor Links Golf Club, or to approve any settlement that includes Harbor Links employees but as to which Anthony Metzger and Jillian Brana ("Objectors") object. Rather, the Court would be inclined to certify a class and approve a settlement that excluded Harbor Links employees. Alternatively, the Court would be inclined to certify a class and approve a settlement that includes Harbor Links employees and is acceptable to the Objectors.

*See* February 1, 2017 Order, ECF No. 90. Those decisions govern the certification analysis here and doom the request for certification and approval of the settlement.

## II.    The Requirements of Rule 23 Continue Not to be Met.

As noted above, both the Fifth Circuit and this Court warned Non-Harbor Links Plaintiffs about their poor chances of achieving certification of a class that includes Harbor Links employees. They did not heed that warning.

### A.    The Problems with Commonality Noted by the Fifth Circuit and Admitted by the Non-Harbor Links Plaintiffs Continue to be True and Prohibit Certification.

The Non-Harbor Links Plaintiffs argue that the commonality problem found by the Fifth Circuit and this Court is "meritless." ECF No. 110, Page ID 1167. Neither the Fifth Circuit's nor this Court's holdings are "meritless."

As described above, the same admissions the Non-Harbor Links Plaintiffs made before concerning the differences among the various locations they are attempting to sweep into this settlement continue to exist.   A small increase in the settlement fund does not solve that insurmountable obstacle to Rule 23 certification.

---

Circuit never even reached that issue given the problems with the district court's Rule 23 analysis. *Id.* at Page ID 1011 ("Because we agree that the district court did not conduct the proper class-certification analysis, we do not reach appellants' second argument" [that the district court abused its discretion by approving the settlement]).

In their feeble attempt to run away from those prior admissions, the Non-Harbor Links Plaintiffs cite to *In re Deepwater Horizon*, 739 F.3d 790, 815-816 (5th Cir. 2014). First, the issue in that case was whether differing **damages** among plaintiffs that all emanated from a **single event** defeated certification. The Fifth Circuit held it did not. But that is not the problem with this settlement. The Fifth Circuit's issue with this settlement is that the factual differences between the different contracts and documents at totally different clubs varied too much to permit certification in one case. Further, the Fifth Circuit's decision here post-dates its *Deepwater Horizon* decision and is the law of this case. Therefore, even if the Non-Harbor Link Plaintiffs could create a conflict between *Deepwater Horizon* and this case, the Fifth Circuit's decision here would control.

The Non-Harbor Links Plaintiffs also argue that the same "legal standard" applies to all class members. First, that is as true as it was when the Fifth Circuit reversed this case and therefore is not a basis to permit settlement. Second, there is simply no authority for the proposition that just because the "same legal standard" is involved that Rule 23 can sweep up all employees at various locations with divergent facts into one settlement.

Therefore, the most recent settlement papers only underscore the Fifth Circuit's decision, as well as this Court's statement, that this settlement does not meet the Rule 23 definition of commonality.[5]

## B.     The Non-Harbor Links Plaintiffs and Their Counsel Are Inadequate Class Representatives for Harbor Links Employees.

The adequacy requirement of Rule 23(a)(4) mandates that the representative parties fairly and adequately protect the interests of the class. In order to certify a class, the court cannot simply presume that the class plaintiffs and their counsel are adequate representatives. Rather, the

---

[5]     Similarly, the Non-Harbor Links Plaintiffs do not meet the typicality requirements of Rule 23.  If they do not have claims common with the Harbor Links employees, their claims cannot be typical of the Harbor Links employees' claims.

plaintiffs seeking to certify the class must affirmatively prove that they are adequate class representatives. *Berger v. Compaq Corp.*, 257 F.3d 475, 481 (5th Cir. 2001). Because class members are bound by the judgment, "the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.* In order for plaintiffs to fulfill this requirement, the court must find that (1) plaintiffs have common interests with the class members, and (2) plaintiffs will vigorously prosecute the interests of the class. *E.g.*, *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). Adequacy is absent where the class representatives lack sufficient knowledge and there are conflicts of interest between the named plaintiffs and class members they seek to represent. *See Berger*, 257 F.3d at 479-81; *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005).

