# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| JILLIAN IZZIO and HEATHER ZOELLER, on behalf of themselves and all others similarly situated, | Case No. 14-cv-03194-M |
| *Plaintiffs,* | |
| v. | Consolidated with No. 3:15-CV-0861-M |
| CENTURY PARTNERS GOLF MANAGEMENT, L.P., | |
| *Defendant.* | |

## APPENDIX TO OBJECTORS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, APPROVAL OF THE ENHANCED SETTLEMENT, AND AWARD OF ATTORNEYS' FEES AND EXPENSES

| Document | Page Number |
|---|---|
| Affirmation of Sarah E. Cressman | 1 |
| **Exhibit A**: Harbor Links Banquet Event Documents | 4 |
| **Exhibit B**: Excerpts of Transcript of March 16, 2016 Final Approval Hearing | 11 |
| **Exhibit C**: Unpublished Decisions | 18 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **JILLIAN IZZIO and HEATHER ZOELLER, on behalf of themselves and all others similarly situated,** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CENTURY PARTNERS GOLF MANAGEMENT, L.P.,** <br><br> *Defendant.* | **AFFIRMATION OF** <br> **SARAH E. CRESSMAN** <br><br> **Case No. 14-cv-03194-M** <br><br> **Consolidated with** <br> **No. 3:15-CV-0861-M** |

**Sarah E. Cressman,** being duly sworn, deposes and says:

1.       I am an associate in the law firm of Thomas & Solomon LLP ("TS"). This law firm represents Objectors Anthony Metzger and Jillian Brana. I am fully familiar with the facts and circumstances surrounding this matter and set forth herein.

2.       This affirmation is submitted in opposition to the Motion for Certification of the Settlement Classes, Approval of the Enhanced Settlement, and Award of Attorneys' Fees and Expenses.

3.       *Metzger v. Century Golf Partners Management, LP d/b/a Arnold Palmer Golf Management, et al.*, No. 14-cv-3747 (E.D.N.Y.) (Metzger Action) was filed on June 13, 2014 as a class and collective action in the Eastern District of New York on behalf of named plaintiff Anthony Metzger and similarly situated banquet service workers who worked at Harbor Links Golf Course in Port Washington, New York.

4.       The Metzger Action was actively litigated from the time it was commenced until it was stayed in April 2015 upon defendants' request.

5.      During the ten months the Metzger Action was pending, there were several court appearances, and the parties were engaged in discovery.

6.      Defendants produced over 30,000 documents in the Metzger Action, including banquet event documents, such as contacts, menus, event detail sheets and invoices. Several banquet event documents produced by defendants in the Metzger Action are attached hereto as Exhibit A.

7.      Plaintiffs' motion to compel class discovery was pending when the action was later stayed. In addition, defendants deposed both Objectors, and the parties were in the process of scheduling the remaining depositions when the case was stayed.

8.      In accordance with local rules requiring a court conference before permitting motions to be filed, plaintiffs requested a pre-motion conference in February 2015 in advance of their motion for class certification. The Court ordered defendants to provide in writing their basis for opposing class certification no later than one week after the plaintiff depositions were completed, in anticipation of holding that conference to clear the way for a fully briefed motion for class certification.

9.      A true and correct copy of relevant portions of the transcript of the proceedings before Judge Solis on March 16, 2016 is attached hereto as Exhibit B.

10.     Attached hereto as Exhibit C are the following unpublished decisions:  *Kehn v. Plainview Hospitality, LLC,* Decision and Order dated April 8, 2014, Index No. 9866/12 (N.Y. Sup. Ct. Nassau County) (Parga, J.); *Plante v. South Bristol Resorts LLC,* Decision dated January 22, 2015, Index No. 111071 (N.Y. Sup. Ct. Ontario County) (Rosenbaum, J.); *Fischer v. Michael's Banquet Facility, Inc.*, Transcript of Decision dated February 9, 2015, Index No. 8811728/2014 (N.Y. Sup. Ct. Erie County) (Walker, J.) (unpublished).

Executed this 22nd day of May, 2018.

s/Sarah E. Cressman
**Sarah E. Cressman**

# Exhibit A



**HARBOR LINKS GOLF COURSE**
1 Fairway Drive
Port Washington, New York  11050
516-767-4816 fax 516-767-4812

**Invoice No.**

= *INVOICE* =

**Customer**

| Name | REDACTED | | | 9/20/2014 |
|---|---|---|---|---|
| Address | | | Order No. | |
| City | State REDACTED Zip | | Rep | |
| Phone | | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 229 | Wedding Gala | $95.00 | $21,755.00 |
| 229 | Shellfish Barge | $13.95 | $3,194.55 |
| 2 | Cases of Ginger Beer | $30.00 | $60.00 |
| 4 | Bottles of Patron | $58.00 | $232.00 |
| 3 | Child | $47.50 | $142.50 |
| 11 | Vendors | $47.50 | $522.50 |

\* checks must be  payable to Harbor Links Golf Course

All final payments must be done by
certified check or cash only

| | |
|---|---|
| SubTotal | $25,906.55 |
| Service Charge 20% | $5,181.31 |
| Taxes 8.625% | $2,681.33 |
| TOTAL | $33,769.19 |
| **Less Deposit** | $2,500.00 |
| **TOTAL DUE** | $31,269.19 |

**Payment Details**

○ Cash
◉ Check
○ Credit Card

Name
CC #
Expires

Thank you for choosing Harbor Links.

Confidential

D030152

### American Deli Luncheon

A selection of assorted Deli Meats and Cheeses to include:
Breast of Turkey, Roast Beef, Baked Ham, Swiss, Cheddar and American Cheese
Old Fashioned Potato Salad
Pasta Salad
Cole Slaw
Garden Salad with a variety of dressings
Relish Tray to include: Lettuce, Tomatoes, Pickles and Black Olives
Assorted Breads and Rolls
Chefs Choice of Mini Desserts
Coffee, Tea, Decaffeinated Coffee and Assorted Sodas
**$27.00 per person+20% Service Charge and 8.625% Tax**

### The New York Deli Lunch

An elegant platter of New York Deli Delicacies including:
Turkey, Corned Beef, Pastrami, Roast Beef, Brisket
Potato Salad, Cole Slaw
Hot Mini Knishes
Relish platter
Rye Bread
Mustard and Russian Dressing
Tantalizing Miniature Pastries, Petit Fours, Mini Danish, Rugalach Cookies
Root Beer, Cream and Cherry Sodas
Coffee, Tea, Decaffeinated Coffee
**$30.00 per person + 20% Service Charge and 8.625% Tax**

6

D030904



## Breakfast Menu

### Continental

Assorted Chilled Juices
Bagels with Cream Cheese, Butter and Fruit Preserves
Assorted Muffins, Danish and Croissants
Sliced Fresh Fruit
Assorted Cold Cereals
Coffee, Tea and Decaffeinated Coffee
**$14.95 per person plus 20% Service Charge and 8.625% Tax**

**OR**

### American Breakfast

Fresh Scrambled Eggs
Thick Challah Bread French Toast or Belgian Waffles
Country Sausage and Applewood Smoked Bacon
Red Skin Home Styled Potatoes
Display of Seasonal Fruits
Freshly Baked Muffins and Croissants
Assorted Gourmet Bagels served with Whipped Butter, Cream Cheese and Select Fruit Preserves
Served with Freshly Brewed Coffee and Decaffeinated Coffee
Herbal Teas
Bottled Mineral Mineral Water
Assorted  Chilled Juices

**$17.95 per person plus 20% Service Charge and 8.625% Tax**

7

Confidential

D030905

## Afternoon Energy Break

Assorted Granola Bars and Chocolate Power Bars
Fresh Fruit Smoothies
Seasonal Whole Fruit
Coffee, Tea and Decaffeinated Coffee
Assorted Soft Drinks and Power Drinks

**$12.95 per person + 20% Service Charge and 8.625% Tax**

## The Harbor Sports Break

Miniature Piggies in a Blanket, served with Stone Ground Mustard
Bags of Popcorn and Assorted Chips
Coffee, Tea and Decaffeinated Coffee
Assorted Soft Drinks and Power Drinks

