IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JILLIAN IZZIO, et al., | § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 3:14-cv-03194-M |
| CENTURY GOLF PARTNERS MANAGEMENT, L.P., | § § § § § | |
| Defendant. | § | |

## ORDER

Plaintiffs Jillian Izzio and Heather Zoeller ("Plaintiffs") sued Defendant Century Golf Partners Management for violations of the labor law of the State of New York and the Fair Labor Standards Act ("FLSA"). Plaintiffs, Kara Ashby, Diane Gulla, Daniel Howard, Derik Kane, Michael Overdorf, and Sara Owczarzak (collectively, "Proponents") now move for certification of a settlement class, approval of a proposed settlement, and an award of attorney fees and expenses to resolve the claims brought in this action and three related actions.

After consideration of Plaintiffs' Motion for Certification of the Settlement Classes, Approval of the Enhanced Settlement, and Award of Attorneys' Fees and Expenses [ECF No. 109], the Court **ORDERS** that the proposed settlement classes are **CONDITIONALLY CERTIFIED**. The Court further **APPROVES** Plaintiffs' proposed supplemental notice and claim and consent form [ECF No. 118]. Plaintiffs are **ORDERED** to direct the supplemental notice and claim and consent form to those members of the State Law Class who originally opted

1

out of the class action, and to members of the FLSA class who did not originally opt in to the class action, within 45 days of the date of this Order.

I. **Background**

    a. **General Background**

This is a wage-and-hour class action brought under New York law and the FSLA on behalf of banquet employees at four New York country clubs. [ECF No. 1 at 3–4]. Plaintiffs claim (1) that Defendant failed to remit certain service charges to banquet staff in violation of New York law, (2) that Defendant did not reimburse banquet workers for the cost of their uniforms in violation of New York law, and (3) that Defendant did not provide appropriate overtime pay in violation of New York law and the FSLA. [*Id*. at 4–5]. The four country clubs involved are owned and/or operated by Defendant and include (1) Brierwood Country Club in Hamburg, New York ("Brierwood"), (2) Fox Valley Club in Lancaster, New York ("Fox Valley"), (3) Tan Tara Golf Club in North Tonawada, New York ("Tan Tara"), and (4) Harbor Links Golf Club in Port Washington, New York ("Harbor Links"). [ECF No. 110 at 2–3]. Plaintiffs were banquet employees at the Brierwood and Fox Valley clubs. [ECF No. 1 ¶¶ 11, 12]. Objectors Anthony Metzger and Jullian Brana ("Objectors") were employees at the Harbor Links club. [ECF No. 114 at 1].

Plaintiffs' main contention is that Defendant failed to remit services charges collected under banquet contracts at the Brierwood, Fox Valley, and Harbor Links clubs.[1] The standard contract between these clubs and a patron renting the club for an event provided for a 20% "service charge" added to all food and beverage charges. [*See* ECF No. 111, Hout Decl., Ex. 3 at

---

[1] Proponents state that "[d]iscovery revealed that Tan Tara remitted service charges [to] its banquet staff members;" thus, these plaintiffs only have overtime and uniform claims. [ECF No. 111, Hout Decl. ¶¶ 10, 11].

38, Ex. 4 at 44, Ex. 5 at 48]. Under New York law, no employer may "retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

      **b.**        **Related Litigation**

Three other pending and related pieces of litigation are impacted by the proposed settlement. The first was filed by Diane Law and Diane Gulla on behalf of banquet staff at the four country clubs in state court in New York (the "*Law* Action"). *See Law et al. v. CGPM/WMC Operating, LLC d/b/a Arnold Palmer Golf Mgmt.*, Index No. E150883/2013. Four additional named plaintiffs were subsequently added in the *Law* Action, and five of the six *Law* plaintiffs are among the Proponents who now join Plaintiffs in moving for certification and approval of the class settlement. [ECF No. 110 at 1–2].