Rule 23's adequacy requirement is not satisfied here for several reasons. First, as discussed above, the Non-Harbor Links Plaintiffs do not share a common interest with Objectors and the Harbor Links employees given the admittedly different service charge practices and their relentless attempt to sweep the Harbor Links claims into their settlement presumptively in order to increase the value of their settlement. Second, the Non-Harbor Links Named Plaintiffs lack sufficient knowledge of the Harbor Links claims. Three of the Non-Harbor Links Plaintiffs testified that they never worked at Harbor Links, do not know any Harbor Links employees and have no knowledge of the pay practices and policies at Harbor Links, and the Non-Harbor Links Plaintiffs' counsel stipulated that the same is true as to all of the plaintiffs. *See* ECF No. 54; Cressman Aff., ¶ 9, Appx. 11.  Similarly, the investigation of the Harbor Links claims conducted prior to entering into the Settlement Agreement did not include speaking with a single Harbor Links employee and apparently included review of only a few sample banquet documents. This paltry investigation is in stark contrast to the personal knowledge Objectors possess of the policies and practices at

- 10 -

Harbor Links from their years of employment there as well as the robust discovery conducted in the Metzger Action, including the production of more than 30,000 documents by defendants.

The Non-Harbor Links Plaintiffs' general claim that they conducted a diligent investigation of all four locations, including Harbor Links is unsupported by the facts. Their further attempt to compare this matter to the completely distinguishable Deepwater Horizon case does nothing to bolster their failed adequacy arguments. Accordingly, the Non-Harbor Links Plaintiffs have failed to establish that they are adequate representatives for Objectors and the Harbor Links employees.

### C. Predominance and Superiority Under Rule 23(b)(3) Cannot Be Established for a Class That Includes Harbor Links Employees.

The Non-Harbor Links Plaintiffs have not established predominance or superiority for a class that includes Harbor Links employees.

Since commonality has not been established between Harbor Links and the other locations, there are no common questions that predominate across Harbor Links and the other locations. The Non-Harbor Links Plaintiffs themselves admit that the focus of the predominance inquiry is on the policies they have failed to show are even common between Harbor Links and the other three locations they seek to lump together into a single class. Not only have the Non-Harbor Links Plaintiffs failed to show that the service charge policies are common across the locations, as discussed above, but they have also failed to offer any evidence at all as to what the overtime, spread of hours and uniform polices even are at any of the locations, much less that all of the locations have common policies related to these claims. The Non-Harbor Links Plaintiffs' mere boilerplate assertions regarding predominance are woefully insufficient.

As to superiority, all of the factors the Non-Harbor Links Plaintiffs assert the Court should consider weigh in favor of severing the claims of Harbor Links employees from this action and allowing those claims to proceed in the Metzger Action. The first two factors are: (1) the interest

of the class members in individually controlling the prosecution or defense of separate actions and (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class. Here, Objectors have a strong interest in controlling the prosecution of the Harbor Links claims in their first-filed federal action in the Eastern District of New York—the Metzger Action.

The Metzger Action was actively litigated from the time it was commenced until it was stayed in April 2015 upon defendants' request so that defendants could try to sweep the Harbor Links claims into this class settlement negotiated with the Non-Harbor Links Plaintiffs. During the ten months the Metzger Action was pending, there were several court appearances, and the parties were engaged in discovery. Defendants produced over 30,000 documents in the Metzger Action, and defendants deposed both Objectors. The parties were in the process of scheduling the remaining depositions when the case was stayed. Objectors were also preparing to file their motion for class certification.

The third and fourth factors also favor excluding the Harbor Links claims from this settlement and this action. These factors are: (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum and (4) the difficulties likely to be encountered in the management of a class action. The Northern District of Texas is an undesirable forum for Objectors and Harbor Links employees because Objectors and the Harbor Links employees largely reside in the Eastern District of New York, as do a majority of the witnesses who would likely be called to testify, Harbor Links is located in the Eastern District of New York, and the events that form the basis of their claims occurred in the Eastern District of New York. Inclusion of the Harbor Links claims in this class action would, by the non-Harbor Links Plaintiffs' own admission, cause

management issues associated with "the many different analyses which could prove difficult for a jury." *See* ECF No. 33, Page ID 233.