**$12.95 per person + 20% Service Charge and 8.625% Tax**

## Cookies & Brownies Break

Fresh Baked Chocolate Chip Cookies and Fudge Brownies
Assorted Granola Bars
Fresh Whole Fruit
Coffee, Tea and Decaffeinated Coffee
Iced Tea,  Lemonade, Bottled Water
**$12.95 per person plus 20% Service Charge and 8.625% Tax**

**8**

Confidential

D030906

**1 Fairway Dr. Pt. Washington, NY. 11050 516.767.4816**

| Client Name: | REDACTED | | | Event Number: | REDACTED |
|---|---|---|---|---|---|

Client Address:

| Client Contact: | | Event Name: | REDACTED |
|---|---|---|---|
| | | | REDACTED |

Work Phone:
Cell Phone:
Email:

| Event Date | 10/30/2014 | Guests: | 0 |
|---|---|---|---|

## EVENT DETAILS

| Facility: | North Banquet Room | Function Date: | 10/30/2014 |
|---|---|---|---|
| Time From: | 09:00AM | Time To: | 04:00PM |

### Pricing

| Item Number | Item Name | Quantity | Price | Subtotal | Gratuity | Tax | Total |
|---|---|---|---|---|---|---|---|
| 1201000000145 | Continental Breakfast | 100 | 15.00 | 1500.00 | 0.00 | 129.38 | 1629.38 |
| 1201000000145 | 20% Service | 100 | 3.00 | 300.00 | 0.00 | 25.88 | 325.88 |
| 1201000000145 | Lunch | 100 | 25.00 | 2500.00 | 0.00 | 215.63 | 2715.63 |
| 1201000000145 | 20% Service | 100 | 5.00 | 500.00 | 0.00 | 43.13 | 543.13 |

**Golf Services:**

**Food Service:**
Thursday October 30, 2014 9:00am-4:00pm REDACTED
Host REDACTED

Ballroom

40- 50 Guests

Continental Breakfast-
Bagels with Cream Cheese, Butter and Fruit Preserve, Assorted Muffins, Danish and Croissants
Sliced Seasonal Fruit Display
Assorted Cold Cereals
Coffee/ Tea/ Decaf

American Deli Luncheon-
Turkey, Roast Beef, Baked Ham, Swiss, Cheddar and American Cheese
Potato Salad
Pasta Salad
Cole Slaw
Garden Salad with Variet of Dressings
Relish Tray- Lettuce, Tomatoes, Pickles and Black Olives

9

Assorted Breads and Rolls

Homemade Cookies and Brownies

Beverages- Soft Drinks
Coffee/ Tea/ Decaf

Guest X_____

HarborLinks X_____

**Beverage Service:**

**Audio/Visual Services:**

_____REDACTED

**10**

D030903

# Exhibit B

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN  DISTRICT OF TEXAS
 2                    DALLAS  DIVISION
 3    JILLIAN IZZIO, et al.,      )        CIVIL ACTION NO.
                    Plaintiffs   )        3:14-CV-3194-P
 4                               )
      VS.                        )        DALLAS, TEXAS
 5                               )
      CENTURY GOLF PARTNERS       )
 6    MANAGEMENT, L.P.,           )
                    Defendant    )        MARCH 16, 2016
 7
 8
                    TRANSCRIPT OF PROCEEDINGS
 9         BEFORE THE HONORABLE JUDGE JORGE A. SOLIS
                UNITED STATES DISTRICT JUDGE
10
11
12    APPEARANCES:
13    For the Plaintiffs:      MR. ADAM GONNELLI
                               MR. KENNETH STILLMAN
14                             Faruqi & Faruqi, LLP
                               685 Third Avenue
15                             New York, New York 10017
                               (212) 983-9330
16
17    For the Defendant:       MS. SHERRY L. TRAVERS
                               MR. RUSSELL R. ZIMMERER
18                             Littler Mendelson, P.C.
                               2001 Ross Avenue, Suite 1500
19                             Dallas, Texas  75201-2931
                               (214) 880-8100
20
21    For the Harbor Links     MR. J. NELSON THOMAS
      Objectors:               MS. SARAH CRESSMAN
22                             Thomas & Solomon, LLP
                               693 East Avenue
23                             Rochester, New York  14607
                               (585) 272-0540
24
25
```

fe838fa6-b6bf-4815-bcaa-03781845f312

Page 2

```
 1    APPEARANCES CONTINUED:

 2    Court Reporter:           Linda J. Langford, CSR, RDR, CRR

                               U.S. District Court Reporter

 3                             Chambers of Judge David C. Godbey

                               1100 Commerce Street, Rm. 1504

 4                             Dallas, Texas   75242

                               (214) 748-8068

 5

 6    Proceedings reported by mechanical stenography, transcript

 7    produced by computer.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          MR. THOMAS:  Ms. Gulla.

2          THE COURT:  Ms. Gulla, can you come around to the

3    witness stand up here, please, ma'am?  Raise your right hand

4    and be sworn, please, ma'am.

5        (The witness was sworn by the deputy district clerk.)

6          THE COURT:  Counsel?

7          MR. THOMAS:  Yes.

8                    DIANE GULLA, SWORN,

9                    DIRECT EXAMINATION

10   By Mr. Thomas:

11   Q.   Hi, Ms. Gulla.  Thank you for talking here today.

12   A.   Thank you.

13   Q.   I will try to keep this -- I expect this will be very

14   short and -- and fairly easy.

15       What location did you work for as a banquet server?

16   A.   The Fox Valley Country Club.

17   Q.   And where is that located?

18   A.   Lancaster, New York.

19   Q.   And have you ever -- have you ever been to the Harbor

20   Links facility?

21   A.   No.

22   Q.   Okay.  Have you ever -- and you've never worked there

23   either.

24   A.   No.

25   Q.   Are you familiar with how they pay their employees?

 1   A.    No.

 2   Q.    Have you -- do you have any connection whatsoever with

 3   the Harbor Links' location?

 4   A.    No.

 5   Q.    About how far away is it from you?  I'll represent to

 6   you that it's on Long Island.

 7   A.    Hundreds of miles.

 8   Q.    Do you have any objection to the Harbor Links employees

 9   settling and pursuing their own case separately from you?

10   A.    Yes.

11         MR. GONNELLI:  Your Honor, I -- well, go ahead.

12         THE WITNESS:  I don't know how to answer that

13   question.

14   Q.    (BY MR. THOMAS)  Okay.  Thank you.

15         MR. THOMAS:  I have nothing further.

16         THE COURT:  All right.  You may step down.  Thank

17   you, Ms. Gulla.

18         Anybody else?

19         MR. GONNELLI:  Your Honor, if you want, we can

20   save some time and represent that these folks worked at

21   Brierwood and Fox Valley and not Harbor Links and they all

22   worked far away from Harbor Links.

23         MR. THOMAS:  And know no Harbor Links employees,

24   no knowledge of the policies there.  Are they going to

25   stipulate to that?

Page 26

1          MS. OWCZARZAK:  My answers would be the same as

2     hers.

3          MR. THOMAS:  Okay.

4          MS. IZZIO:  Be the same.

5          THE COURT:  Same?  All right.

6          MR. THOMAS:  Okay.

7          THE COURT:  Thank you.

8          MR. THOMAS:  Anything else for me, Your Honor?

9          THE COURT:  No.  That's it.  Thank you.

10     Mr. Gonnelli, I'll hear from you then on his arguments

11     on the objections.

12          MR. GONNELLI:  Thank you, Your Honor.

13     Your Honor, first of all, there's a lot of factual

14     inaccuracies here.  The Harbor Links folks were included

15     in the action that was pleaded in the Law and Gulla case

16     in upstate New York.  So they were included from the very

17     beginning.

18     Second, we had been litigating for ten months before

19     the Harbor Links case was even filed.  And there was a

20     couple months before we had the mediation.  So we were

21     there underway.

22     Mr. Thomas makes it sound like, well, they had this

23     other litigation and it was going on great.  Well, yeah,

24     it was ten months after we had already been litigating.