Next, on June 13, 2014, Anthony Metzger brought an action in the United States District Court for the Eastern District of New York, asserting claims on behalf of the Harbor Links banquet service workers (the "*Metzger* Action"). *See Metzger v. Century Golf Partners Mgmt., LP*, No. 14-cv-3747 (E.D.N.Y. June 13, 2014). Metzger objects to the proposed settlement in this action. [ECF No. 114 at 1]. The *Metzger* action is currently stayed pending the outcome of this proceeding. *Metzger v. Century Golf Partners Mgmt., L.P.*, No. 14-cv-3747 (E.D.N.Y. Apr. 16, 2015).

Finally, on September 10, 2014, Kara Ashby filed a complaint against Defendant in the United States District Court for the Western District of New York on behalf of herself and employees at the four country clubs, asserting the same claims as those advanced in this action (the "*Ashby* Action"). *See Ashby v. Century Golf Partners Mgmt. L.P., d/b/a Arnold Palmer Golf Mgmt.*, No. 14-cv-759 (W.D.N.Y. Sept. 10, 2014). On March 18, 2015, the *Ashby* Action was transferred to this Court and it was consolidated with this action on April 21, 2015. [ECF

No. 33 at 1.]. Ashby is one of the Proponents moving for certification and approval of the Proposed Settlement.

### c. Initial Certification of Settlement Class, Appeal, and Subsequent Negotiation

On June 4, 2015, Plaintiffs and Kara Ashby moved for preliminary approval of a class action settlement (the "Initial Proposed Settlement") to resolve the claims brought in this action and in the *Law*, *Metzger*, and *Ashby* Actions. [ECF Nos. 32, 33]. In the Initial Proposed Settlement, Defendant agreed to pay $1.2 million to settle the four actions. [ECF No. 33 at 7]. On March 16, 2016, the judge previously presiding over this action certified a settlement class and gave final approval to the Initial Proposed Settlement. [ECF No. 47 at 1]. Objectors appealed the decision granting certification and approval to the United States Court of Appeals for the Fifth Circuit. [ECF No. 49].

On December 7, 2016, the Fifth Circuit vacated and remanded the certification and approval, finding that the Court had "conducted no analysis, much less a rigorous analysis, of the Rule 23(a) factors" in certifying the class for settlement. [ECF No. 77 at 4]. The Fifth Circuit noted the Objectors' contention that the commonality factor of Rule 23(a) was not satisfied, but the court did not comment on the merits of this contention. [*Id*. at 3]. The court merely vacated and remanded "for appropriate Rule 23 findings." [*Id.* at 4].

After remand, the parties participated in mediation and extensive settlement discussions. [ECF No. 102 at 1]. On May 1, 2018, Plaintiffs again moved for certification of a settlement class including banquet employees of all four country clubs, for approval of an enhanced settlement, and for an award of attorney fees and expenses. [ECF Nos. 109, 110]. On May 22, 2018, the Objectors again filed an objection to certification and approval of the proposed

settlement. [ECF No. 114]. The Court held a preliminary hearing on the Motion for Certification on September 8, 2018. [ECF No. 124].

## II. The Proposed Settlement

Proponents seek certification of two settlement classes: (1) a class consisting of Plaintiffs and all individuals who worked as hourly banquet service staff at any event held at the four country clubs from August 20, 2007 through March 5, 2015 (the "State Law Settlement Class"), and (2) a class consisting of Plaintiffs and all individuals who worked as hourly banquet staff at any event held at the four country clubs from September 5, 2011 through March 5, 2015, and who opted in to the settlement pursuant to the FLSA (the "FLSA Settlement Class") (together with the State Law Settlement Class, the "Settlement Class"). [ECF No. 110 at 7–8].