Accordingly, a class that includes Harbor Links employees is not superior to a class that excludes them.

## III.     The Settlement Is Not Fair, Reasonable and Adequate and Should Not be Approved.

In addition to their failure to meet the requirements for certification under Rule 23, the Non-Harbor Links Plaintiffs have also failed to show that the settlement is fair, reasonable and adequate.  Under Rule 23(e)(2), a court may approve the settlement of a class action "only after a hearing and on finding that it is fair, reasonable, and adequate."  *See also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  In determining whether a settlement is fair, reasonable and adequate, courts in the Fifth Circuit consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

"In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests [are] represented adequately.'"  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) (quoting *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)).  In order for the court to assess the settlement's fairness, the proponents must furnish adequate proof that it is fair, reasonable and adequate. *Id.*

The proposed amended settlement here requires heightened scrutiny because it was reached prior to class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 805 (3d Cir.

1995) ("courts [need] to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."); *In re Chinese-Manufactured Drywall Products Liab. Litig.*, No. 09-08030, 2013 WL 499474, at *6 (E.D. La. Feb. 7, 2013) ("[c]ourts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process.").

As this Court recently recognized:

> it must exercise extra scrutiny in approving precertification settlements in order to meet concerns regarding the possibility of collusion, *see* Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) and that it should be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re* Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

Memorandum Opinion and Order, at 7, ECF No. 36, Page ID 438. The six factors compel denial of final approval of the amended agreement here.[6]

### A.     The Amended Settlement was not Negotiated with Objectors and is Therefore Collusive.

Objectors do not dispute that both the initial Settlement Agreement and the Amended Agreement were negotiated with the assistance of mediators. What makes both the initial and amended agreement collusive is that they were both negotiated without Objectors and their counsel to the detriment of Harbor Links employees. The initial settlement was collusive, as explained by

---

[6]     In addition to the factors discussed below, the Non-Harbor Links plaintiffs continue to fail to demonstrate the settlement is fair, reasonable and adequate based on the stage of the proceedings and the amount of discovery completed and the probability of success on the merits. As Objectors previously explained and also described herein, the Non-Harbor Links plaintiffs have failed to conduct a sufficient investigation and have heavily discounted the potential recovery without a sufficient basis. *See* ECF No. 38, Page ID 477-480.

Objectors previously, *see* ECF No. 38, Page ID 466-68, and given the amended settlement is largely the same as before, that collusiveness continues to infect this settlement.

In addition, after the parties and Objectors were unable to reach a settlement after one day of mediation, the parties decided to continue settlement discussions without Objectors and reached an Amended Agreement without Objectors' input or approval. After the Fifth Circuit reversed the Order approving that initial settlement, this Court ordered all of the parties and Objectors to participate in a mediation in an attempt to reach a settlement agreeable to Objectors and their counsel. The Non-Harbor Links Plaintiffs' assertion that "the parties went to great lengths to satisfy the demands of the Objectors" is belied by the parties' actions. Pls.' Br. at 27, ECF No. 110, Page ID 1177. Any concessions the parties made in reaching the Amended Agreement were not to satisfy Objectors, who were not even parties to the negotiations, but rather, were designed to win the Court's approval of their agreement.

In addition, submission of the settlement for approval in federal court in the Northern District of Texas instead of the state court in New York where the *Law* action was filed and remains pending and where the Non-Harbor Links Plaintiffs reside for the convenience of defendants is further evidence of collusion. Objectors respectfully refer the Court to their brief filed in support of their objections, which is incorporated herein by reference, for a more detailed discussion of how this forum selection is further evidence of collusion. *See* ECF No. 38, Page ID 474.