25     In terms of the -- and I have to say, I do not

fe838fa6-b6bf-4815-bcaa-03781845f312

Page 53

1

2                          CERTIFICATION

3

4        I certify that the foregoing is a true and correct

5   transcript from the record of proceedings in the above-

6   entitled matter.  I further certify that the transcript

7   fees format comply with those prescribed by the Court

8   and the Judicial Conference of the United States.

9

10       s/Linda J. Langford          Date:  May 2, 2016

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

fe838fa6-b6bf-4815-bcaa-03781845f312

# Exhibit C

$\mathcal{S}$

**SHORT FORM ORDER**
   **SUPREME COURT-NEW YORK STATE-NASSAU COUNTY**
**PRESENT:**
         **HON. ANTHONY L. PARGA**
                        **JUSTICE**

--------------------------------------------------------------------X   **PART 6**
RICHARD KEHN, on behalf of himself and others
similarly situated,                                                  INDEX NO.9866/12

                              Plaintiff,              MOTION DATE: 02/25/14
         -and-                                        SEQUENCE NO. 001

PLAINVIEW HOSPITALITY, LLC d/b/a HOLIDAY
INN PLAINVIEW, PLAINVIEW HOSPITALITY II,
LLC d/b/a HOLIDAY INN PLAINVIEW, VIRAL
PATEL and/or NILESH P. PATEL,

                              Defendants.
--------------------------------------------------------------------X
Notice of Motion.......................................................................................... 1
Affirmation of Jeffrey K. Brown & Exs................................................................. 2
Memorandum of Law in Support............................................................................ 3
Affirmation in Opposition & Exs........................................................................... 4
Affirmation in Further Support.............................................................................. 5

Upon the foregoing papers, it is ordered that the motion by the plaintiffs for an order,

pursuant to CPLR 901 and 902, (1) certifying this action as a class action, (2) designating Leeds

Brown Law, P.C. and Virginia & Ambinder, LLP, as class counsel, (3) requiring defendants to

turn over a full and complete list of all Class Members with names and last known addresses

within 15 days, and (4) approving the Proposed Notice of Pendency and authorizing publication

to all Class Members within 30 days of defendants providing the Class List, is granted to the

extent directed below.

Plaintiff contends that this action is brought on behalf of Richard Kehn and a putative

class of individuals who worked in service trades that customarily receive gratuities, including

waiters, servers, head waiters, bussers, bartenders, captains matre d's, and bridal attendants

("service employees") at the banquet facilities known as the Holiday Inn Plainview, which is

Page 1 of 7

**19**

operated and managed by defendants. Plaintiffs allege that Holiday Inn Plainview violated New York Labor Law Article 6 §196-d, because reasonable customers who hosted events there believed that the service charges that they paid and the maitre d' tips that they disbursed were gratuities that would be paid to service employees who worked the events, but said charges were instead kept in whole or part by defendants.

Plaintiffs allege that defendants failed to distribute service charges and maitre d' tips to service employees who worked at events at defendants' catering facility. Section 196-d of the Labor Law provides that:

"No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee."

Section 196-d of the Labor Law has been held to apply to mandatory service charges when it is shown that employers represented or allowed their customers to believe that the service charges were gratuities for their employees and an employer may not retain such service charges (*Samiento v World Yacht Inc.*, 10 NY3d 70, 81 [2008]).

The named plaintiffs seek an order allowing this action to proceed as a class action for the following class:

"All individuals employed by Holiday Inn Plainview from August 2006 to the present in such trades, classifications and professions that customarily receive gratuities including but not limited to waiters, servers, head waiters, bussers, bartenders, captains, maitre d's, and bridal attendants. The putative class does not include maintenance workers, corporate officers, salespersons, cooks, food preparers, chefs, dishwashers, directors, clerical, office workers or any other person employed by Holiday Inn Plainview whose trade, classification or profession does not customarily receive gratuities."

Page 2 of 7

In support of the motion, plaintiff submits the affidavits of named plaintiff, Richard Kehn, and former Holiday Inn Plainview employee, Ronald Vogel. Mr. Kehn attests that he was employed by defendants in various capacities, including as a bartender, server/waiter, and maitre d' in 2010 and 2011 for a total of approximately 15 months. Mr. Vogel attests that he was employed by defendants in various capacities, including as a banquet manager and catering sales manager from 2009 until 2011. Both Mr. Kehn and Mr. Vogel attest that during their tenures, Holiday Inn Plainview assessed a mandatory 20% service charge for all catering events and that none of the language in the contracts, bills, invoices or menus explained that the service charge was not a gratuity. They also attest that from their conversations with customers and employees that the customers believed said charge was a gratuity that went to service employees and that Holiday Inn Plainview kept some, if not all, of the service charge and same was not distributed in its entirety to the service employees that worked a particular event. Both men attest that they received only an hourly pay rate and were not provided all of the service charge.

Defendants oppose the instant application, contending that defendants did not own or operate the hotel before July 2009, and, as such, was not the "employer" of the plaintiff or any individuals similarly situated. Defendants argue that pursuant to an Agreement of Sale, effective July 13, 2009, Plainview Hospitality purchased the assets of the hotel from Plainview Enterprises, and that the Agreement provides that Plainview enterprises "shall terminate (i) all housekeeping personnel as of 3:00 pm on the Closing Date and all other hotel personnel as of midnight as of the day before Closing." As such, defendants contend that all of Plainview Enterprise's employees were terminated before Plainview Hospitality owned and operated the hotel. Defendants contend that neither Richard Kehn and Ronald Vogel, the two individuals who submitted supporting affidavits, were employed by any of the defendants prior to 2009. As such, while defendants do not specifically oppose the certification of the class, defendants argue that in light of the evidence demonstrating the lack of any involvement of the defendants with the subject hotel or the employment of the plaintiff prior to July 2009, the plaintiff should not be permitted to assert these pre-July 2009 claims against these defendants.

In Reply, plaintiff states that in the event that the Court grants certification, plaintiff agrees to amend the class definition to reflect the time period in which defendants owned and

Page 3 of 7

21

operated the hotel, and agree that the proposed definition of the class, as amended, is:

"All individuals employed by Holiday Inn Plainview from July 13, 2009
to the present in such trades, classifications and professions that customarily
receive gratuities including but not limited to waiters, servers, head waiters, bussers,
bartenders, captains, maitre d's, and bridal attendants. The putative class
does not include maintenance workers, corporate officers, salespersons,
cooks, food preparers, chefs, dishwashers, directors, clerical, office
workers or any other person employed by Holiday Inn Plainview whose trade,
classification or profession does not customarily receive gratuities."

CPLR 901(a) provides that:

"One or more members of a class may sue or be sued as
representative parties on behalf of all if:
1. the class is so numerous that joinder of all members, whether otherwise
required or permitted, is impracticable;
2. there are questions of law or fact common to the class which predominate
over any questions affecting only individual members;
3. the claims or defenses of the representative parties are typical of the
claims or defenses of the class;
4. the representative parties will fairly and adequately protect the interests
of the class; and
5. a class action is superior to other available methods for the fair and
efficient ajudication of the controversy."

Once the prerequisites under CPLR 901 have been satisfied, CPLR 902 requires the court

to consider the following matters in determining whether the action may proceed as a class

action:

"1. The interest of members of the class in individually controlling the
prosecution or defense of separate actions;
2. The impracticability or inefficiency of prosecuting or defending
separate actions;
3. The extent and nature of any litigation concerning the controversy
already commenced by or against members of the class;
4. The desirability or undesirability of concentrating the litigation of
the claim in the particular forum;
5. The difficulties likely to be encountered in the management of a
class action."