Under the Proposed Settlement, Defendant will pay out a maximum of $1.425 million,[2] an increase from the Initial Proposed Settlement amount of $1.2 million. [ECF No. 111, Hout Decl., Ex. 1 at 11]. Out of this $1.425 million, Plaintiffs propose that 25%, or $356,250, be paid to Plaintiffs' counsel as attorney fees. [*Id.*, Hout Dec. ¶ 17]. Plaintiffs' counsel also seek $45,000 in litigation costs and expenses and $42,308.79 in settlement administration costs. [*Id.*, Hout Decl. ¶¶ 25, 28]. Finally, the eight Proponents seek a total of $39,000 in service payments to be divided between them. [*Id.*, Hout Decl. ¶ 14].

The amount of the settlement fund remaining after these deductions equals $942,441.21 (the "Distribution Fund"). Proponents suggest that 90% of the Distribution Fund be divided by the total number of hours worked by all members of the Settlement Class who worked at Brierwood, Fox Valley, and Harbor Links, to arrive at a per-hour figure of $3.81. [ECF No. 110

---

[2] Under the terms of the proposed settlement, any unclaimed awards will revert to Defendant. [ECF No. 110 at 28].

at 8]. Each class member who worked at these clubs and does not opt out of the settlement will receive $3.81 per hour worked during the specified class periods. [*Id.*]. The remaining 10% of the Distribution Fund will be divided by the total number of hours worked by class members at Tan Tara to arrive at an hourly figure of $2.54. [*Id.* at 8–9]. Class members at Tan Tara will receive $2.54 for each hour worked during the specified class periods. [*Id.*]. Proponents represent that "[t]he 90-10 split was negotiated by the parties in recognition that there were no service charge claims at the Tan Tara facility" because "[d]iscovery revealed that Tan Tara remitted service charges [to] its banquet staff members." [*Id.* at 9; ECF No. 111, Hout Decl. ¶ 10]. Tan Tara plaintiffs, however, do have "potential spread of hours, uniform, and off-the-clock claims. . . ." [ECF No. 110 at 9].

### III.   Class Certification

#### a. Legal Standard

A settlement class must meet the requirements for class certification, just as if the case were to be litigated. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997). In fact, the requirements of Rule 23 "demand undiluted, even heightened, attention in the settlement context . . . [because] a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

To certify a class, a party must first demonstrate that the proposed class meets the four threshold requirements specified in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012). The party must then demonstrate that the proposed class meets one of three categories specified in Rule 23(b). *Id.* Plaintiffs here seek to certify the class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate

6

over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Courts have "great discretion in certifying and managing a class action." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

For the reasons stated below, the Court finds that the Settlement Class meets Rule 23's requirements and **GRANTS** conditional certification.

### b. Analysis

#### i. Rule 23(a) Requirements

##### 1. Numerosity

This requirement is met when "the class is so numerous that the joinder of all members would be impracticable." FED. R. CIV. P. 23(a)(1). The proposed class consists of 435 members, of which 256 opted in to the initial proposed settlement. [ECF No. 111, Devery Decl. ¶ 4]. This size is sufficiently numerous to satisfy the numerosity requirement. *See, e.g.*, *Mullen*, 186 F.3d at 625 (holding that a putative class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement"). Objectors do not dispute that the numerosity requirement is satisfied here. The Court finds that the numerosity requirement is met.

##### 2. Commonality

Next, "there must be questions of law or fact common to the class." FED. R. CIV. P. 23(a)(1)(2). "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) ("[T]he principal requirement of *Wal-Mart* is merely a single common contention that enables the class action 'to generate common answers apt to drive the resolution of the litigation.'" (quoting *Wal-Mart Stores Inc. v. Dukes*,

7

564 U.S. 338, 350 (2011)). Courts have often found that this requirement is met when class members are alleged victims of a common course of fraudulent conduct. *See, e.g.*, *Schwartz v. TXU Corp.*, No. 3:02-cv-2243-K, 2005 WL 3148350, at *13 (N.D. Tex. Nov. 8, 2005).