Further, claims made settlements with reversion of unclaimed funds to defendants are strongly disfavored. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015) (denying approval of settlement based on subtle signs of collusion including reversion provision). The proposed settlement here is claims-based and contains a reversion provision whereby any unclaimed funds revert back to defendants. *See* Settlement Agreement at VI.Q, ECF No. 34, Page

ID 285-86.  If a settlement agreement provides for unclaimed funds to revert to defendants, the parties should provide an explanation as to why such a provision is fair and reasonable.  *Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015). A mere statement that such provisions are customary is far from explaining how they are fair and reasonable.

### B.   The Complexity, Expense and Likely Duration of the Litigation Do Not Justify This Heavily Discounted Settlement for Harbor Links Class Members.

The complexity, expense and likely duration of litigation factor considers whether "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  The parties here have not shown that the proposed settlement is fair, reasonable and adequate for Harbor Links employees in light of the complexity, expense and likely duration of the litigation.  Since potentially protracted litigation is almost always the alternative to settlement, this case is no different than any other in that respect.  The parties' explanation as to why this litigation would be protracted is also why the proposed settlement should be rejected.

Previously, the parties admitted that the policies differed by location and then described how these varying practices would make a trial of the service charge claims, for the different facilities together in a single case extremely difficult:

> Potentially, the Court might decide that an evaluation of the claims of the Settlement Class members would require an analysis of each change in fact or law. This might give rise to many different analyses which could prove difficult for a jury and might have implications for a contested class certification motion. Such a class might have to be divided into six or more subclasses.

Memorandum of Law in Support of Joint Motion for Preliminary Approval of Settlement of Collective and Class Action ("Memorandum of Law"), at 14, ECF No. 33, Page ID 233.  Despite admitting that the differences in the service charge practices among the facilities would make certification of a class including all four facilities inappropriate and a trial of the service charge

- 16 -

claims of all four facilities in a single action difficult at best and requiring subclasses, if possible

at all, the parties nevertheless want this Court to certify a class and approve a settlement that would

include all four facilities in a single class without so much as an explanation as to why such a class

is appropriate despite the differences among the facilities regarding their service charge practices.

As the Fifth Circuit held:

> While the prospect of a long, complex and expensive trial militates in favor of settlement, virtually all class actions will result in long, complex and expensive trials. The question is whether the likelihood of an especially long and complex trial is enough in a particular case to warrant a substantial reduction in what the class might otherwise receive in settlement.

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981).   Here, the

complexity the parties claim could result from litigating the service charge claims of four facilities

with varying policies and practices in a single class action does not warrant a substantial reduction

in what the Objectors might otherwise receive if their claims were litigated separately.

Although, by the parties' own admission, the variations in service charge policies at the

four facilities make litigating their claims together in a single action improper, litigation of the

Harbor Links service charge claims separately in the *Metzger* action would likely not involve

protracted or complex litigation.   Class certification is commonly granted in service charge cases

involving a common service charge policy at a single facility.   *See, e.g., Krebs v. Canyon Club,

Inc.,* No. 10431/08, 2009 WL 440903 (N.Y. Sup. Ct. Westchester Cnty. Jan. 2, 2009); *Kehn v.

Plainview Hospitality, LLC,* Decision and Order dated April 8, 2014, Index No. 9866/12 (N.Y.

Sup. Ct. Nassau Cnty.) (Parga, J.) (unpublished);[7] *Plante v. South Bristol Resorts LLC,* Decision

dated January 22, 2015, Index No. 111071 (N.Y. Sup. Ct. Ontario Cnty.) (Rosenbaum, J.)

(unpublished); *Fischer v. Michael's Banquet Facility, Inc.*, Transcript of Decision dated February

---

[7]     The unpublished decisions cited herein are attached to the Cressman Aff., at ¶ 10, Appx. 18.

9, 2015, Index No. 8811728/2014 (N.Y. Sup. Ct. Erie Cnty.) (Walker, J.) (unpublished). Once class certification is granted, the common liability issue for all class members is whether the written notifications were sufficient for the reasonable customer to understand that the service charge was not a gratuity allowing the banquet facility to keep the service charges collected. If the written notifications were sufficient, then there is no liability for unpaid gratuities. If the written notifications are determined to be legally deficient, then liability is established and damages for unpaid gratuities are determined from defendants' records.