CPLR article 9 is to be liberally construed and the determination as to whether to grant

Page 4 of 7

class certification rests in the discretion of the trial court (*Beller v William Penn Life Ins. Co. of N.Y.*, 37 AD3d 747, 748 [2d Dept 2007]). "In order to certify a lawsuit as a class action, the court must be satisfied that questions of law or fact common to the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (*Osarczuk v. Associated Universities, Inc.,* 82 AD3d 853 [2d Dept. 2011], quoting, *Aprea v. Hazeltine Corp.*, 247 AD2d 564 [2d Dept 1998]; *Friar v. Vanguard Hoding Corp.*, 78 AD2d 83 [2d Dept 1980]). The plaintiff has the burden of establishing the statutory prerequisites for certification (*Emilio v Robison Oil Corp.*, 63 AD3d 667 [2d Dept 2009]), but "the policy of this rule is to favor the maintenance of class actions" (Brandon v. Chefetz, 106 AD2d 162 [1st Dept 1985]). Further, "'any error, if there is to be one, should be...in favor of allowing the class action'" (*Pruitt v. Rockefeller Center Properties, Inc.*, 167 AD2d 14 (1st Dept. 1991)(quoting, *Esplin v. Hirschi*, 402 F.2d 94, cert. denied 394 U.S. 928), and "where the case is doubtful, the benefit of any doubt should be given to allowing the class action" (Krebs v. Canyon Club, Inc., 22 Misc.3d 1125(A), 880 N.Y.S.2d 873 [Sup. Ct. Westchester Cty. 2009]).

The Court has reviewed the submissions of all of the parties hereto. Plaintiff has met the specific requirements of numerosity, commonality, typicality and adequacy set forth in CPLR 901(a). The affidavits submitted by plaintiffs in support of their motion for class certification indicate that during their tenures, Mr. Kehn worked with 25 service employees and that Mr. Vogel worked with 100 service employees. There is no set rule for the number of prospective class members which must exist to satisfy the numerosity requirement of CPLR 901(a)(1), however, a class of 40 or more has been found to raise a presumption of numerosity (*Weinstein v Jenny Craig Operations, Inc.*, 41 Misc3d 1220[A] [Sup Ct, New York County 2013]).

Plaintiff has also satisfied the commonality requirement of CPLR 901(a)(2), which requires predominance of common questions of law or fact, not identity or unanimity among class members (*City of New York v Maul*, 14 NY3d 499, 514 [2010]; *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 98 [2d Dept 1980]). The affidavits submitted by plaintiff in support of the motion indicate that there was a common policy regarding the mandatory service charge at the Holiday Inn Plainview and that service employees were paid a flat hourly fee and were not paid

Page 5 of 7

all of the service charges collected.

Similarly, plaintiffs have also fulfilled the typicality requirement of CPLR 901(a)(3) because the individual plaintiff's claims derive from the same practices and course of conduct that give rise to the claims of the other members of the putative class and are based on the same legal theory. Here, Mr. Kehn seeks the same relief as the class members - to receive the gratuities allegedly collected by defendants and owed to him. Further, the named plaintiff's claims need not be identical to those of the class (*Krebs v Canyon Club, Inc.*, 22 Misc3d 1125(A) [Sup Ct, Westchester County 2009]). Mr. Kehn has also attested that he wishes to represent other Holiday Inn Plainview service employees to help them recover unpaid tips and gratuities.

Plaintiff has also established his ability to fairly and adequately represent the interests of the proposed class as required by CPLR 901(a)(4).

Finally, plaintiff has satisfied the superiority requirement of CPLR 901(a)(5) by demonstrating that a class action will be the most efficient method for handling the claims of the similarly situated putative class members.

In meeting the prerequisites of CPLR 901(a), plaintiff has also satisfied the factors set forth in CPLR 902 and defendants have failed to offer any persuasive argument to the contrary.

Accordingly, it is, ORDERED that:

(1) the plaintiff's motion for class certification, as amended in its Reply to include qualified individuals employed from July 13, 2009 to present, is GRANTED;

(2) Leeds Brown Law, P.C. and Virginia & Ambinder, LLP, are designated as class counsel;

(3) defendants shall provide to plaintiff a full and complete list of all Class Members, with names and last known addresses, within 15 days of the date of this Order;

(4) plaintiff shall amend the class definition, as noted in its Reply, to include qualified individuals employed from July 13, 2009 to present, only, and shall amend its Proposed Notice of Pendency (Plaintiff's Exhibit "I") in accordance with same prior to publication; and

(4) the Proposed Notice of Pendency (Plaintiff's Exhibit "I") is hereby approved upon amendment to the class definition as noted in plaintiff's Reply to include qualified

Page 6 of 7

individuals employed from July 13, 2009 to present, only, and plaintiff's publication is authorized to all Class Members within 30 days of defendants providing the Class List to plaintiff, in accordance with the Publication Order of this Court, dated April 8, 2014.

This constitutes the decision and order of this Court.

Dated: April 8, 2014

Anthony L. Parga, J.S.C.

Cc:    Leeds Brown Law, P.C.
       One Old Country Road
       Carle Place, NY 11514

       Certilman Balin Adler & Hyman, LLP
       90 Merrick Avenue, 9th Floor
       East Meadow, NY 11554

# ENTERED

APR 0 9 2014

NASSAU COUNTY
COUNTY CLERK'S OFFICE

Page 7 of 7

25

STATE OF NEW YORK
SUPREME COURT    COUNTY OF ONTARIO
----------------------------------------
ALLISON PLANTE, on behalf of herselfand
all other employees similarly situated,

                        Plaintiffs

-vs-                                         Index No. 111071

SOUTH BRISTOL RESORTS LLC,

                        Defendant
----------------------------------------


                    Special Term
                    January 22, 2015


                    APPEARANCES


                    CORDELLO LAW PLLC
                    *Justin M. Cordello, Esq.*
                    Attorneys  for Plaintiffs

              TREVETT CRISTO SALZER & ANDOLINA P.C.
                    *Matthew J. Fusco, Esq.*
                    Attorneys for Defendant


                    **DECISION**

**Rosenbaum, J.**

        Plaintiff, Allison Plante, on behalf of herself and all other employees
similarly situated, moves for an order pursuant to CPLR Rule 901-909 (a)

                          -1-

26

granting class certification of Plaintiff's state law claim, certifying a class of all banquet staff employees of Defendant who were employed by Defendant during the period from May 20, 2008 through the present and who were not paid gratuities to which they were entitled in violation of New York's Labor Law and/or regulations promulgated thereunder; (b) and if the class is certified, directing notice of the certification of the class be provided to the class members by first class mail addressed to their last known addresses in addition to emailing notice to the class members; (c) directing Defendant to post the notice at Bristol Harbour at an appropriate location in the kitchen or other non-public area; and (d) appointing Allison Plante as lead Plaintiff representing the class and appointing Ms. Plante's counsel as class counsel.

Plaintiff also submits a second Notice of Motion, seeking an order pursuant to CPLR 3212 granting summary judgment in Plaintiff's favor on the state law claim seeking recovery of unpaid gratuities pursuant to New York's Labor law Section 196-d for the relevant time frame of May 2008 through May 2014, and further, for the Court to hold an inquest to determine damages.

Plaintiff commenced this action on May 20, 2014. Plaintiff seeks to certify a class action pursuant to Article 9 of the CPLR for alleged violations of New York Labor Law Section 196-d. It is alleged that Defendant retained monetary gratuity it collected from customers during private events instead of distributing these gratuities in their entirety to banquet service employees. Plaintiff alleges that Defendant's practice of retaining the gratuities affected all banquet service employees who worked these events, and that the claims for each banquet service employee are subject to the same legal analysis of Defendant's practice. Specifically, Plaintiff alleges that each claim will require analyzing whether Defendant violated the law by retaining these gratuities instead of distributing them to the banquet service employees.

Defendant owns and operates Bristol Harbour, a resort located in

-2-

27

Canandaigua, New York. One of the many services offered by Defendant is hosting private events.

Plaintiff was employed by Defendant as a banquet server and/or busser from May 2011 until August 2012, and again from May 2013 to August 2013 and during those time frames worked at numerous private catered events. Generally, Plaintiff worked with six other banquet staff at each event. Plaintiff estimates that there were approximately 40 persons hired as banquet staff by Defendant during her employment, that Defendant catered events approximately 5-10 times a week, and that due to high turnover in the banquet staff, in a given year there were 5-20 different staff employees working for Defendant.

According to Plaintiff, it was Defendant's policy to charge customers a mandatory 20% surcharge on top of their bill. This allegation is based upon Defendant's Banquet Event Order, the contract signed for an event which included event pricing information. Defendant's website and sample menus also refer to a 20% surcharge as gratuity. Plaintiff alleges that Defendant does not notify banquet customers that the 20% charge is specifically for the administration of the event or other purposes, other than staff gratuities.