Proponents argue that Settlement Class members "were subject to the same compensation policy: service charges were collected by the [f]our [g]olf [c]lubs and were not passed on to banquet service workers." [ECF No. 110 at 16]. This, Proponents argue, gives rise to a number of common questions. First, Proponents claim that the same legal standards apply to all Settlement Class members. [*Id*. at 13–15]. Namely, Proponents discuss the legal questions applicable to their service charge claims, identifying pre-2011 and post-2011 standards supplied by New York law for determining whether a payment is a "gratuity," which New York law prohibited the clubs from retaining. [*Id*.]. With regard to the other claims of the Settlement Class, Plaintiffs' Complaint alleges Defendant "willfully failed to pay Plaintiffs and the Class appropriate overtime [pay]" and that Defendant did not reimburse Settlement Class members "for the cost of uniforms as required under New York law." [ECF No. 1 ¶¶ 27, 36].

Proponents also allege that "the at-issue contract language [which provided for the service charges] is uniform across the [clubs]." [ECF No. 110 at 15]. "Prior to January 1, 2011, the banquet contracts stated that a service charge and sales tax will be added to all food and beverage charges, in virtually identical language." [*Id.* (citing ECF No. 111, Hout Decl. Exs. 3, 4, 5, 6]. After January 1, 2011, "Fox Valley, Brierwood, and Harbor Links made substantially similar changes to their banquet contracts, albeit at different times." [*Id*.]. Harbor Links changed the language appearing in its contracts in October 2012, while Fox Valley and Brierwood made almost identical changes in October 2013. [*Id*.]. Because of these legal and factual similarities, Proponents argue that "determination of whether the service charges were a

gratuity under NYLL § 196-d will answer a 'common question' and determine liability for violation of the NYLL 'in one stroke.'" [*Id.* at 17 (quoting *Wal-Mart*, 564 U.S. at 350)].

The Court finds that the commonality factor is established. The Settlement Class is comprised of employees who worked at four country clubs owned and/or operated by Defendant. It is alleged that Defendant illegally withheld service charges from all Class members who worked at three of these clubs. It is further alleged that Defendant illegally failed to reimburse Class members at all of the clubs for the cost of their uniforms, and that Defendant failed to pay legally required overtime at all clubs. As noted by Proponents, these claims present a number of common questions of both law and fact.

The fact that there may be some slight variation in certain contractual language used at the different clubs, in addition to variations in the time at which this language was changed, does not defeat commonality. First, these facts have nothing to do with other common questions regarding Defendants' failure to reimburse Class members for uniforms or to provide appropriate overtime pay. Second, these slight variations do not create significant disparity within the class so as to defeat commonality. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 327, 337 (S.D.N.Y. 2010) ("Even granting that there were slight variations in the way the service charge was presented to clients, the service charge was collected and distributed in an essentially uniform manner for each event, providing a common issue of fact."). The Court finds that the claims of those in the Settlement Class share many common issues, and that commonality is established.

### 3. Typicality

This requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); *see also Mullen*, 186 F.3d at 625 (holding that typicality exists when the claims of named and unnamed plaintiffs have

a common source and rest upon similar legal and remedial theories). "Typicality does not require complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences do no defeat typicality." *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated in part on other grounds by Wal-Mart*, 564 U.S. 338.

The claims of Proponents and the Settlement Class have the same essential characteristics. With regard to the overtime and uniform claims, these claims are typical across the Settlement Class. With regard to the service charge claims, these claims are typical among Class members who worked at Fox Valley, Brierwood, and Harbor Links. Further, Class members seek similar monetary relief. The Court finds that typicality is established.