As discussed above, the service charge claims of the Harbor Links employees are strong on their own, and the inclusion of their claims in the same action with the other three facilities with differing service charge practices is what makes litigation of their claims weaker.

Accordingly, this factor weighs against approval of the proposed settlement that would include Harbor Links employees in a single class with employees from the three other facilities with different service charge policies and practices, including, by the parties own admission, a facility—Tan Tara—at which there was no NYLL 196-d violation at all because the service charges were paid to the banquet employees at that facility.[8] Memorandum of Law, at 3, ECF No. 33, Page ID 222 ("At Tan Tara, the service charge is remitted directly to the service employees who worked the event for which the service charge is collected.").

C.   **The Non-Harbor Links Plaintiffs Have Not Shown That the Amended Settlement is Reasonable for Harbor Links Employees in Light of the Range of Possible Recovery.**

In determining whether a proposed settlement is reasonable in light of the range of possible recovery, the Court must "establish the range of possible damages that could be recovered at trial,

---

[8]   Even though Tan Tara class members have no service charge claims, these employees are nonetheless allocated 10% of the settlement. Settlement Agreement at VI.C (ECF No. 34, Page ID 278-79).

and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981). The Non-Harbor Links Plaintiffs' assessment of the damages for Harbor Links employees is problematic for several reasons.[9]

First, the Non-Harbor Links Plaintiffs have provided contradictory information to this Court regarding their assessment of the total possible damages for the service charge claim. In support of their first motion for class certification and final approval of a settlement, the Non-Harbor Links Plaintiffs claimed that the maximum calculation of potential service charge damages for all class members was approximately $3.8 million. *See* Gonnelli Aff., ¶ 22, ECF No. 34, Page ID 252 ("Plaintiffs learned that the Defendant collected approximately $3.8 million in disputed service charges during the *Law* class period."). Now, however, the Non-Harbor Links Plaintiffs' calculation of the maximum potential service charge damages has decreased without explanation to approximately $3.1 million. *See* Pls.' Mot. at 33, ECF No. 110, Page ID 1183.

Second, the Harbor Links class members' claims are treated the same as the claims of class members who worked at the Brierwood and Fox Valley clubs without any recognition of the different service charge policy at Harbor Links which makes the Harbor Links claims stronger. Specifically, as even just the few sample documents the Non-Harbor Links Plaintiffs relied upon show, the service charge policy at Harbor Links for at least the entire period prior to the change in the contract language was to represent in writing to customers that the 20% mandatory charge was

---

[9]     Although the main claim is for unpaid service charges, the Non-Harbor Links Plaintiffs have provided no information from which to assess the possible range of recovery for any of the other claims, including the FLSA and NYLL claims for unpaid wages and overtime, the FLSA claim for incorrect calculation of the regular rate of pay and the NYLL claims for uniform pay and spread of hours pay.

a gratuity. Huot Decl., Ex. 5, ECF No. 111, Page ID 1253. Hence even assuming, as the Non-Harbor Links Plaintiffs suggest, that employees have the burden of proving that a defendant affirmatively led customers to believe the service charge was a gratuity prior to January 1, 2011, Harbor Links employees would easily meet that burden of proof due to the express representations on the Harbor Links banquet contracts. In contrast, employees at the other locations may face a greater hurdle in meeting that burden of proof due to the contracts at those locations not affirmatively representing that the service charge is a gratuity. Moreover, discovery in the Metzger Action shows that Harbor Links failed to include the necessary disclaimer language on other documents provided to customers, such as invoices, menus and event detail sheets after the language was allegedly changed on contracts. Cressman Aff., ¶ 6, Appx. 4. Therefore, contrary to the Non-Harbor Links Plaintiffs' assessment of the Harbor Links service charge claims, Harbor Links employees, in fact, have potential claims even after 2012. Accordingly, it is inappropriate to view the strength of Harbor Links employees' service charge claims the same as the service charge claims at the other locations.