Plaintiff states that she was never paid any gratuity from the 20% surcharge charged to the banquet customers. Plaintiff alleges that other banquet employees also did not receive gratuities. Plaintiff asserts that her former manager at the resort, Karen Kiehle, informed her than the 20% surcharge was not for gratuity but was used by Defendant for administrative costs. She further states that Ms. Kiehle told her that in the past the 20% surcharge was distributed as a gratuity to the staff, but that the practice changed prior to Plaintiff's employment. Plaintiff believes that Defendant's banquet customers believed the 20% surcharge was a gratuity.

Defendant states that prior to 2011, employees received a percentage of

-3-

28

the gratuity/administrative charge, and that this was explained to customers in each instance. Beginning in 2011, however, Defendant contends the banquet staff began receiving an increased hourly wage in excess of the New York State Labor Law server fee and the minimum wage. Moreover, Defendant asserts that beginning in 2011, it explicitly gave notice to customers advising that any service fees would not be given to banquet event staff.

### Class Certification

"The determination of whether a lawsuit qualifies as a class action under the statutory criteria 'ordinarily rests within the sound discretion of the trial court.'" City of New York v. Maul, 14 N.Y.3d 499, 509 (2010), *quoting* Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 52 (1999). See also, Borden v. 400 East 55th Street Assoc., L.P., __ N.Y.3d __, 2014 WL 6607407 (Nov. 24, 2014). "Courts have recognized that the criteria set forth in CPLR 901(a) 'should be broadly construed not only because of the general command for liberal construction of all CPLR sections (*see* CPLR 104), but also because it is apparent that the Legislature intended article 9 to be a liberal substitute for the narrow class action legislation which preceded it.'" City of New York v. Maul, 14 N.Y.3d at 509, *quoting* Friar v. Vanguard Holding Corp., 78 A.D.2d 83, 91 (2d Dept. 1980).

There are "five prerequisites that CPLR §901(a) requires to be satisfied before a class may be certified. . . ." Borden, 2014 WL 6607407. Those prerequisites are: "1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; 2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members; 3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; 4. the representative parties will fairly and adequately protect the interests of the class; and 5. a class action is superior to other available methods for the fair

-4-

29

and efficient adjudication of the controversy."

### Numerosity

It has been held:

> There is no "mechanical test" to determine whether the
> first requirement numerosity has been met . . ., nor is
> there a set rule for the number of prospective class
> members which must exist before a class is certified. .
> . Each case depends upon the particular circumstances
> surrounding the proposed class. . . and the court
> should consider the reasonable inferences and
> common sense assumptions from the facts before it.

Friar v. Vanguard Holding Corp., 78 A.D.2d 83, 96 (2d Dept. 1980).

Plaintiff contends that Defendant failed to pay gratuities to at least forty
banquet service employees. Plaintiff states that joinder of the class member is
impractical and that given the high turnover in banquet employees, the number
in the class likely exceeds forty. Plaintiff further notes that Exhibit F to the
Reply Affirmation of Attorney Cordello demonstrates, through Defendant's own
employee records, that there were more than 200 banquet service staff working
for Defendant during the relevant time frame.

Defendant contends that Plaintiff fails to satisfy the numerosity
requirement and that Plaintiff acknowledges that some employees received the
gratuity during the time frame deemed relevant by Plaintiff.
[CAN YOU ASK PL – is a claim being made for those banquet employees who
worked prior to the gratuity change in 2011?]

Taking into consideration the circumstances before the Court and Exhibit
F submitted by Plaintiff, the Court determines that the numerosity requirements
has been satisfied.

### Commonality

"[I]t is 'predominance, not identity or unanimity,' that is the linchpin of
commonality." City of New York v. Maul, 14 N.Y.2d 499, 514 (2010), *quoting*
Friar, 78 A.D.2d at 98. "[T]he decision as to whether there are common

-5-

**30**

predominating questions of fact or law so as to support a class action should not be determined by any mechanical test, but rather 'whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Id. at 97.

Here, Plaintiff avers that the common questions of fact and law include the following: whether Defendant received a mandatory gratuity related to work performed by class members, whether Defendant failed to remit mandatory gratuities, whether Defendant's customers believe monies were being paid as gratuities, whether Defendants notified customers of the mandatory gratuities, whether Defendant notified customers that the mandatory gratuity was not distributed to banquet employees, whether Defendant is liable for all damages claimed, and whether Defendant should be enjoined from such violations in the future.

Defendant does not state any opposition as to this factor. Plaintiff has established commonality.

### Typicality

The typicality requirement is satisfied where "Plaintiff's claim derives from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory. . . ." Friar, 78 A.D.2d at 99.

Plaintiff contends that her claims are typical of the claims of the members of the putative class because they arose from Defendant's policy of allegedly imposing a mandatory 20% charge on banquet customers and failing to fully remit the gratuities to the banquet staff.

Defendant states that typicality is not met because prior to May 2011 the banquet staff did receive tips and moreover, after Defendant altered its pay structure in 2011, the banquet staff received an increased hourly wage. Defendant states that half of the employees during the relevant time frame

-6-

31

identified by Plaintiff were thus compensated differently than Plaintiff.

Typicality is established. The purported claims all derive from the same practice or course of conduct and are premised upon the same legal theory. "'It is not necessary that the claims of the names Plaintiff be identical to those of the class.'" Branch v. Crabtree, 197 A.D.2d 557 (2d Dept. 1993), *quoting* Super Glue Corp. v. Avis Rent a Car Sys., 132 A.D.2d 604 (2d Dept. 1987).

### Adequacy of Representation

"A class representative acts as principal to the other class members and owes them a fiduciary duty to vigorously protect their interests." City of Rochester v. Chiarella, 65 N.Y.2d 92, 100 (1985). "That responsibility clearly encompasses the duty to act affirmatively to secure the class members' rights as well as to oppose the adverse interests asserted by others." Id. "The three essential factors to consider in determining adequacy of representation are potential conflicts of interests between the representative and the class members, personal characteristics of the proposed class representative (*e.g.*, familiarity with the lawsuit and his or her financial resources), and the quality of the class counsel." Globe Surgical Supply v. GEICO Ins. Co., 59 A.D.3d 129, 144 (2d Dept. 2008).

Plaintiff asserts that she and counsel will fairly and adequately represent the class members. Lead counsel had been lead attorney in several other class actions, and Plaintiff asserts that she has no interest that diverges from the class.

Defendant notes that Plaintiff is a college student residing in a different region of the state for nine months of the year, who is not familiar enough with this lawsuit.

The Court's review of the materials presented reveals that Plaintiff has established adequacy of the representation. There are no issues with Plaintiff's character, there is no evidence presented of conflicts between Plaintiff and the

-7-

32

class members, and no concerns are raised about the competence of Plaintiff's counsel.

### *Superiority*

In a case dealing with a "relatively insignificant amount of damages suffered by many members of the class" the costs of an individual action are "prohibitive." Pruitt v. Rockefeller Center Properties, Inc., 167 A.D.2d 14, 24 (1st Dept. 1991). Additionally, the "large number of class members renders consolidation unworkable" and thus "a class action is not only superior but, indeed, the only practical method of adjudication." Id. In such circumstances, it has been noted:

> The class action is seen as a means of inducing socially and ethically responsible behavior on the part of large and wealthy institutions which will be detected from carrying out policies or engaging in activities harmful to large numbers of individuals. Absent the class action lawsuit, the theory goes, these institutions will be permitted to operate virtually unchecked and continue to engage in "legalized theft" which is perpetuated because the injured potential plaintiffs frequently are damaged in a small sum (often less than $100) since, realistically speaking, our legal system inhibits the bringing of suits based on small claims.

Friar, 78 A.D.2d at 94.

Plaintiff alleges that the proposed class members have suffered relatively small damages, and most class members would not be motivated to individually commence suits.

Defendant does not offer opposition as to superiority. Superiority is established.