### 4. Adequacy

This requirement is met when (1) class counsel prosecute the action zealously and competently; (2) representative parties are willing and able to take an active role in and control the litigation and protect the interests of absentee class members; and (3) there are no conflicts of interest between the representative parties and the class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); see *also* FED. R. CIV. P. 23(a)(4). Class counsel here have demonstrated that they are qualified, experienced, and able to conduct this litigation. [ECF 111, Ex. 14 at 96–126]. Further, the representative parties have taken an active role in the litigation. [ECF No. 110 at 40–41].

Objectors argue that there is a conflict between the Proponents and the Class members who worked at Harbor Links because Proponents "do not share a common interest with Objectors and the Harbor Links employees given the admittedly different service charge

practices and their relentless attempt to sweep the Harbor Links claims into their settlement presumptively in order to increase the value of their settlement." [ECF No. 114 at 10]. Objectors also argue that Proponents "lack sufficient knowledge of the Harbor Links claims." [*Id*. at 10].

In *Amchem Prods. v. Windsor*, the Supreme Court held that adequacy was not established because of conflicts within the class. 521 U.S. 591, 625–26 (1997). There, "parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses." *Id.* at 626. The class included plaintiffs who were then injured due to exposure to asbestos, as well as plaintiffs who brought claims for exposure only. *Id*. The Court found that "[i]n significant respects, the interests of those within the single class [were] not aligned." *Id*. "Most saliently, for the currently injured, the critical goal [was] generous immediate payments." *Id.* "That goal tugg[ed] against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id*. As such, conflicts existed and adequacy was not satisfied. *Id*.

The conflict identified by the Supreme Court in *Amchem* is not present here. In this instance, the goal of Proponents, Objectors, and the Settlement Class as a whole is exactly the same: obtaining the largest monetary recovery possible from Defendants. Objectors do not contend, and it is irrational to believe, that Proponents have somehow traded away the Harbor Links claims for less than they are worth, reducing Proponents' own recovery and the recovery of the Class as a whole. Rather, it appears that Objectors' main contention is that the total value of the Proposed Settlement is unfairly divided because the Harbor Links employees' claims are of higher value. This, however, does not defeat adequacy. This Court should, and will, closely scrutinize this issue, but this will be done when the Court reviews the fairness, adequacy, and

reasonableness of the proposed settlement prior to final approval. Given the Proponents' overriding interest in securing the largest possible recovery for the Settlement Class, and the alignment of this goal across the Class, the Court finds that there are not conflicts within the class and that adequacy is established.

### ii. Rule 23(b)(3) Requirements

#### 1. Predominance

This requirement is met where issues common to the class predominate over individual issues. *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless."). However, this does not require that all questions of law or fact be common. *See Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988) ("To be sure, individual issues will likely arise in this as in all class action cases, [but] to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool . . . .").

The Court finds that predominance is established. Dispositive issues of law and fact are common to all class members, and these questions predominate over individual questions. The Settlement Class consists of banquet workers who were employed at facilities owned and/or operated by the same Defendant. It is alleged that Defendant had a common practice of not remitting service charges to the workers. Minor factual differences in the way that these charges were represented or collected do not create an individual issue that predominates over the issues common to the Settlement Class. Further, it is alleged that Defendant had a common policy of withholding overtime pay and uniform reimbursements from Class members. These issues are common to the class and predominate over individual issues.

## 2. Superiority

This requirement is met where "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Class actions are superior when individual actions would be wasteful, duplicative, or adverse to judicial economy. *Mullen*, 186 F.3d at 627. Other factors relevant to the Court's determination include "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum."[3] *Ibe v. Jones*, 836 F.3d 516, 529–30 (citing FED. R. CIV. P. 23(b)(3)).

In support of their argument that superiority is established, Proponents state that "256 Settlement Class members[,] who collectively worked 83.3% of the total hours at the [f]our [g]olf [c]lubs, have opted into the settlement . . . ." [ECF No. 110 at 25]. This, Proponents argue, "demonstrates the class members do not have strong individual interests in controlling the prosecution of the claims asserted in this case." [*Id.*].