Third, the "Enhanced Settlement," as the Non-Harbor Links Plaintiffs call it, is barely much of an enhancement for the class members at all. The percentage of total service charges collected available for distribution to the class members with service charge claims has increased by merely 4% under the Amended Settlement, from 18% to 22%. Under the initial agreement, after deducting attorneys' fees and costs, the enhancement payments to the Non-Harbor Links Plaintiffs and the 10% allocated for distribution to the Tan Tara class members, who were not deprived of service charges at all, $678,600 was available for distribution to the class members who worked at Brierwood, Fox Valley and Harbor Links. This amount represents 18% of the $3.8 million total potential recovery of service charges. Under the amended agreement, after deducting attorneys'

fees and costs, the enhancement payments to the Non-Harbor Links Plaintiffs and the 10% allocated for distribution to the Tan Tara class members without service charge claims, Harbor Links class members would share in a pool of approximately $848,197 with Fox Valley and Brierwood's class members, constituting a mere 22% of the $3.8 million in disputed service charges collected during the class period. The non-Harbor Links Plaintiffs have represented that Harbor Links class members will receive 43% of the payments constituting $364,724.71. This amounts to 32.8% of the total service charges collected at Harbor Links before the contract language changed according to the Non-Harbor Links Plaintiffs.[10] A little over 30% of the total damages calculated for the service charge claim for Harbor Links employees is a steep discount without justification given the relative strength of the Harbor Links claim compared to the other locations due to the different contract language used at Harbor Links.

Courts approving recent settlements of similar claims found a reasonable range of recovery for these types of claims to be much higher than the less than one-third Harbor Links class members would receive under this settlement. *See Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *11 (S.D.N.Y. Sept. 22, 2015) (finding settlement amount of 66% of the total economic damages calculated by plaintiffs' expert, or 40% after subtracting attorneys' fees and expenses, to be within the reasonable range of recovery); *Tiro v. Pub. House Invs, LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *10 (S.D.N.Y. Sept. 10, 2013) ("the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims, and a substantial portion of what Defendants would be able to pay if faced with a judgment.").

---

[10]     This amount is $1,110,968.60 according to the Non-Harbor Links Plaintiffs' calculations. *See* Huot Decl., ¶ 9, ECF No. 111, Page ID 1209.

The extremely low settlement amount allocated to Harbor Links class members is simply not justified, particularly since the Harbor Links class members have the strongest service charge claims out of all of the locations. The Non-Harbor Links Plaintiffs make only cursory claims that the settlement is appropriate given the risks of continued litigation. Pls.' Mot. at 30-34, ECF No. 110, Page ID 1180-1184. These broad concerns are always risks in class action cases. The Non-Harbor Links Plaintiffs have failed to explain the specific risks of prevailing on each of their claims, provide an estimate of the likelihood of success of prevailing on each of their claims and then explain why the settlement amount is an appropriate balance.  They have also failed to explain why it is appropriate to treat the class members from the Fox Valley, Brierwood and Harbor Links facilities the same for settlement purposes despite the admitted differences in service charge practices at those facilities and how they justify such a low settlement amount for the Harbor Links employees in light of the relative strength of their claims.

> **D.** **The Opinions of the Class Counsel, Class Representatives, and Absent Class Members Weigh in Favor of Rejecting the Proposed Settlement.**

Under this factor, the proponents of the settlement must show that "[t]he opinions of all of the affected parties are favorable towards the settlement." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 625 (E.D. La. 2006). Objectors oppose this settlement for all of the reasons set forth herein.

The opinions of the attorneys involved in this settlement should be given little weight. Their opinions are not even worthy of consideration unless they have provided "a reasonable basis for their opinions." *Id*.  Attorneys for the parties here have not provided any reasonable basis for their opinion that the settlement is fair, reasonable and adequate—particularly as to the Harbor Links class members. In contrast, Objectors have provided a detailed, reasonable analysis as to why the proposed settlement is unfair for Harbor Links employees and should be rejected.

- 22 -

Furthermore, if Metzger and Brana are the only objectors to this settlement, this fact in and of itself is not necessarily indicative of wide support of the settlement among the absent class members. The Fifth Circuit has held that "a low level of vociferous objection is not necessarily synonymous with jubilant support. In many class actions, the vast majority of class members lack the resources either to object to the settlement or to opt out of the class and litigate their individual cases." *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 217-18. The absent class members here are hourly banquet workers who likely lack the resources to object or opt out of the settlement to pursue individual litigation, particularly for a settlement taking place more than a thousand miles from any of the facts or claims in this case.