### *CPLR 902*

CPLR 902 sets forth additional factors for the courts consideration when determining whether to allow a matter to proceed as a class action: "1. the interest of members of the class in individually controlling the prosecution or

defense of separate actions; 2. the impracticability or inefficiency of prosecuting or defending separate actions; 3. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; 4. the desirability or undesirability of concentrating the litigation of the claim in the particular forum; 5. the difficulties likely to be encountered in the management of a class action."

Here, the purported class members have not suffered individually large damages and thus each claim alone does not warrant hiring and funding litigation. Separate actions would be impracticable and inefficient. There is no evidence that concentrating this litigation in this forum is undesirable, that other similar litigation has been commenced, or that difficulties will arise in managing this class action.

Plaintiff satisfies the CPLR §902 criteria.

Plaintiff's application for class certification is granted. Likewise, Plaintiffs' motions for an order additionally directing that notice of the certification of the class be provided to the class members by first class mail addressed to their last known addresses in addition to emailing notice to the class members, directing Defendant to post the notice at Bristol Harbour at an appropriate location in the kitchen or other non-public area, and appointing Allison Plante as lead Plaintiff representing the class and appointing Ms. Plante's counsel as class counsel are also granted.

### Summary Judgment

A party seeking summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." Alvarez v. Prospect Hosp., 68 N.Y.2d 320, 324 (1986). "Failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." Id. See also, Qlisanr, LLC v. Hollis Park Manor Nursing Home, Inc., 51

-9-

34

A.D.3d 651, 652 (2d Dept. 2008). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." Alvarez, 68 N.Y.2d at 324 , citing Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980). A motion for summary judgment may be denied as premature where "facts essential to justify opposition may exist" but are in the control of the other party and discovery has not yet taken place. See CPLR 3212(f); Morris v. Hochman, 296 A.D.2d 481 (2d Dept. 2002).

New York Labor Law Section 196-d states:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

The Court of Appeals has stated that "the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer. . . ." Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79 (2008). "[A] banquet charge, like any charge can 'purport[] to be a gratuity' and . . . the reasonable patron standard should govern when determining whether a banquet patron would understand a service charge was being collected in lieu of a gratuity." Id.. The Court cited a NYSDOL opinion

-10-

35

letter dated March 26, 1999, which stated:

> If the employer's agents lead the patron who
> purchases a banquet or other special function to
> believe that the contract price includes a fixed
> percentage as a gratuity, then that percentage of the
> contract price must be paid in its entirety to the
> waiters, busboys and 'similar employees' who work at
> that function, even if the contract makes no reference
> to such a gratuity.'

Id. at 79-80. It was held that "the statutory language of Labor Law §196-d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees. An employer cannot be allowed to retain these monies." Id. at 80-81.

New regulations regarding Labor Law Section 196-d went into effect in 2011. 12 NYCRR 146-2.19 relates to administrative charges that are not purported to be a gratuity or tip and requires that administrative charges "be clearly identified as such" and that customers must be "notified that the charge is not a gratuity or tip." It moreover places the burden on the employer to demonstrate that the notification given was "sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." Id. at (b). As to notification, the regulation states:

> Adequate notification shall include a statement in the
> contract or agreement with the customer, and on any
> menu and bill listing prices, that the administrative
> charge is for administration of the banquet, special
> function, or package deal, is not purported to be a
> gratuity, and will not be distributed as gratuities to the
> employees who provided service to the guests. The
> statements shall use ordinary language readily
> understood and shall appear in a font size similar to
> surrounding text, but no smaller than a 12-point font.

Id. at (c). Finally, the regulation contemplates combination charges:

> A combination charge, part of which is for the

-11-

36

administration of a banquet, special function or
package deal and part of which is to be distributed as
gratuities to the employees who provided service to
the guests, must be broken down into specific
percentages or portions, in writing to the customer, in
accordance with the standards for adequate
notification in subdivision (c) of this section. The
portion of the combination charge which will not be
distributed as gratuities to the employees who
provided service to the guests shall be covered by
subdivisions (a), (b), and (c) of this section.

Id. at (d).

Here, Plaintiff contends that the documentary evidence proves that it
imposed mandatory service charges on customer at hundreds of events where
Plaintiff worked during the relevant time period but never paid the banquet
service staff the service charges required by law.

Joshua Shaver, an employee of Defendant from approximately 2008 to
2009 avers that he was a banquet bartender during that time frame and was
aware that Defendant's Banquet Event Order listed a 20% gratuity/ service
charge in addition to the catering charges. Shaver states that he was paid less
than minimum wage and received only a "limited portion of the 20% surcharge."
Affidavit of Joshua Shaver, ¶5. Shaver states that banquet customers were not
notified that the 20% charge was used for other purposes, and Shaver recalls
incidents where banquet customers thanked him for his service and indicated
that his tip was included in the total charge from Defendant. Id. at ¶8.

Plaintiff submits Exhibits D, E, F, G, H, and I, Banquet Event Orders
setting forth the charges. The 2008 Banquet Event Orders submitted as Exhibit
D state, in relevant part:

A NY STATE SALES TAX IS ADDED TO ALL
FOOD/BEVERAGE/SERVICE PRICES. A 20%
GRATUITY/SERVICE CHARGE IS ADDED TO ALL FOOD &
BEVERAGE PRICES. PRICES ARE SUBJECT TO CHANGE . .
. .

-12-

37

Plaintiff's Exhibit D. The Banquet Event Orders for 2009, 2010, 2011, and 2012 contain identical, or nearly identical, language as to the gratuity. See Exhibit E, F, G, and H. The Court notes that slight variations of the nomenclature for the service charges are used in the Banquet Event Orders submitted: "service charge", "gratuity", "gratuity/admin. fee", and "admin. charge." Defendants contend that the Banquet Event Orders were not the primary contract used with their clientele.

Plaintiff notes that the language employed does not meet the NYSDOL requirements to allow Defendant to retain the charge. See, e.g., Maldonado v. BTB Events & Celebrations, Inc., 990 F.Supp.2d 382, 390-94 (S.D.N.Y. 2013) (noting the non-exhaustive list of factors bearing "on whether a reasonable customer would believe a particular service charge is a gratuity" include: "(1) the font size and prominence of the notice; (2) the label used to denote the charge and whether such a label would confuse patrons (noting that the label 'administrative fee' is clear than 'service charge'); (3) whether the purpose of the charge and manner in which the charge is calculated are described on the bill; (4) whether the notice discloses the portion of the charge that is being distributed to the service staff and informs that patrons to leave an additional payment as a tip; and (5) whether there exists a separate line for gratuity"), *quoting* NYSDOL March 11, 2010 Opinion Letter, at 3. Plaintiff notes that Defendant's Banquet Event Orders do not state that the charge will not be distributed to employees and that furthermore the menus and bills also make no such statement. Plaintiff also notes that after the commencement of this lawsuit, Defendant changed the language of the Banquet Event Orders to include the following disclaimer:

> **20% Administrative fee and Tax**
> All charges subject to change. All invoices are subject
> to as 20% taxable administrative fee plus applicable
> New York State sales tax. The administrative fee is not
> intended to be a tip and is not distributed to the wait

-13-

staff as gratuity. The administrative fee is used to
cover administrative and facility costs, including higher
wages for banquet service staff. For banquets,
additional tipping is entirely voluntary and is at the
guest's discretion. Guests should never feel obligated
to leave a gratuity, due to our banquet staff's higher
wage scale, but are welcome to provide a gratuity
should he/she wish to acknowledge our banquet staff
members for exceptional or outstanding service.

Plaintiff's Exhibit J. According to Plaintiff, the statutory right to a full gratuity
collected by the employer must be waived via a "clear, unmistakable" statement.
See Tamburino v. Madison Square Garden, L.P., 115 A.D.3d 217, 221 (1st Dept.
2014).

Plaintiff further argues that Defendant's customers believed the 20%
charge was a gratuity. See Affidavit of Joshua Shaver, ¶8; Affidavit of Allison
Plate, ¶13 ("Based on my experiences Defendant's customers at Bristol Harbour
believed the 20% surcharge was a gratuity. For instance, a few times customers
thanked me for doing a great job and indicated that my tip was included in the
total charge from my employer. Further, I recall a customer, who held a
rehearsal dinner at Bristol Harbour who told me, while I was serving at his
event, that he was charged a percentage gratuity on his bill which he believed
was being paid as tip to the banquet staff who worked at his event").