Objectors counter that none of the elements necessary to establish superiority are established here. First, Objectors generally state that they have "a strong interest in controlling the prosecution of the Harbor Links claims." [ECF No. 114 at 12]. Objectors point to the *Metzger* Action and note that, prior to the time the Action was stayed, there were "several court appearances," Defendant "produced over 30,000 documents," and Defendant "deposed both Objectors." [*Id.*]. Finally, Objectors argue that the Northern District of Texas is "an undesirable

---

[3] In certification of a settlement class, the Court need not inquire "whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

13

forum" given that Harbor Links is, and that its employees generally are, situated in the Eastern District of New York.  [*Id.*].

To make a determination regarding superiority, the Court must compare and "assess the relative advantages of alternative procedures for handling the total controversy." *Simms v. Jones*, 296 F.R.D. 485, 499 (N.D. Tex. 2013) (Lynn, J.) (citing *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013)).  There are several alternative options to the structure of the Settlement Class which the Court must consider.  First, the claims of the employees at all four clubs could proceed in this action, but the Court could insist on the creation of sub-classes for the employees of each club or for the employees at Harbor Links.  Second, the claims of the Harbor Links employees could be continued separately in the *Metzger* Action.

"Superiority analysis is fact-specific and varies depending on the circumstances of each case." *Id*. (citation omitted).  The Court preliminarily finds that Proponents' proposal to adjudicate the claims of employees of all four clubs in this Action is superior to the alternatives.  As discussed, the overtime and uniform claims are common among employees of all the clubs and these claims can most efficiently be resolved by involving employees of all four clubs.  With regard to the service charge claims, the language regarding the service charges in the clubs' banquet contracts, which is key to determining Defendant's liability, is virtually identical.  [*See* ECF No. 111 at Exs. 3, 4, 5, 6, 7, 8, 9].  Thus, the service charge claims are similar across all three clubs which allegedly failed to remit the charges, and these claims can also be resolved most efficiently by including employees from Brierwood, Fox Valley, and Harbor Links.  Objectors argue that Proponents "cherry-picked" the documents which were submitted because of the similarity of their language and that other documents must exist with greater differences.  [ECF No. 114 at 5].  But Objectors submitted no examples of these other documents and their

14

existence is unlikely.  Language regarding the service charges was boiler-plate language used in form contacts.  It is unlikely that this language was altered from event to event or club to club in a significant way.

The Court determines that the claims of employees at each of the four clubs are substantially similar.  Resolution of these claims across all four clubs is superior to other available methods.

## IV.   Conclusion

The Court finds that Rule 23's requirements are satisfied and **ORDERS** that the proposed State Law Settlement Class and the FLSA Class be **CONDITIONALLY CERTIFIED**.

A final approval hearing on Plaintiffs' Motion for Certification of the Settlement Classes, Approval of the Enhanced Settlement, and Award of Attorneys' Fees and Expenses [ECF No. 109] is **SET** for **Thursday, January 31, 2019 at 9:00 A.M.**  All parties shall convene in Courtroom 1570, Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas.  Any party with a conflict on this date will file a notice with the Court within ten days of the date of this Order.

The Court **APPROVES** Plaintiffs' proposed supplemental notice and claim and consent form [ECF No. 118].  After the expiration of ten days following the date of this Order, and assuming no notices of conflict regarding the date of the final approval hearing have been filed, the Plaintiffs will update the supplemental notice to include the date of the final approval hearing.  The deadline to file the "Notice of Appearance" contemplated on page ten of the supplemental notice will be **January 10, 2019**.  Plaintiffs are **ORDERED** to direct the supplemental notice and claim and consent form to those members of the State Law Class who

originally opted out of the class action, and to members of the FLSA class who did not originally opt in to the class action within 45 days of the date of this Order.

**SO ORDERED**.

October 3, 2018.

_____
BARBARA M. G. LYNN
CHIEF JUDGE