Finally, the form declarations the Non-Harbor Links Plaintiffs' counsel gathered from Harbor Links class members should be accorded little weight. There is no evidence that counsel for the Non-Harbor Links Plaintiffs spoke with any Harbor Links employees for the purpose of investigating their claims before negotiating a low settlement on their behalf. Rather, these declarations were obtained solely to try to get this settlement approved. The form declarations themselves state little more than the individuals would prefer to receive any payment sooner rather than later—a statement almost anyone would agree with. There is no indication that the declarants understand the terms of the settlement or the potential damages they are owed or could recover.

Objectors did not negotiate this amended agreement and did not approve it. Therefore, the proposed amended settlement including Harbor Links employees should not be approved.

### E.   Class Counsel's Fees and Costs Should Not be Approved.

While plaintiffs' counsel has reduced their request for fees to 25%, they still fail to provide information supporting that request.

For example, in order for the Court to determine whether such a fee award is reasonable, and to perform a lodestar cross-check, the Court and parties need to have the time records and hourly rates used to support the lodestar calculation.  Here, plaintiffs' counsel fails to provide those records.  Further, it is inappropriate for plaintiffs' counsel to seek fees for time spent on the appeal which they lost.

In addition, at least some of the costs sought by plaintiffs' counsel appear facially excessive.  For example, they seek over $6,000 for computer and other research and over $21,000 in travel expenses.  They also seek costs for printing the appellate brief for an appeal they lost. While these costs are excessive on their face, plaintiffs' counsel also fails to attach records supporting such costs.

Accordingly, the request for attorneys' fees should be denied.

<div align="center">*       *       *</div>

Ultimately, objectors request that this Court deny the motion for approval of the settlement, thus permitting the case against Harbor Links to proceed in the Eastern District of New York where those claims were originally filed.  A substantial amount of litigation has already taken place there, and there is no reason that case should not move forward.

## IV.   In the Alternative, if the Court grants approval, Thomas & Solomon is Entitled to an Award of Fees and Costs.

Although the Objectors do not believe this settlement should be approved for the reasons set forth above, in the unlikely event the Court grants approval, Thomas & Solomon should be permitted to submit a petition for fees and costs.  Objectors would be considered prevailing parties and have achieved changes to the settlement.  Accordingly, including as prevailing parties, the Objectors are entitled to an award of attorneys' fees under the fee shifting provisions of the New York Labor Law and/or Fair Labor Standards Act.

## CONCLUSION

Based on all of the foregoing, the Objectors respectfully request that this Court not approve the proposed amended settlement thereby permitting the claims of the Harbor Links class members to be pursued in the first-filed Metzger Action in the Eastern District of New York.   In the alternative, in the event that the Court should grant approval, Thomas & Solomon should be permitted to submit a petition for attorneys' fees and costs pursuant to the fee shifting provision of the New York Labor Law and/or the Fair Labor Standards Act.

Dated:  May 22, 2018

<div style="margin-left: 40%;">

Respectfully Submitted,

s/ Sarah E. Cressman

**J. NELSON THOMAS, ESQ.**, *Admitted Pro Hac Vice*
New York State Bar No. 2579159
**SARAH E. CRESSMAN, ESQ.**, *Admitted Pro HacVice*
New York State Bar No. 4014379
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Tel:  (585) 272-0540
Fax:  (585) 272-0574
nthomas@theemploymentattorneys.com
scressman@theemploymentattorneys.com

**J. DEREK BRAZIEL, ESQ.**
State Bar No. 00793380
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas  75202
Tel:  (214) 749-1400
Fax:  (214) 749-1010
www.overtimelawyer.com

Attorneys for Objectors Metzger and Brana

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2018, a copy of the foregoing document was electronically filed.  Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

<u>/s/ Sarah E. Cressman</u>
**Sarah E. Cressman**