In opposition, Defendant notes that courts have held that if an employer
wishes to keep the service charge, it must sufficiently disclose to patrons that
the service charge is being retained and not paid to the staff. See Spicer v. Pier
Sixty, LLC, 269 F.R.D. 321, 331 (S.D.N.Y. 2010). In adopting the NYSDOL's
March 11, 2010 opinion letter, the *Spicer* Court stated: "it is neither irrational
nor unreasonable to maintain that a reasonable customer's beliefs regarding
the nature of a mandatory service fee would be influenced by the totality of the
banquet company's representations and the surrounding circumstances." Id. A
reviewing court's responsibility to assess the totality of the circumstances was

-14-

also addressed in *Martin v. Restaurant Assoc. Events Corp.*, 35 Misc.3d 215 (Sup.Ct. Westchester Co. 2012), *aff'd* 106 A.D.3d 785 (2d Dept. 2013): "even if a contract explicitly states that a service fee is not a gratuity, a reasonable customer might nonetheless believe otherwise depending on the totality of the circumstances." Id. at 225. The Court continued, "whether a reasonable customer would believe that a mandatory service charge was being collected in lieu of a gratuity is dependent upon the totality of the all of the circumstances, including all of the statements made nor not made by the employer. This is obviously a fact-intensive inquiry." Id.

Here, Defendant contends it has established triable issues of fact regarding whether, considering the totality of the circumstances, a reasonable customer would expect that the 20% fee was entirely treated as a gratuity despite alleged representations made by Defendant. Defendant presents the Affidavit of Sara Goff, event coordinator for Defendant. Goff states:

> 6. Prior to 2011 the resort imposed a 20% gratuity and administrative fee on all the food and beverages served at an event.
>
> 7. The 20% was broken down into 14% as tips for the servers and bartenders, 2% was paid to me as a commission for work as event coordinator and 4% went to the house.
>
> 8. In 2010 this distribution changed. In that year 14% went to the servers and bartenders, 2% to me as event coordinator, 2% was paid to Jay Daniels, the food and beverage manager for his work in coordinating, ½% was paid to my assistant, Karen Kiehle and only 1.5 went to the house.
>
> 9. During this period of time I would regularly explain to all customers that only 14% went to the servers as gratuity. I typically offered this explanation in the context of talking about the taxes which were charged on events. We are not permitted to charge taxes on

-15-

40

> the gratuity that is paid to the server. We did charge
> taxes on the administrative portion. Therefore, when I
> was explaining the total cost I would break down the
> 20% gratuity/ administrative fee into its two portions
> and explain to each customer that only 14% was paid
> as a gratuity which was not taxed whereas the 6% was
> an administrative fee which was taxed. Based on my
> work in dealing with customers I believe that they all
> understood that only 14% was a gratuity paid to
> servers.

Affidavit of Sara Goff, ¶¶6-9. Goff further notes that Defendant changed its

systems for paying bussers, servers, and bartenders in 2011. Id. at ¶10. As to

notification made to customers following the change, Goff states:

> Most of the weddings that were held in 2011 had been
> booked in 2010. At the time they were booked we
> were working under the old system where we had the
> 20% gratuity/ administrative fee. Because we were
> changing the system, I sent e-mails to every individual
> customer and explained to them that while there was a
> 20% administrative fee, it was not a gratuity that was
> being paid to the servers. . .
>
> [I]n addition to sending the e-mails, I had personal
> conversations with every wedding customer to explain
> to them that while there was a 20% administrative fee,
> this was not a gratuity that was paid to the servers and
> that our servers were paid well above the minimum
> wage and did not receive gratuities.

Id. at ¶¶13-14. Goff states that Defendant changed its invoices in 2011 to

reflect that the administrative fee was not a gratuity. The invoices thereafter

sent stated: "*Includes 18% gratuity and 2% administrative fee** on food and

beverage portion only. **Not a gratuity for employees." Id. at ¶15 and Exhibit

B.

Moreover, Defendant notes through the Affidavit of Greg Mulhern,

General Manager of Bristol Harbour, that while the Banquet Event Orders

continued to state the gratuity/administrative fee, those forms were

-16-

**41**

predominately for internal use and were only provided to customers in some instances. Affidavit of Greg Mulhern, ¶28.

Defendants conclude that Plaintiff does not present evidence that the event coordinator advised customers anything other than the fact that the gratuity/administrative fee was not distributed entirely to employees, and later that the entire service charge would be retained by Defendant. Defendant argues that no evidence is presented that the customers were led to believe that the entire fee was remitted entirely to the employees.

The Court finds a question of fact preventing granting Plaintiff's motion for summary judgment at this juncture, in part. 12 NY ADC §146-2.19(c), as cited *supra*, states that [a]dequate notification shall include a statement in the contract or agreement with the customer. . . that the administrative charge is for administration of the banquet . . . is not purported to be a gratuity, and will not be distributed as gratuities to the employees. . . The statements shall use ordinary language readily understood and shall appear in a font size similar to surrounding text, but no smaller than a 12-point font." There is a question as to whether the notifications provided to customers, as described in Defendant's opposition papers, satisfied the requirements of 22 NY ADC §146-2.19(c). There is no indication that the contracts Defendant entered into with customers contained merger clauses, and the Court's review of the papers does not find merger clauses. As such, there is a question as to whether the alleged subsequent written notifications sufficiently amended the contracts to bring them in compliance with the regulatory requirements. To this extent, where written notifications were provided, the motion for summary judgment is denied.

As to whether any oral representations made after the policy change in 2011 constituted sufficient notice to customers in cases where the entire fee was being retained by Defendant, summary judgment is granted. 12 NY ADC

-17-

42

§146-2.19 requires written notification. Subsection (c) describes the notification that is required and mandates the font size to be used, thus indicating a written notice. Moreover, Subsection (d) which specifically references a "writing," references said "writing" specifically "in accordance with the standards for adequate notification in subsection (c) of this section." To the extent customers were notified only orally by Defendant of the distribution of the subject charge, Plaintiff has established entitlement to summary judgment, and Defendant fails to raise an issue of fact.

Entitlement to summary judgment is otherwise not established and is consequently denied.

Signed at Rochester, New York this 22nd day of January, 2015.

Matthew A. Rosenbaum
Supreme Court Justice

-18-

**43**

```
STATE OF NEW YORK :  SUPREME COURT
COUNTY OF ERIE :  PART 22
_____

CHRISTOPHER FISCHER and
GABRIELLE LONERGAN, on Behalf
of Themselves and All Other
Employees Similarly Situated,

        Plaintiffs,

  - vs -                                      INDEX # 811728/2014

MICHAEL'S BANQUET FACILITY, INC.,                      DECISION

        Defendant.
_____

                              25 Delaware Avenue
                              Buffalo, New York
                              February 9, 2015


B e f o r e:
              HONORABLE TIMOTHY J. WALKER, JCC
                 Acting Supreme Court Justice
            Presiding Justice, Commercial Division
                  Eighth Judicial District


A p p e a r a n c e s:

              THOMAS & SOLOMON LLP
              BY:  MICHAEL J. LINGLE, ESQ.
                   JESSICA WITENKO, ESQ.
              Appearing for the Plaintiffs.

              JASON A. SHEAR, ESQ.
              Appearing for the Defendant.
```

1          COURT CLERK:  This is the matter of Fischer

2     versus Michael's Banquet Facility under Index number

3     811728/2014.  Counselors, please state your appearance for

4     the record.

5          MR. SHEAR:  Good afternoon, Your Honor.  Jason

6     Shear for the defendant.

7          MR. LINGLE:  Mike Lingle and Jessica Witenko,

8     Thomas and Solomon, for the plaintiffs.

9          THE COURT:  Jessica --

10          MS. WITENKO:  Witenko, W-I-T-E-N-K-O.

11          THE COURT:  Thank you.  Would anyone like the

12     argument on the record?

13          MR. LINGLE:  I don't believe so, Your Honor.

14          MR. SHEAR:  No, Your Honor.

15          THE COURT:  Okay.

16          (Discussion off the record.)

17          THE COURT:  This is plaintiff's motion to, among

18     other items, certify a class, approve a proposed

19     representative, approve class counsel, approve the form

20     and content of the notice -- the form of a notice that

21     would then go out to prospective class members.  And

22     defendant's cross-motion to dismiss.

23          This is the court's decision.  Michael's is a

24     banquet facility located in Hamburg, New York.  According

25     to the complaint, the named plaintiffs were banquet

*Fischer, et al. v. Michael's - Decision*

3

1     servers at Michael's during various time periods and were

2     paid an hourly wage.  Plaintiffs contend that Michael's

3     charged an 18 percent banquet fee without advising

4     customers that the fee was not a gratuity to be

5     distributed to the employees such as plaintiffs.  Labor

6     Law section 196-d provides that "no employer shall demand

7     or accept, directly or indirectly, any part of the

8     gratuities received by an employee, or retain any part of

9     a gratuity or of any charge purported to be a gratuity for

10     any employee -- for an employee."  Regulations promulgated

11     pursuant to that section provide that a charge for the

12     administration of a banquet or other special event be

13     clearly identified as such, and customers shall be

14     notified that the charge is not a gratuity or tip.

15         Michael's routinely advertises to its customers

16     that it will add and does, in fact, add an 18 percent

17     "banquet" charge to its bills for banquet.  No part of

18     that banquet charge is distributed to its employees.

19     According to the complaint, defendant's past and current

20     menus did not then and do not now indicate that the

21     banquet charge is, in fact, retained by the employer and

22     not distributed to employees as gratuities.  Plaintiffs

23     assert that defendant cannot meet its burden of proof that

24     it ensured that a reasonable customer understood that the

25     banquet charge would not be paid to employees.

1             In response, defendant moves to dismiss the

2     complaint, apparently on two separate grounds.  First,

3     that the named plaintiffs lacked standing to sue.  And

4     second, that customers of defendant were fully aware that

5     any extra charges were not being paid to the "wait staff";

6     and therefore, the defendant did not violate section

7     196-d.

8             Defendant cites no law in support of its

9     allegation that the named plaintiffs lack standing.

10    Instead, defendant's managers assert that servers at

11    defendant's facility are not employees who would be

12    considered "tipped employees" because servers are notified

13    prior to accepting employment that they will be paid

14    hourly and that there will be no income from tips.

15            The definition of "employee" pursuant to Article

16    6 of the Labor Law, namely section 190, et seq., provides

17    that "any person employed for hire by an employer in any

18    employment."  Defendant does not argue that the named

19    plaintiffs were independent contractors.  Instead, merely

20    that they were not "tipped employees," a category that

21    does not appear in the statute.  In fact, the statute does

22    not regulate what employers tell their employees about

23    tips.  Instead, it regulates what employers inform their

24    customers about extra charges.  As such, defendant's

25    contention on this point is without merit.

 1                    Second, defendant asserts that its customers

 2          were fully aware that the "18 percent banquet charge" was

 3          not a gratuity that would be paid to the servers because

 4          if customers asked, they were told so orally.  In

 5          addition, Cheri Gargano avers that the "service charges"

 6          were subject to state and county sales tax such that

 7          "customers had knowledge that the service charge was not a

 8          gratuity."  On that basis, defendant asserts that it did

 9          not violate section 196-d, and that the complaint must be

10          dismissed.

11                    The court disagrees.  Because the alleged oral

12          or inquiry notice upon which defendant relies does not

13          come close to the "adequate notification" required by

14          regulation, at this procedural juncture where the court

15          must consider all allegations in the complaint as true,

16          the court denies the cross-motion to dismiss.

17                    As to plaintiffs' motion pursuant to CPLR

18          section 901, a class action may be certified where, one,

19          the class is so numerous that joinder of all members,

20          whether otherwise required or permitted, is impracticable;

21          two, there are questions of law or fact common to the

22          class which predominate over any questions affecting only

23          individual members; three, the claims or defenses of the

24          representative parties are typical of the claims or

25          defenses of the class; four, the representative parties

*Fischer, et al. v. Michael's - Decision*

6

1    will fairly and adequately protect the interest of the

2    class; and five, a class action is superior to other

3    available methods for the fair and efficient adjudication

4    of the controversy.

5         In addition, plaintiffs must demonstrate that

6    certification is also appropriate pursuant to the five

7    factors set forth in CPLR section 902.  The court cites

8    Krebs versus The Canyon Club, 22 Misc 1125, Supreme Court,

9    Westchester County, 2009.  Plaintiff bears the burden of

10   establishing that the class exists and that the

11   prerequisites are met.  Defendant does not challenge

12   plaintiffs' motion insofar as it seeks to establish the

13   CPLR section 901-902 criteria.  The court determines that

14   plaintiffs have met their burden pursuant to the Krebs

15   case.  Notably, plaintiffs' counsel appears very able to

16   prosecute the action.

17        One issue merits particular note despite

18   defendant's failure to raise it.  Pursuant to CPLR 901(b),

19   an action to recover a penalty, or minimum measure of

20   recovery created or imposed by statute may not be

21   maintained as a class action unless the statute creating

22   the penalty specifically permits a class action.  Here,

23   the Labor Law section 198(1-a) permits the recovery of

24   actual wages plus additional liquidated damages in an

25   amount equal to 25 percent of actual damages for a

1          violation of section 196-d.

2                    Other courts have addressed this issue fully in

3          similar cases.  See the Krebs case as well as the

4          following:  Pesantez versus Boyle, 251 AD2d 11, First

5          Department 1998.  In addition, in Ridgeview Meadows

6          Homeowners Association, Inc. versus Tara Development Co.,

7          242 AD2d 947, the Fourth Department ruled that in a class

8          action under General Business Law section 349 where the

9          plaintiffs agreed to waive the possibility of statutory

10         minimum and trouble damages and limit their demand to

11         actual damages, CPLR 901(b) would not be applicable and

12         the class action could be maintained.  However, the Fourth

13         Department modified the order by providing that any class

14         member wishing to pursue statutory minimum and trouble

15         damages may opt out of the class and instead bring an

16         individual action, id. at 247.  See also Super Glue Corp.

17         versus Avis Rent A Car, 132 AD2d 604 at 606, Second

18         Department 1987.

19                   Accordingly, the class in this case shall be

20         certified as all hourly banquet service workers who worked

21         at any banquet event at Michael's Banquet Facility from

22         October 7, 2008 to the present where a mandatory charge

23         was added to customers' bills and Michael's Banquet

24         Facility failed to clearly notify customers that such

25         charge was not a gratuity or tip.

1           In addition, the court determines that the

2      proposed notice is written in plain, easy-to-understand

3      language, and adequately notifies all potential class

4      members of the important details, including that the named

5      plaintiffs have waived their rights to liquidated damages,

6      but that any such class member may preserve his or her

7      right to liquidated damages by opting out.  The notice as

8      approved with the correction of a few typographical errors

9      shall be posted in an appropriate place such as the

10     kitchen, break room, or other nonpublic area at Michael's

11     Banquet Facility.  In addition, defendants shall disclose

12     to plaintiffs' counsel within 30 days of service upon

13     counsel of the order of this court together with notice of

14     entry, the names, last known addresses, and last known

15     email addresses of all potential class members, namely all

16     hourly banquet service workers employed by defendant

17     between October 7, 2008 and the present, and plaintiff

18     shall mail the notice to such individuals.

19           Are there any questions?

20           MR. LINGLE:  No, Your Honor.

21           MR. SHEAR:  No.

22           THE COURT:  Submit an order on notice.  Order a

23     copy of the transcript, and attach it to the order.

24           MR. LINGLE:  Yes, Your Honor.

25           THE COURT:  Off the record.

1                    (Discussion off the record.)

2

3                                *   *   *

4

5

6                    C E R T I F I C A T I O N

7

8

9

10       I certify that the foregoing 9 pages are a correct

11   transcription of the proceedings recorded by me in this matter.

12

13

14       _____
                LYNN S. DULAK, RPR, CRR,

15              Official Court Reporter.

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2018, a copy of the foregoing document was electronically filed.  Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

/s/ Sarah E. Cressman
**Sarah E. Cressman**